UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCKHEED MARTIN TRANSPORTATION SECURITY SOLUTIONS, AN OPERATING UNIT OF LOCKHEED MARTIN CORPORATION, | No. 09 CV 4077 (PGG)(GWG) |
| Plaintiff, | |
| -against- | |
| MTA CAPITAL CONSTRUCTION COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY, | |
| Defendants. | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA, | No. 09 CV 6033 (PGG)(GWG) |
| Plaintiffs, | |
| -against- | |
| METROPOLITAN TRANSPORTATION AUTHORITY, MTA CAPITAL CONSTRUCTION COMPANY, NEW YORK CITY TRANSIT AUTHORITY, and LOCKHEED MARTIN CORPORATION, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL AND MOTION FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                                     1

STATEMENT OF FACTS                                                                        1

   A.  Background…………………………………………………………………….        1
   B.  Defendants' Challenges…………………………………………………………..       5
   C.  Lockheed's Challenges………………………………………………………          6

ARGUMENT                                                                                  9

    I.  DEFENDANTS ARE ENTILED TO THE PRODUCTION OF
       THE 56 DOCUMENT WITHHELD BY LOCKHEED ON                                    10
       THE GROUNDS THAT THESE DOCUMENTS ARE NOT
       PRIVILEGED

        A.  Lockheed Must Produce Documents Where Counsel Was
            Neither Sender Nor Recipient And Where There Is No
            Evidence Presented Showing That The Communications
            Therein Reflected Predominantly Legal Advice. …………………………        10

           1.  Lockheed Has Wrongly Withheld as Privileged
              Documents Exchanged Between Non-Lawyers………………………        10

        B.  Lockheed's Descriptions of Documents Do Not Support a
            Claim of Privilege …………………………………………………………        13

        C.  Lockheed Must Produce Documents Where, Notwithstanding
            That the Sender or Recipient is In-House Counsel, The
            Documents Are Not Of A Predominantly Legal Character ………………        16

        D.  The Attorneys' Declarations Submitted by Plaintiff Are
            Insufficient to Meet Its Burden of Establishing Privilege
            For The Documents At Issue ………………………………………………..        19

    II.  THE COURT SHOULD DENY PLAINTIFF'S MOTION TO
       COMPEL AND GRANT DEFENDANTS A PROTECTIVE                                   24
       ORDER SHIELDING THE DOCUMENTS CHALLENGED BY
       LOCKHEED FROM DISCLOSURE ………………………………………….

        A.  Claims & Settlement Documents …………………………………………...        25
        B.  Board Briefing Correspondence & "Talking Points" Memoranda …………      30
        C.  MTA's Independent Engineering Consultant ………………………………       34
        D.  Legal Options Memorandum & Related Legal Correspondence …………...      38
        E.  Other Hakim Documents …………………………………………………        41
        F.  Plaintiff's "Category 6" …………………………………………………...        43

CONCLUSION                                                                               46

## TABLE OF AUTHORITIES

**Cases**

*ABB Kent-Taylor, Inc. v. Stallings & Co.*,
 172 F.R.D. 53 (W.D.N.Y. 1996) .................................................................................. 16

*AIU Ins. Co. v. TIG Ins. Co.*,
 2008 WL 4067437 (S.D.N.Y. Aug. 28, 2008) ....................................................... 13, 16

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.*,
 252 F.R.D. 163 (S.D.N.Y. 2008) ...................................................................... 9, 27, 28

*Bank Brussels Lambert v. Credit Lyonnais*,
 160 F.R.D. 437 (S.D.N.Y. 1995) ................................................................................... 9

*Bank of Am., N.A. v. Terra Nova Ins. Co.*,
 212 F.R.D. 166 (S.D.N.Y. 2002) ............................................................................ 36, 37

*Bodega Investments, LLC ex rel. Kreisberg v. United States*,
 2009 WL 1456642 (S.D.N.Y. May 15, 2009) ............................................................. 36

*Bowne of New York City, Inc. v. AmBase Corp.*,
 150 F.R.D. 465 (S.D.N.Y. 1993) ................................................................................... 9

*Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*,
 215 F.R.D. 466 (S.D.N.Y. 2003) .................................................................. 10, 12, 13, 21

*HSH Nordbank AG New York Branch v. Swerdlow*,
 259 F.R.D. 64 (S.D.N.Y. 2009) .................................................................................. 32

*In re Copper Market Antitrust Litigation*,
 200 F.R.D. 213 (S.D.N.Y. 2001) ................................................................................. 36

*In re County of Erie*,
 473 F.3d 413 (2d Cir. 2007) ................................................................... 26, 27, 32, 39

*In re Grand Jury Proceedings*,
 2001 WL 1167497  n.41 (S.D.N.Y. Oct. 3, 2001) ..................................................... 17

*In re Grand Jury Subpoena Dated Jan. 4, 1984*,
 750 F.2d 223 (2d Cir. 1984) ...................................................................................... 10

*In re September 11 Litig.*,
 262 F.R.D. 274 (S.D.N.Y. 2009) ................................................................................ 24

*Medeva Pharma Suisse A.G. v. Roxane Laboratories, Inc.*,
 2011 WL 310697 (D.N.J. Jan. 28, 2011) ................................................................... 29

*People v. Osorio*,
 75 N.Y.2d 80 (1989) .................................................................................................. 27

*Rossi v. Blue Cross & Blue Shield of Greater New York*,
 73 N.Y.2d 588 (1989) ........................................................................................... passim

*Sanofi-Aventis Deutschland GMBH v. Glenmark Pharmaceuticals Inc., USA*,
 2010 WL 2652412 (D.N.J. Jul. 1, 2010) .................................................................... 29

*SCM Corp. v. Xerox Corp.*,
 70 F.R.D. 508 (D. Conn. 1976) .................................................................................... 9

*Spectrum Sys. Int'l Corp. v. Chem. Bank*,
 78 N.Y.2d 371 (1991) ........................................................................... 17, 26, 41, 42

*TVT Records v. Island Def Jam Music Group*,
   214 F.R.D. 143 (S.D.N.Y. 2003) ................................................................. 16
*United States Postal Serv. v. Phelps Dodge Refining Corp.*,
   852 F.Supp. 156 (E.D.N.Y. 1994) ................................................. 17, 18, 23
*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998).................................................................. 29, 33
*United States v. Davis*,
   131 F.R.D. 391 (S.D.N.Y. 1990) ............................................................ 28, 40
*United States v. Dist. Council of New York City & Vicinity of United Broth. of Carpenters &*
   *Joiners of Am.*,
   90 CIV. 5722 (CSH), 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992)........................................ 33
*United States v. Tellier*,
   255 F.2d 441 (2d Cir. 1958)........................................................................ 28
*Univ. Sports Publications Co., Inc. v. Playmakers Media Co.*,
   09 CIV. 8206 RJHDF, 2011 WL 1143005 (S.D.N.Y. Mar. 21, 2011) .................................... 40
*Upjohn Co. v. United States*,
   449 U.S. 383 .................................................................. 28, 32, 39, 40
*William A. Gross Const., Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*,
   262 F.R.D. 354 (S.D.N.Y. 2009) ......................................... 28, 33, 36, 40

**Statutes**
New York Public Authorities Law §1263 ........................................ 34, 37
New York Public Officers Law §105 ................................................ 30, 32

**Rules**
Fed. R. Civ. P. Rule 26 .................................................................... passim
Fed. R. Civ. P. Rule 37 ............................................................................ 1
Fed. R. Evid. 501 ...................................................................................... 9
Fed. R. Evid. 502 ................................................................................ 3, 43

## PRELIMINARY STATEMENT

Defendants Metropolitan Transportation Authority ("MTA") and MTA Capital Construction Company ("MTACC")[1] respectfully submit this Memorandum of Law seeking the following relief: (i) an order pursuant to FRCP Rule 37 compelling the production of documents withheld by Plaintiff Lockheed Martin Corporation ("Lockheed") based on unsupported and incorrect assertions of privilege; (ii) an order denying Lockheed's July 21, 2011 motion pursuant to FRCP Rule 26(c) for an order protecting from disclosure these same documents; (iii) an order pursuant to FRCP Rule 26(c) protecting from disclosure 142 MTA documents identified in the spreadsheet attached to the Declaration of Steven D. Weber, dated July 28, 2011, ("Weber Decl.") as Exhibit F on the grounds of attorney-client privilege and/or the work product rule; and (iv) an order denying Lockheed's Rule 37 motion to compel the production of these documents.

## STATEMENT OF FACTS

### A.    Background

The underlying action arises from a contract between Lockheed and the MTA for the "design, development, furnishing, and installation of an integrated electronic security system (IESS) and security operations (C3) Centers at various locations." (The contract, also known as Contract C-52038, is hereafter referred to as the "Contract," "IESS" and the "Project"). Lockheed and the MTA each seek monetary damages arising from alleged breaches of the Contract. Discovery is ongoing and has included the exchange of millions of emails and Project documentation.

---

[1] Unless otherwise specified, MTA and MTACC are referred to collectively as either "MTA" or "Defendants."

In connection with the production of documents, both sides withheld documents believed to be protected by rivilege or the work product rule. As part of this process, both sides exchanged privilege logs identifying the documents withheld.

MTA first served privilege logs on Lockheed on May 28, 2010 (for two of MTA agencies involved); then completed the production of its privilege logs on June 30, 2010.  The total number of documents initially withheld by MTA was roughly 12,000 documents, out of over three million document produced.  Weber Decl. ¶ 10.

Lockheed first served its privilege logs on July 16, 2010, and supplemented that log on July 19, but, due to errors, served revised logs on July 27 and again on August 12, 2010 --  about six weeks after the MTA produced its logs. Lockheed's initial privilege logs identified approximately 6,000 documents withheld for privilege out of more than one million documents produced.  Weber Decl. ¶ 11.

 Subsequent to the production of the privilege logs, counsel for MTA and Lockheed each undertook a review of the other side's log entries and formulated a responsive set of spreadsheets or logs setting forth challenges to each other's privilege assertions. On August 13, 2010, MTA presented Lockheed with its first set of challenges, totaling approximately 3,700 of the 6,000 entries.  Lockheed in turn served a list of challenges on MTA on August 4 and 5, 2010, questioning approximately 6,500 documents from the roughly 12,000 privileged documents identified on MTA's logs.  Weber Decl. ¶ 12, 13.

Counsel thereafter engaged in an extensive dialogue, including telephone calls, correspondence, a meet and confer on October 8, 2010, and subsequent emails, calls and correspondence, as part of an effort to narrow the scope of the dispute over privileged documents.  The result was the production of documents previously withheld, service by both

sides of revised logs and revised challenges throughout the fall of 2010 and early winter 2011. Thus, Lockheed submitted revised privilege logs on October 21, 2010, an update on December 6, 2011 and a supplemental log on January 13, 2011.   Defendants, for its part, submitted supplemental logs on October 19, 2010, and November 22, 2010.  Weber Decl. ¶ 14-18.

These efforts succeeded in narrowing the dispute, but still left a substantial number of documents at issue.    By mid-January 2011 the number of withheld MTA documents being challenged by Lockheed was down to approximately 700; and the number of withheld Lockheed documents being challenged by MTA was down to approximately 1,400.  Weber Decl. ¶ 19.

By letter dated January 13, 2011, the parties jointly requested a conference before this Court to establish a protocol for the resolution of the dispute.   The conference was held on January 19, 2011.   At the conference, the Court recommended that the parties continue their efforts to narrow the dispute.  In particular, the Court suggested that, with an appropriate order issued under Rule 502(d), the parties could disclose more information about each document than they otherwise might, without risking waiver of privileges.  With more ample disclosures, and meet and confer sessions to discuss those disclosures, the hope was that each side would have a fuller understanding of the nature of the privileges being asserted.  This in turn, was to lead to more informed dialogue about the documents in question and the arguments in support of or opposition to the privilege assertions, with an eye toward reconsideration of each side's positions.  Weber Decl. ¶ 20-21.

On January 20, 2010, this Court issued an Order pursuant to FRE Rule 502(d), and the parties embarked on an effort to reduce the scope of the dispute.   The first step was for each side to re-produce their privilege logs, this time with enhanced descriptions of the withheld documents.   On February 4, 2011, Defendants produced revised privilege logs including

enhanced descriptions, referred to as the "fourth column."  Lockheed produced revised logs on February 7, 2011, and on February 8, 2011, the parties engaged in the first of a series of meet and confer sessions.  Lockheed submitted corrected privilege logs on February 17, and the parties thereafter presented revised challenge spreadsheets. Meet and confer sessions were held on March 30, 2011 and April 15, 2011, after which the parties continued to refine their respective positions, producing documents, revising logs, and revising challenges. Lockheed, for example, produced revised sets of privilege logs on June 3, 2011, and again on July 1, 2011, in response to MTA's spreadsheet challenges dated May 9, 2011.  Lockheed's revisions included the production of 35 previously withheld documents on July 1, 2011.  Weber Decl. ¶ 22-28.

The final meet and confer was held on June 28, 2011.  Following that meet and confer, Lockheed refused to amend its positions, other than its upcoming response to MTA's May 2011 challenges.  MTA, on the other hand, in response to Lockheed's final iteration of its position, decided to (i) revisit its position to determine whether it would concede any Lockheed challenges to the withheld MTA documents, and revise the MTA's logs accordingly; and (ii) examine the upcoming Lockheed revised log, together with the soon-to-be produced documents to determine whether MTA would withdraw any of its previous challenges.  Weber Decl. ¶ 29-31.

On July 8, 2011, counsel for MTA wrote Lockheed and advised that MTA would produce a revised set of privilege logs on July 19, 2011, together with any additional documents to be produced.  On July 11, MTA produced a revised spreadsheet of challenges to withheld Lockheed documents, reducing MTA's challenges of Lockheed's documents to 113 documents.  On July 19, 2011, MTA served Lockheed with its final revised privilege logs withholding a total of approximately 161 documents.  Weber Decl. ¶ 34-35.

**B.      Defendants' Challenges**

In order to streamline Defendants' challenges to Lockheed's privilege logs, Defendants created two categories of documents withheld by Lockheed.  Weber Decl. ¶ 36.

The first category of documents withheld by Lockheed and challenged by Defendants are those documents where neither the author/sender, nor any of the recipients, were in-house or outside counsel to Lockheed.[2]  Additionally, the descriptions of these documents on Lockheed's privilege logs, after several rounds of revision, fail to indicate that they predominantly concern the giving or receiving of legal advice or work product.  Weber Decl. ¶ 37.

The second category of documents challenged by Defendants are those documents that, while sent to, from or copied to attorneys, appear to deal predominantly (if not exclusively) with non-legal subjects.  This is apparent from the subject descriptions Lockheed provided and/or the parties identified in the "to/from/cc" fields.   These documents appear to discuss, among other things, Project construction, administrative matters and financial information, rather than legal advice or work product.  Such documents are simply not privileged, notwithstanding that they have been issued by or directed to in-house counsel or that they include in-house counsel as one of several addressees.  Weber Decl. ¶ 38.

As set forth below, the documents identified in these two categories should be produced because they do not appear to contain information that falls within the attorney-client, work product, or any other privileges.

---

[2] Because some of the challenged documents were produced by Lockheed in redacted form, and contain multiple email messages with different senders and sets of recipients, some documents appear in both categories.  *See, e.g.,* Weber Decl. Exh. D, line 17.

### C.    Lockheed's Challenges

Lockheed organized its challenges to privileged MTA documents in six categories. Nevertheless, all of Lockheed's challenges relate to documents sent to or from Veronique Hakim, the General Counsel of the MTACC, and therefore it is necessary to provide background information regarding Ms. Hakim's role on the IESS Project.

As set forth above, Lockheed continues to challenge 142 documents withheld by the MTA on the grounds of privilege. Of these documents, 138 are documents that were sent from or to Ms. Hakim.  The six categories (or "buckets") into which Lockheed placed its challenges of the MTA's documents are as follows:

(i)      business documents relating to Ms. Hakim's role as acting president of MTACC;
(ii)     budget, funding or payment documents relating to Ms. Hakim's role as Vice President for procurement;
(iii)    non-legal project status reporting documents directed to the MTA Board;
(iv)    project status  reporting documents to be sent to the New York State Comptroller's office;
(v)     documents involving third parties (the independent engineering consultant and a security consultant); and
(vi)    documents relating to MTA's revised positions from its July 19, 2011 logs.

Defendants reject this as an approach to determining the merits of MTA's position with respect to the documents in question.  The first two categories seize upon other functions and/or titles Ms. Hakim held while she was serving as General Counsel.  As set forth below, that Ms. Hakim wore non-legal "hats" in addition to serving as counsel is routine for in-house counsel and does not negate the privileged status of the documents in question.  Seizing largely on her title, as Lockheed does, is therefore of little assistance in deciding the dispute over these documents.  The third and fourth categories are defined in a self-serving manner that fails to accurately describe the documents or their context.  The fifth category suggests a waiver argument, wrongly suggesting that individual recipients of the communications in question were

6

third parties.  Lockheed also places the same documents in multiple buckets, rendering analysis using its approach cumbersome. Only the sixth category warrants a categorical response, which we set forth in section II.F, below.

Instead, we have divided the documents Lockheed is continuing to challenge into five categories based on the content of the documents.  The first group concerns documents relating to legal claims and settlement; the second group concerns so-called "talking points" memoranda, and communications to and from Ms. Hakim regarding these documents. These are documents prepared in connection with presentations made to the MTA Board or a Board committee. Sections from these documents concerning Lockheed's claims or the litigation prepared by Ms. Hakim were properly redacted from the production copy.  The third category concerns a legal options analysis prepared by Ms. Hakim; and the fourth category is a catch all, involving a variety of different issues where Ms. Hakim was involved in her capacity as an attorney.  The issue of non-waiver (in response to Lockheed's fifth bucket) is addressed in the context of these groupings.  The fifth category of documents responds to Lockheed's category six.

Ms. Hakim's duties and responsibilities as General Counsel of the MTACC are set forth in a Declaration in support of Defendants' motion for a protective order, dated July 28, 2011.  In her Declaration, Ms. Hakim also describes the categories of documents MTA has withheld and offers the context in which her legal services were sought and provided.  As she attests, in her capacity as counsel, she was frequently involved in issues of contract interpretation, responding to legal claims by contractors, defining the responsibilities and obligations of the MTA and MTACC, developing legal strategy in response to the performance of the contractor, and providing the MTA Board with legal advice in response to the instant lawsuit filed against the MTA and the MTACC.  Hakim Decl. ¶ 5.

To fulfill her responsibilities as General Counsel, Ms. Hakim sought information by email and attended meetings with employees and agents of the MTA and MTACC. Additionally, she would often ask these individuals to collaborate on briefs, outlines, letters, presentations, and other documents so that she could effectively provide legal advice and develop legal strategy.  Hakim Decl. ¶ 7.

Throughout her tenure as MTACC General Counsel, Ms. Hakim also bore the title Vice President, an added officer's title typical among chief legal officers in a corporate setting. In addition, during an interim period from January through July 31, 2008 when MTACC was awaiting the hiring and installation of a new president, Ms. Hakim filled in as acting president. While she had administrative and managerial responsibilities during her tenure, she never ceased serving as the senior attorney at the agency.  In fact, while she was acting president, she was not replaced as General Counsel, and she continued performing the same counsel function she always had.  Hakim Decl. ¶ 1, 16.

Reflecting that Ms. Hakim's role as an in-house counsel necessarily involved her role in administrative and business matters,  Defendants produced during the course of the litigation over 14,000 documents prepared by or addressed to Ms. Hakim.  Weber Decl. ¶ 69.  In fact, MTA ultimately deemed less than 25% of Ms. Hakim's total documents (roughly 4,000 out of 18,000) to fall within the attorney-client or work product privileges – all documents reflecting communications to or from Ms. Hakim in connection with her performance of her role as MTACC General Counsel.  Weber Decl. ¶¶ 71-72.

The documents challenged by Lockheed that are to or from Ms. Hakim contain privileged information as a result of Ms. Hakim's role as General Counsel.  These documents have been described to Lockheed as such in order to prevent further challenge.  Nonetheless, Lockheed

8

continues to assert that the remaining challenged documents sent to or from Ms. Hakim are not privileged because she held titles other than General Counsel or based on their mistaken belief that these documents contain non-legal information.

## ARGUMENT

New York law governs the application of the attorney-client privilege in this case because federal jurisdiction here is based on diversity.  Amended Compl. ¶¶ 7-8; Fed. R. Evid. 501.  Under New York law, a communication is protected by the attorney-client privilege when it is made between an attorney and client "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship."  *Rossi v. Blue Cross & Blue Shield of Greater N.Y*, 73 N.Y.2d 588, 593 (1989)).   "The privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation."  *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995). Not all communications from staff attorneys to their corporate client are privileged.  *Rossi*, 73 N.Y. 2d at 593.   On the other hand, communications between in-house attorneys and their corporate client need not be exclusively for the purpose of giving or receiving legal advice.  "So long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to non-legal matters. *Rossi*, 73 N.Y. 2d at 594; *see also Allied Irish Banks v. Bank of America*, 252 F.R.D. 163, 168 (S.D.N.Y. 2008).  The burden of establishing the privilege rests with the proponent of the privilege.  *Id*. at 168.

Federal courts decide the application of the work product rule under federal law.  *Allied Irish Banks,*  252 F.R.D. at 173 ("While state law governs the question of attorney-client privilege in a diversity action, federal law governs the applicability of the work product doctrine").  The work product doctrine is codified at Fed. R. Civ. P. Rule 26(b)(3) and applies to "(1) a document or a tangible thing, (2) prepared in anticipation of litigation, and (3) prepared by

or for a party, or by his representative." Fed. R. Civ. P. 26(b)(3); *Gulf Islands Leasing, Inc. v.*

*Bombardier Capital, Inc.*, 215 F.R.D. 466, 474 (S.D.N.Y. 2003). Documents created in the

ordinary course of business or that would have been created in a substantially similar form, are

not protected by work product, even if the document would have been useful during litigation.

*Id.*

## I. DEFENDANTS ARE ENTILED TO THE PRODUCTION OF 113 DOCUMENTS WITHHELD BY LOCKHEED ON THE GROUNDS THAT <u>THESE DOCUMENTS ARE NOT PRIVILEGED</u>

### A. Lockheed Must Produce Documents Where Counsel Was Neither Sender Nor Recipient And Where There Is No Evidence Presented Showing That The Communications Therein Reflected Predominantly Legal Advice

Lockheed Martin continues to withhold 56 documents where neither the authors/senders,

nor any of the recipients, were counsel to Lockheed. Additionally, Lockheed's privilege log

descriptions of these documents, even after several rounds of revision, fail to indicate that they

contain the transmission of legal advice or work product, and information provided in support of

Plaintiff's motion for a protective order similarly fails in this regard. Moreover, even if the

communications concerned legal advice, these documents should have been narrowly redacted

rather than withheld entirely. As set forth below, these documents are not protected by the

attorney-client privilege or work product rule and should be produced.

#### 1. Lockheed Has Wrongly Withheld as Privileged Documents Exchanged Between Non-Lawyers

Over 25 documents withheld by Lockheed are simply communications between non-

attorneys that do not appear to contain the transmission of legal advice. By way of example, the

document bearing LM-PRIV-5542 was withheld in its entirety by Lockheed on the grounds of

attorney-client privilege. *See* Weber Decl., Exh. D, line 43. This document purports to be a June

10, 2009 e-mail from Jeffrey MacLauchlan to Linda Gooden, neither of whom are attorneys (both are Lockheed executives).  Lockheed's description of this e-mail, which appears to come somewhere in an extended e-mail chain, is that it is a "client-to-client e-mail[], in furtherance of ongoing litigation."  From Lockheed's description, Defendants are offered no reason to believe that Mr. MacLauchlan's message to Ms. Gooden contains any privileged content.  Indeed, based on the information contained in Lockheed's privilege log, Defendants have little basis for accepting that any of the earlier e-mails in the chain, though counsel may have received those emails, are predominantly of a legal character.  Accordingly, Lockheed has not met its burden of establishing that this document contains information that is protected by the attorney-client privilege.

Similarly, document number LM-E-01186489 is a redacted email chain between Linda Smith, Donato Antonucci, and Donald Morrison – none of whom are attorneys.  *See* Weber Decl., Exhibit D, line 30.  Lockheed alleges that the redacted portions of the conversation between Mr. Antonucci and Ms. Smith were prepared for litigation strategy, and discuss the actions of outside counsel and the Lockheed General Counsel in response to the MTA's default letter.  However, the unredacted portions of this document provide no indication that it pertains to litigation strategy or the actions of counsel.  Instead, this document appears to be solely concerned with project information that should be produced.  Specifically, Mr. Antonucci provides Ms. Smith with the current status of the IESS Project and appears to ask Ms. Smith to review a response to the MTA's default notice.  Significantly, Lockheed has withheld in their entirety documents LM-PRIV-1552, LM-PRIV-3131, LM-PRIV-1555, LM-PRIV-1556, and LM-PRIV-1559, offering the exact same description as LM-E-01186489.  *See* Weber Decl.,

Exhibit D, lines 29-33.  Like LM-E-01186489, these documents were not sent by or to attorneys, and were sent either on the same day or the day after LM-E-01186489.

Additionally, LM-E-01186489 and the other documents were originally withheld as attorney-client privileged or as "Privileged – Both."[3]  However, Lockheed has abandoned its assertion of attorney-client privilege and now asserts that all of these documents have been withheld as "Privilege Materials Prepared for Litigation."   Again, based on the descriptions offered, in this document it appears that Ms. Smith's and Mr. Antonucci's discussion regarding a response to MTA's default notice is a business communication which would have been prepared regardless of litigation, and is not privileged.  *See Gulf Islands Leasing*, 215 F.R.D. at 475 (a document "will not be protected if it is created in the ordinary course of business").

Lockheed has also improperly withheld a number of communications between non-attorneys under the veil of settlement discussions.  For example, documents LM-PRIV-5352, LM-PRIV-4870 and LM-PRIV-4871 (Weber Decl., Exh. D, lines 45, 54, 55) all contain virtually identical descriptions on Lockheed's privilege logs and were sent between numerous non-attorneys.  Lockheed's description that these documents were created "days prior to a mediation" before this Court is irrelevant because these documents contain "client discussions" that appear to concern an internal assessment of Lockheed's performance on the IESS project.  Indeed, Lockheed's earlier description of at least one of these documents indicates that it was created by an "MTA independent review team" and therefore this document likely contains non-privileged business information regarding Lockheed's performance on the IESS Project.

---

[3] Lockheed asserts no fewer than three different types of privilege, including "Privileged Materials Prepared for Negotiation/Settlement" and "Privileged Redactions" (without further description) and it can only be assumed what privileges Lockheed is invoking to withhold this and other documents.  Lockheed has failed to correct its various privilege assertions despite correspondence on this matter and numerous privilege log revisions.

Lockheed has also tried to avoid producing documents even where the document contains non-privileged information by asserting that they contain "proprietary" information. For example, Lockheed redacted information contained in document number LM-E-01188979 and described it as non-MTA project discussion. Weber Decl., Exh. D, line 8. However, looking at the redacted portion of this document, it appears that Lockheed is withholding information regarding the IESS Project. Linda Gooden and Judy Marks are not attorneys and prior to the May 16, 2008, 11:17:06 AM email that was redacted, Ms. Gooden asks Ms. Marks if Lockheed has run a customer demonstration on the IESS Project and whether the system worked. Ms. Marks replies with project information and Lockheed inexplicably redacts the final paragraph of this communication. The redacted material should be disclosed. Lockheed has failed to meet its burden of establishing that this communication is privileged.

### B.     Lockheed's Descriptions of Documents Do Not Support a Claim of Privilege

Lockheed also claims privilege in connection over 16 documents because they allegedly contain information that was prepared for or at the direction of counsel. A document containing project and/or business information that was prepared at the direction of counsel is not protected by the attorney-client privilege. *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 4067437, *11 (S.D.N.Y. Aug. 28, 2008), *modified on reconsideration*, 07 CIV. 7052 SHSHBP, 2009 WL 1953039 (S.D.N.Y. July 8, 2009) ("a document will not become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical communications between corporate employees"). Similarly, such documents are not protected by the work product rule if a similar document would have been created in the ordinary course of business – even if this particular document was created in anticipation of litigation. *Gulf Islands Leasing,* 215 F.R.D. at 474.

By way of example, Lockheed's descriptions of documents LM-PRIV-4813 and LM-PRIV-4814 (Weber Decl., Exh. D, lines 50 and 51) (which are attachments to the e-mail identified as LM-E-01188893) appear to be clear examples of documents that were either created in the ordinary course of business or would have been created in a substantially similar form notwithstanding their proximity to litigation, and thus are not protected by the work product rule. These two documents are attached to a July 7, 2009, e-mail from non-attorney Charles Saunders to non-attorney Ken Asbury, which itself provides no indication about the nature of the attachments. The file names, visible within the email – "MTA IS&GS Sev 1-2 Variances with Contract Waiver Requests.ppt" and "CWR RQMTs.xlsx"[4] – suggest that the documents are merely project documents regarding problems with the testing program, open testing "variances" and requests that MTACC waive requirements to accommodate test failures. This is further supported by Lockheed's description of these documents as "prepared by client (re testing requirements)." Lockheed has failed to meet its burden of establishing that these documents are privileged.

Similarly, the draft letters regarding "Job Progress" (LM-PRIV 4348, LM-PRIV-808 on Weber Decl., Exh. D, lines 12 and 13) appear, based on the information provided, to be predominantly project, *i.e.*, business, documents. LM-PRIV-808 was transmitted from James Gaughan, the Lockheed IESS Program Manager, to Donato Antonucci, an assistant, on October 7, 2008, and purports to contain comments of counsel Robert Pezzimenti regarding the progress of the IESS Project. Lockheed's description of this document, however, does not indicate that Mr. Pezzimenti's comments were of a predominantly legal character. Instead, Mr. Pezzimenti

---

[4] "IS&GS" is the acronym for the Lockheed division that replaced "Transportation Security Solutions" – the Lockheed division that was involved in the IESS project. "Sev 1-2" refers to the "severity" of requirements test failures (i.e. "variances"). "CWR" stands for contract waiver requests, and "RQMT" stands for requirement.

appears to be providing his business advice. *Rossi,* 73 N.Y.2d at 592 ("[U]nlike the situation where a client individually engages a lawyer in a particular matter, staff attorneys may serve as company officers, with mixed business-legal responsibility."). However, even if the draft of the letter upon which Mr. Pezzimenti commented does contain comments rendering legal advice, it should, at least, be produced with Mr. Pezzimenti's comments redacted.

Further, Lockheed has withheld 10 copies of documents that purport to be either drafts of Lockheed's response to the MTA's May 26, 2009 default notice or executive summaries of MTA's default notice on the grounds that they were "prepared at direction of legal counsel in light of and in furtherance of ongoing litigation." (*See* LM-PRIV-2708, Weber Decl., Exh. D, line 35.) As an initial matter, there is no indication from the log descriptions that these documents concern legal advice. Therefore, they are not protected by the attorney-client privilege. Additionally, a draft response to a default notice or a summary of a default notice are quintessential examples of project documents that would be created in the ordinary course of business, not because of litigation. Indeed, Lockheed has relied on MTA's drafts of the default notice during Lockheed's depositions of MTA witnesses. Apparently, they would keep back the very same type of documents they documents they believe they are entitled to see from the other side. In any case, Lockheed has failed to provide any evidence that the attorney-client or work product privileges should attach to these documents, and they should be produced.

Finally, as set forth above, Lockheed attempts to shield many of the documents it is withholding under the guise of settlement negotiations. For example, Lockheed describes document LM-PRIV-4582 as a "powerpoint titled 'MTA Return to Green.'" (Weber Decl., Exh. D, line 46). Lockheed asserts that this document was created in advance of the mediation held before this Court at the direction of counsel. However, Lockheed's description of this document

utterly fails to indicate that this document contains any rendition of legal advice or information concerning settlement or negotiations, even if it was created at the direction of counsel. Furthermore, even if this document was created sequentially in time prior to the court mediation, it appears to be a non-privileged presentation setting forth the details of how Lockheed believes it can restart and complete its work on the IESS Project.  Such information is not work product because a similar document would be created in the ordinary course of business and not because of litigation.   Accordingly, Lockheed has failed to meet its burden of proving that the information contained in LM-PRIV-4582 is protected by the attorney-client privilege or work product rule.

The foregoing are but a few examples of Lockheed's overreaching in withholding relevant documents on a claim of privilege.  The 56 documents in this category – documents neither sent to or issued by counsel – should be produced in full.

### C.    Lockheed Must Produce Documents Where, Notwithstanding That the Sender or Recipient is In-House Counsel, The Documents Are Not of a Predominantly Legal Character

The 57 documents in this category, though consisting of communications between in-house counsel and client, likewise do not meet the standard to be protected by privilege.  Where in-house counsel also serves as a business advisor within the corporation, only those communications related to legal, as contrasted with business, advice is protected.  *Rossi*, 73 N.Y.2d at 593; *see also TVT Records v. Island Def Jam Music Group,* 214 F.R.D. 143, 144 (S.D.N.Y. 2003); *ABB Kent-Taylor, Inc. v. Stallings & Co.,* 172 F.R.D. 53, 58 (W.D.N.Y. 1996) ("[T]here is no privilege for corporate counsel who is giving, or corporate employees who are seeking, predominately business advice as opposed to legal advice.");  *AIU Ins. Co.*, 07 CIV.7052 (SHS)(HBP), 2008 WL 4067437 (S.D.N.Y. Aug. 28, 2008).   As described on

Lockheed's privilege log, the documents in this category are not "primarily or predominantly of a legal character." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377 (1991).

Lockheed appears to be improperly withholding documents concerning ordinary business information and/or business advice merely because they were transmitted to counsel. For example, documents LM-PRIV-1234 and LM-PRIV-1240 are described as "MTA IESS White Paper re 'MTA IESS/C3 Test Status' (Weber Decl., Exh. D, lines 95 and 97); LM-PRIV-1595 pertains to a "MTA Default Notice – Opportunity to Cure Executive Summary" (Weber Decl., Exh. D, line 102); and LM-PRIV-1758 is described by Lockheed as a "Systra Slideshow." (Weber Decl., Exh. D, line 60).[5] These documents appear to contain project information. The mere act of copying counsel on an e-mail directed to others does not render it privileged. "A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156, 163-64 (E.D.N.Y. 1994); *accord*, *In re Grand Jury Proceedings*, 2001 WL 1167497 *24 n.41 (S.D.N.Y. Oct. 3, 2001).

With respect to this category of documents, Lockheed's descriptions do not demonstrate that they are of a predominantly legal nature. Furthermore, as discussed above, a response to a default notice or an executive summary regarding a default notice is a project document and one that would be created in the ordinary course of business regardless of litigation. Similarly, an MTA IESS White Paper regarding "MTA IESS/C3 Test Status" appears to provide vital information regarding Lockheed's inability to properly pass software tests, and the "Systra Slideshow" appears to concern the undertaking of a subcontractor's work on the IESS Project. While these documents were shared with counsel, that is an insufficient basis for warranting

---

[5] Systra was a subcontractor to Lockheed on the IESS Project.

protection under the attorney-client privilege.  Moreover, as project-related documents, they appear to have been created in the ordinary course of business and are therefore not protected work product.

Lockheed is also improperly withholding documents merely because counsel has been *copied* on communications among non-attorneys.  For example, LM-E-01188992 was sent from non-attorney Jim Gaughan (the program manager) to non-attorney Judy Marks (the business unit president) and non-attorney Dick Hughes (another executive).  Weber Decl., Exh. D, line 80.  This document was copied to an additional six individuals, only two of whom are attorneys.  Nonetheless, Lockheed redacted this document because Lockheed asserts it contains a non-attorney's "request for guidance from team including attorneys Sweeney and Pezzimenti."  *See United States Postal Serv.*, 852 F.Supp. at 163-64 ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel.").  There is no indication in Lockheed's description of this document that Mr. Gaughan is requesting legal advice from Mr. Sweeney or Mr. Pezzimenti, or that this document was created because of litigation.  Instead, the produced portions of this document reveal that Lockheed is struggling to explain why it is reducing staff and slowing progress on the IESS Project, and Mr. Gaughan is seeking business advice from all of the recipients of this documents on how it can respond to the MTA.  This appears to be a classic example of trying to insulate communications from disclosure via the device of routing them through an attorney.  These documents should be produced.

Finally, Lockheed is withholding documents directly to or from counsel that should be disclosed because these communications appear to concern primarily business advice or project information and not legal advice.  Document bearing LM-PRIV-2746 is an email from non-attorney Jennifer Rice to attorney Barbara Loscalzo.  Weber Decl., Exh. D, line 58.  This email is

dated March 2, 2007, and is described as "Email from client to in-house counsel ('Loscalzo' regarding financial reserve status, post-filing of litigation)."   As an initial matter, in March 2, 2007, there was no pending litigation and therefore Lockheed's description is misleading. Secondly, there is no indication in Lockheed's description that the information contained within this document has anything to do with the giving or receiving of legal advice.   Accordingly, Lockheed appears to be relying solely on the fact that Ms. Loscalzo is an attorney and has therefore failed to meet its burden of establishing the existence of attorney-client privilege for this document.

Correspondence to or from in-house counsel is not presumptively privileged.   The proponent of the privilege bears the burden of establishing its protection beyond mere reliance on the fact that the sender or recipient was an attorney.   Since these documents, by their description and context, do not establish that they are of a predominantly legal character, this category of documents should be produced.

> D.   **The Attorneys' Declarations Submitted by Plaintiff Are Insufficient to Meet Its Burden of Establishing Privilege For The Documents at Issue**

To support its Motion for a Protective Order, Plaintiff submitted declarations from five in-house attorneys and its outside counsel, Michael Chartan.   None of the documents identified in these declarations establish that the documents in question are privileged.   To the contrary, each of the supposedly illustrative examples bolster Defendants' arguments as stated above. Nearly all of the attached and referenced documents are addressed to several non-attorney personnel and appear to contain non-legal communications.   Neither the privilege log descriptions nor the context, in the case of redacted documents, establish privilege for the

documents in question and the declarations of counsel add no real support for Lockheed's contentions.

None of the declarations provided by Plaintiff's in-house attorneys offers any additional context or description of the documents in question. Rather, they each identify the same six "categories" of documents, using the same cut-and-pasted language and provide supposedly illustrative examples, with the exceptions of the declarations of Messrs. Murray and Dedman, which provide no exhibits or references to any actual documents at issue.

Ms. Loscalzo's declaration refers to five documents, three of which are partially redacted documents offered as exhibits to the declaration. Exhibit B to Ms. Loscalzo's declaration contains two fully redacted messages from an e-mail chain dated April 28, 2009. The earlier of the two is a message from Mr. Gaughan to Messrs. Antonucci and Pezzimenti, and copied to Ms. Loscalzo and two non-attorney Lockheed executives. The subject of the message, "Quick update on MTA program status," does not suggest a request for legal advice or a response to counsel, and the privilege log description provides little more, other than to suggest that counsel is requested to review the draft of an internal e-mail. Similarly, Exhibit C contains a fully-redacted message from non-attorney Jeffrey MacLauchlan to seven Lockheed employees, including three attorneys, and copied to an additional six employees, of which Ms. Loscalzo is the only attorney. The subject of the message is "MTA Update" and the privilege log description suggests that the message summarizes a teleconference. Had Plaintiff provided any additional information now or during any of the meet-and-confer sessions, or more narrowly redacted this document (and many others), Defendants might have an understanding of why this document is being withheld. However, the inadequacy of Plaintiff's privilege log and the complete lack of helpful information in Ms. Loscalzo's declaration require Defendants to continue to press the

20

challenge and to look skeptically on all similarly withheld or redacted documents.  Exhibit D contains a number of redacted messages.  Several of them are sent between non-attorneys.  One appears to be specifically directed to a non-attorney, Barbara Humpton, from a non-attorney, Jeffrey MacLauchlan.  The July 7, 2009, e-mail, sent at 7:30, is redacted, except for the greeting, "Barbara H," and the signature, "Thanks. Jeff."   With the information provided thus far by Plaintiff, this message - along with the other redacted messages in this document - appears not to be privileged or protected by work product.

The other two documents referenced in Ms. Loscalzo's declaration are among those withheld in their entirety by Lockheed, leaving Defendants to use Plaintiff's privilege log descriptions to determine the merits of the privilege assertion.  Here again, Ms. Loscalzo's declaration offers no additional information that might help Defendants understand this assertion of privilege.  The first of the two documents, LM-PRIV-1595, is described as "4-30-09 'MTA IESS White Paper re 'MTA IESS/C3 Test Status,'" (Weber Decl., Exh. D, line 102) suggesting that it is merely a project status report prepared by non-attorneys.  Lockheed's claim, in its privilege log, that this "white paper" was "prepared at direction of counsel, in furtherance of [Lockheed] litigation and in response to MTA allegations responding to [Lockheed] Complaint" does not place this document under the protection of the work product doctrine if the document would have been created in a substantially similar form.  *Gulf Islands Leasing*, 215 F.R.D. at 474.  The other document, LM-PRIV-1548, was sent by and to non-attorneys.  Weber Decl., Exh. D, line 27.  Though Plaintiff's expanded description identifies that attorneys appear earlier in the email chain that led to this message, it does not make clear that the contents of that primary message should be subject to privilege.  Indeed, between the expanded description and the log entry, Plaintiff cannot determine what privilege should be asserted – the log identifies this

document as "Privileged – AC," while the expanded description claims "attorney-client privileged and/or work product prepared at direction of counsel in furtherance of ongoing litigation."  Davis Decl. Exh. L1, line 42.

Robert Pezzimenti's declaration is equally uninformative and the exhibits and referenced documents fail to illustrate, and indeed undermine, Plaintiff's claims of privilege.  Like Ms. Loscalzo,  Mr. Pezzimenti refers to five wholly or partially withheld documents, three of which he attached as exhibits.  The redacted portion of Exhibit A is part of an email message sent by Mr. Gaughan to non-attorney Mike Aylward and Mr. Pezzimenti, and is copied to two additional non-attorney employees.[6]  The assertion of privilege here is inherently dubious, as the last unredacted portion of the message is Mr. Gaughan's greeting to "Mike / Bob", indicating that the message must be more than purely legal and leaving Defendants to guess as to whether the predominant purpose of the communication is legal.  Having left this determination ambiguous, Plaintiff has failed to meet its privilege log burden as to this document.  Exhibit B similarly suggests that it contains non-legal discussion, despite the presence of an attorney among other recipients.  In spite of the claim in the privilege log description that Mr. Antonucci was seeking Mr. Pezzimenti's review of the attached documents, the subject, attachments and other recipients suggest that this message contains non-legal discussion that is not subject to the protections of privilege.  Exhibit C contains two messages that are redacted in full, both of which include Mr. Pezzimenti as one of three recipients on a message sent by a non-attorney.  As with Mr.

---

[6] Defendants must also note that this exhibit is misidentified in Mr. Pezzimenti's declaration, ¶ 7a, as appearing on Line 23 of the spreadsheet found in Tab 2 of Exhibit L of Mr. Davis's declaration, and bearing the Bates number LM-PRIV-938.  After some investigation, prompted by the inconsistent description found at Line 23 and the document presented as Exhibit A, Defendants determined that Exhibit A is, in fact, described on Line *25* of that spreadsheet.  Exhibit B is similarly misidentified, appearing on Line 13 of Exhibit L, Tab 2, rather than Line 12, as indicated at ¶ 7c of Mr. Pezzimenti's declaration, and bearing the Bates number LM-PRIV-591, rather than LM-PRIV-3334 as indicated in the declaration.

Pezzimenti's Exhibit A, the earlier of the two messages here is specifically addressed in the body

of the e-mail to non-attorneys, in addition to Mr. Pezzimenti, beginning, "Jim/Dick/Bob".  While

the privilege log description states that these messages are requests for the assistance of counsel,

the visible portions suggest that at least some of the redacted content is non-privileged project

information.  For all of these documents, Mr. Pezzimenti's declaration adds no useful context to

support the assertion of privilege.

The two other documents referenced in Mr. Pezzimenti's declaration, both withheld

entirely, are similarly suspect.  The first, LM-PRIV-5787, is correspondence completely between

non-attorneys in April 2008.  Weber Decl., Exh. D, line 7.  The expanded privilege log

description does little to support the assertion of privilege as to this "email among client

representatives."  The second, LM-PRIV-4336, is also a message sent between two non-attorney

employees and copied to five others, of which Mr. Pezzimenti is the only attorney.  Weber Decl.,

Exh. D, line 77.  Plaintiff seeks to shield this internal presentation solely by virtue of in-house

counsel having been "cc'd".  Such an assertion runs contrary to established case law.  *See United*

*States Postal Serv.*, 852 F.Supp. at 163-64.

Exhibit A to Daniel Sweeney's declaration further undermines Lockheed's assertions of

privilege in that it appears to speak strictly about project information and seeks to protect a

message on which the attorneys appear only in the "cc" field.[7]   Plaintiff's expanded privilege

log description does nothing to diminish Defendants' skepticism as to the assertion of privilege,

nor does Mr. Sweeney's declaration.  Exhibit B to Mr. Sweeny's declaration is the same

document as Exhibit B to Mr. Pezzimenti's declaration and the assertion of privilege as to this

---

[7] This exhibit is misidentified in Mr. Sweeney's declaration as appearing on Line 19 of Davis
Exhibit L, Tab 2, bearing the Bates number LM-PRIV-3394.  In fact, it appears on Line 20
bearing Bates number LM-PRIV-2293, or LM-E-01143571.

document suffers the same flaws.[8]  Exhibit C appears to be a classic project document.  Though it is narrowly redacted, the redacted portions and surrounding text bear no indicia of legal communication.

The declarations of Lockheed's in-house attorneys provide no new information and merely rehash Plaintiff's self-serving *ipse dixit* that their in-house attorneys only provided legal advice.  Rather than using their declarations to clarify the details of their roles within Lockheed or add context to the documents at issue, which they are required to do, Lockheed's in-house attorneys chose to submit nearly identical declarations providing no detail beyond "see, e.g."

## II.  THE COURT SHOULD DENY PLAINTIFF'S MOTION TO COMPEL AND GRANT DEFENDANTS A PROTECTIVE ORDER SHIELDING THE DOCUMENTS CHALLENGED BY LOCKHEED FROM DISCLOSURE

Lockheed's Motion to Compel fails, as a matter of law, to support the disclosure of the 142 privileged documents that Lockheed continues to challenge.  As set forth below, Lockheed's categorical attack on the privileged nature of Ms. Hakim's documents merely by virtue of her "multiple hats" is meritless.  Additionally, Lockheed misconstrues the role of the Independent Engineering Consultant and argues its point by inapposite analogy.  The Court should deny Lockheed's motion to compel and issue a protective order instead.

Rule 26(c) of the Federal Rules of Civil Procedure provides that a party may seek a protective order to prevent disclosure of documents sought during discovery.  Defendants have, in good faith, conferred with Plaintiff on multiple occasions, and exchanged several rounds of privilege logs with expanded descriptions of the challenged documents to explain the basis for Defendants' assertions of privilege.  Despite these efforts, the parties are unable to resolve their

---

[8] Both exhibits also suffer the same misidentification within their respective referring declarations.  As indicated in footnote 6, *supra*, this document actually appears at Line 13 of Exhibit L, Tab 2, bearing the Bates number LM-PRIV-591.

dispute over these final 142 documents.     Accordingly, for the reasons set forth below, we respectfully submit that there is good cause for this Court to enter a protective order forbidding disclosure of the documents challenged by Lockheed, because the documents are protected by privilege and are immune from discovery. *In re September 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) ("Typically, to obtain a protective order, a party must show good cause.").

Lockheed's categorization of Defendants' documents confuses the issues by organizing the documents based on Ms. Hakim's alleged roles (while ignoring her role as General Counsel) rather than the substance of the underlying communications.  Lockheed's approach is contrary to applicable law, which recognizes the complex role of in-house counsel.    Accordingly, Defendants have placed the 142 documents at issue into five categories, based on the substance of the communications.  Each of these categories was communicated to Lockheed by way of Defendants' expanded privilege log descriptions over the last six months.  As set forth below, Lockheed's continuing challenges to the privileged status of these documents are without merit.

### A.     Claims & Settlement Documents

The first category of documents that Lockheed challenges relates to contractor claims Lockheed asserted against Defendants during the Project, Defendants' concurrent development of claims against Lockheed, and settlement discussions between the parties related to those claims.[9]  These documents reflect Ms. Hakim's role as General Counsel serving in her capacity as attorney, dispensing legal advice in response to those claims, requesting information to enable her to furnish that advice, and engaging in discussions of legal strategy with other MTA and MTACC personnel regarding the claims.   Although some of these documents (document numbers 1-39 of Weber Decl., Exh. F) were created during the period when Ms. Hakim was *also*

---

[9] Documents containing such descriptions appear in several of Lockheed's categories, underscoring the confusion caused by their approach.

serving as Acting President (while continuing to serve as General Counsel), this fact standing alone does not negate the legal nature of the communications.  Significantly, at no time did Ms. Hakim cease her duties as General Counsel.  Ms. Hakim maintained her responsibilities as the most senior attorney at MTACC throughout the IESS Project, and her role as Acting President did not alter or diminish her role as General Counsel or the legal nature of her communications in furtherance of that role.  Hakim Decl. ¶ 16.

The New York Court of Appeals has long recognized that a corporate entity, just like any other client, may avail itself of the attorney-client privilege for communications with its attorneys, including in-house counsel.  *Rossi*, 73 N.Y.2d at 592.   New York courts have fully recognized that in-house attorneys perform dual functions, serving as company officers with mixed legal and business responsibilities.  *Id.*  That fact in no way negates the legal role of such officers or employees.  The challenge for the Court in each case is to determine whether the communication "is primarily or predominantly of a legal character."  *Id.* at 594.  As the Court in *Rossi* made clear, "the privilege is not lost merely by reason of the fact that it also refers to nonlegal matters."  Whether such communications are privileged is a fact specific determination, that requires an examination of the lawyer's communication "in its full context . . . ."  *Spectrum Systems Int'l Corp*, 78 N.Y.2d at 378-79.

The Second Circuit has endorsed the "predominant purpose" test in reviewing the privileged status of documents created by individuals "wearing two hats."  The court in *In re County of Erie*, 473 F.3d 413 (2d Cir. 2007), analyzed this question by "consider[ing] whether the predominant purpose of the communication is to render or solicit legal advice."  *Id.* at 420.  The *Erie* court explained that the "complete lawyer" may include a broader analysis, such that some of the information, standing on its own, might not be deemed legal advice, but when taken

as a whole, the communication is fairly regarded as a privileged legal communication.  *Id.* at 420-21.  Thus, "[t]he predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."  *Id.*  Further, the court held that, "[i]mportantly, redaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication."  *Id.* at n.8.

The documents in this category (Document numbers:  1-39 of Weber Decl., Exh. F) are protected by attorney-client privilege because they were exchanged between Ms. Hakim and MTA and MTACC personnel, and they were not disclosed to a third party.  *Allied Irish Banks*, 252 F.R.D. at 168 (quoting *Rossi*, holding that "[u]nder New York law, a communication is protected by the attorney-client privilege when it is made between an attorney and client 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship'"); c*f. People v. Osorio*, 75 N.Y.2d 80, 84 (1989) ("Generally, communications made between a defendant and counsel in the known presence of a third party are not privileged.").

Documents 1-39 are privileged because they contain Ms Hakim's legal advice to MTA and MTACC personnel in response to purportedly contract-based claims asserted by Lockheed, and in order to prepare potential counterclaims claims by MTA against Lockheed.  Hakim Decl. ¶ 11.  The context of these claims militates in favor of finding that the communications served a predominantly legal purpose.  For example, Lockheed would make a variety of claims for additional compensation for what it alleges was extra work or delay.  Consideration of such

claims, and communication about them, along with consideration of the MTA's or MTACC's rights against Lockheed, falls squarely within the role of in-house counsel.

Similarly, documents 1-39 are privileged because, in order to provide this legal service, Ms. Hakim needed analysis and factual information from non-attorney project personnel. Hakim Decl. ¶ 7. Due to the IESS project personnel's familiarity with the contract documents (which include technical specifications, drawings and the like) this project information not only included information regarding Lockheed's progress, but also relevant contract provisions. Hakim Decl. ¶ 7, 11. Ms. Hakim's responses to MTACC personnel regarding the claims asserted by Lockheed and Ms. Hakim's requests for such information and analysis from non-attorneys in furtherance of her legal advice fall squarely within the attorney-client privilege. *See Allied Irish Banks*, 252 F.R.D. at 168 ("A communication between an attorney and the agent or employee of a corporation may be privileged where the agent 'possessed the information needed by the corporation's attorneys in order to render informed legal advice.'") (citations omitted); *see also United States v. Davis*, 131 F.R.D. 391, 404 (S.D.N.Y. 1990) ("Furthermore, the attorney-client privilege encompasses factual investigations by counsel.") (citing *Upjohn Co. v. United States,* 449 U.S. 383, 390–91 (1981)).

Finally, all of the documents at issue in this category were either sent to or from Ms. Hakim and/or were intended to be and were kept confidential, and were not meant to be conveyed to any outside party. Hakim Decl. ¶ 6. *Allied Irish Banks*, 252 F.R.D. at 168; *see also United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958) ("it is well established that communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others").

Documents in this category are also protected from disclosure by the work product doctrine pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure. *William A. Gross Const., Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 359 (S.D.N.Y. 2009) (work product doctrine applies to "(1) []a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative"). All the documents at issue in this category were created by Ms. Hakim or for Ms. Hakim by MTA and MTACC personnel in direct response to a multitude of claims asserted by Lockheed during the project.  As a result, these documents concern an evaluation of the legal claims asserted by Lockheed under its contract, and a consideration of Defendants' potential claims against Lockheed, along with evaluations of the strengths and weaknesses of Lockheed's claims for purposes of settlement.  Accordingly, these documents are protected from disclosure under the work product doctrine. *United States v. Adlman*, 134 F.3d 1194, 1196-97 (2d Cir. 1998) ("Analysis of one's case in anticipation of litigation is a classic example of work product and receives heightened protection under Fed. R. Civ. P. 26(b)(3)."); Hakim Decl. ¶ 11.

Lockheed contends that the documents it challenges are not protected by the work product doctrine because defendants did not issue a litigation hold until April 30, 2009.  Pl. Mem. 25-26.  In support of its contention, Lockheed makes a blanket assertion that the absence of a litigation hold indicates that MTA did not anticipate litigation. *Id.*  This contention is without basis and Lockheed cites no authority in support of it.  If the nature of the communications are such that, but for the prospect of litigation, the material would not otherwise have been made, then the material in question is – by definition – work product, notwithstanding the issuance of a notice issued within the corporation to preserve documents.  The litigation hold arose as a practice for preserving documents that may be relevant in an ensuing litigation and its

issuance or non-issuance may come into play in a motion concerning spoliation. *See, e.g. Medeva Pharma Suisse A.G. v. Roxane Laboratories, Inc.*, 2011 WL 310697, *15 (D.N.J. Jan. 28, 2011); *Sanofi-Aventis Deutschland GMBH v. Glenmark Pharmaceuticals Inc.*, USA, 2010 WL 2652412, *5 (D.N.J. Jul. 1, 2010). But there is neither authority nor logic backing Lockheed's assumption that issuance of a notice is a pre-requisite for establishing that a given document was created in anticipation of litigation. [10]

### B.        Board Briefing Correspondence & "Talking Points" Memoranda

The second category of documents (document numbers: 62-80 of Weber Decl., Exh. F) challenged by Lockheed consists of documents prepared by Ms. Hakim to inform the MTA Board of Directors ("MTA Board") of the progress of the IESS Project and to provide legal advice regarding claims against the MTA and MTACC. As explained by Ms. Hakim, in her capacity as counsel to MTACC, she was responsible for preparing presentations to the MTA Board regarding the status of various aspects of the MTACC capital program. This included briefing the board on legal matters, such as assessing the legal claims being made and the status of litigation. When legal matters, including actual or potential litigation, were presented and discussed during these meetings, the Board would convene in "Executive Session" in accordance with New York Public Officers Law §105, and therefore, the presentations made and discussions relating to legal matters were neither open nor disclosed to the public. Hakim Decl. ¶ 8-9.

In preparation for these meetings, Ms. Hakim would sometimes prepare "talking points" or other briefing memoranda. These documents would contain not only information regarding the progress of the IESS Project, but also discussion or assessment of legal claims, including the

---

[10] We hasten to add that Lockheed has asserted work product privilege for numerous documents created prior to the issuance of its first litigation hold on April 18, 2008. See Weber Decl. at ¶¶ 45-50.

status of claims, litigation strategy and legal advice in response to anticipated and/or pending litigation.  To prepare these briefing documents and in order to provide her client, the MTA Board, with accurate project information and effective legal advice, Ms. Hakim invited and received input on these documents from executives, employees, and agents of the MTA and MTACC.  These documents were shared with individuals from the MTA and MTACC with the understanding that these communications were privileged, confidential, and not subject to disclosure.  Indeed, all individuals who received information regarding the IESS Project and any related claims or litigation were governed by strict confidentiality and non-disclosure agreements.  It bears noting that, because these documents also contain non-privileged Project information, Defendants have produced these memoranda, redacting only those portions relating to communications having a predominantly legal character and/or prepared because of litigation. Hakim Decl. ¶ 6, 9.

Lockheed's continued challenges to these documents are without merit.  First, all of the documents at issue in this category were either created by Ms. Hakim, or for Ms. Hakim by MTA and MTACC employees, executives and agents.  Hakim Decl. ¶ 6.  Second, the material redacted and withheld from these documents contains counsel's legal advice and analysis regarding actual or potential claims and litigation filed against the MTA and MTACC.  For example, documents 68-77 of Weber Decl. Exh. F are dated from April 28, 2009, and April 29, 2009 and were created only days after Lockheed began this lawsuit, in direct response to the filing of this action.  These documents were produced in redacted form.  The redacted portions of these documents contain Ms. Hakim's legal analysis of the strengths and weaknesses of the claims asserted by Lockheed in their complaint, to assist the MTA Board in deciding how to proceed in response to Lockheed's claims.  These documents were described on Defendants'

privilege logs as such.  Similarly, documents 78-80 of Weber Decl., Exh. F were created in May 2009 (subsequent to the complaint filed by Lockheed in this action) and, as indicated in the preamble to these documents (which was disclosed to Lockheed), these documents were created to provide the MTA Board with information regarding the lawsuit and contain the MTA's "litigation strategy" in response to the claims asserted by Lockheed.  Like the April 2009 Talking Points, these May 2009 documents were created by Ms. Hakim to provide updates to the MTA Board in closed Executive Session and evaluate the strengths and weaknesses of Lockheed's claims against the MTA.  Hakim Decl. ¶ 9.  They were described as such on Defendants' privilege logs.

Finally, documents 62-67 of Weber Decl., Exh. F in this category are dated prior to the filing of Lockheed's lawsuit in April 2009.  The information that is redacted from these documents was created in response to contract-based claims arising during the IESS Project.  In the redacted portions of these documents, Ms. Hakim assesses the merits of those claims and considers settlement strategy.  Hakim Decl. ¶ 8-9, 11.

All of the documents described above (or the redacted portions at issue) contain Ms. Hakim's evaluations of the claims made by Lockheed against the MTA and MTACC and were made in furtherance of the core purpose of the attorney-client privilege.  *In re County of Erie*, 473 F.3d at 418 ("[i]ts purpose is to encourage attorneys and their clients to communicate fully and frankly") (quoting *Upjohn,* 449 U.S. at 389).

Finally, all of these documents were intended to be confidential.  As set forth above, the information contained in these documents regarding actual or potential litigation was for presentation to the MTA Board in Executive Session under Pub. Off. Law §105 and was not intended to be disclosed and was, in fact, exempt from disclosure under New York law.  Further,

none of these documents were sent to individuals who were not agents or personnel of the MTA and MTACC and it was understood that all information contained in these documents was confidential and privileged.   Hakim Decl. ¶ 6.   Accordingly, the withheld portions of these documents are protected by the attorney-client privilege and should not be disclosed to Lockheed.   *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (the attorney client privilege is sustained when it is established "that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client.").

In addition to the attorney-client privilege, the withheld information in this category of documents also satisfies the requirements of the work-product doctrine.   *William A. Gross Const.*, 262 F.R.D. at 359 ("the material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative").   As set forth above, the first and third requirements of the work product doctrine are met because the documents at issue in this category were prepared by Ms. Hakim or for Ms. Hakim by employees, executives, and agents of the MTA and MTACC.   Further, the second requirement is met because the redacted information relating to or contained within the April 2009 and May 2009 talking points was meant to provide an analysis of the strengths and weaknesses of Lockheed's claims in direct response to the instant action that was filed on April 24, 2009; and those documents relating to or contained within the June 2008 talking points relate to legal claims asserted by Lockheed during the Project.   Hakim Decl. ¶¶ 8-9; *Adlman*, 134 F.3d at 1196-97   ("Analysis of one's case in anticipation of litigation is a classic example of work product and receives heightened protection under Fed. R. Civ. P. 26(b)(3)."); *United States v.*

*Dist. Council of New York City & Vicinity of United Broth. of Carpenters & Joiners of Am.*, 90 CIV. 5722 (CSH), 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992) ("An attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case and the inferences he draws from the facts are all opinion work product.").

Lockheed's ignores the above facts and misleads the Court by tossing in a red herring when it assets that it has not challenged any of Defendants' documents dated July 2009, a month after Defendants terminated Lockheed for failing to meet their contractual obligations. Pl. Mem. 25. Lockheed ignores the date it filed the instant lawsuit as well as the dates it pressed its numerous legal claims, thereby obscuring the significant events and corresponding dates that need be considered in applying the work product doctrine. [11]

### C.   MTA's Independent Engineering Consultant

Lockheed claims that Defendants have waived protection as to a subset of these documents because they were disclosed to an alleged third-party: a project manager employed by

---

[11] Among Lockheed's wilder assertions is that Defendants have "selectively disclosed" documents prepared for or sent to Ms. Hakim and that Defendants are "suspiciously assert[ing] privilege and work product protections over documents that might undermine their contentions." Pl. Mem. 27. In support of this assertion, Lockheed cites to an April 2009 talking points document that was produced to Lockheed with redactions. *Id.* Lockheed simply twists an assertion of privilege over a portion of a document that is of a predominantly legal nature into a bogus "sword/shield" assertion. The logical extension of Lockheed's argument is that the document should be produced either entirely or not at all, but this is not proper where, as here, a document prepared by or for counsel may have a combination of protected and unprotected communication. What is disturbing, however, is that the document cited by Lockheed is similar and contains comparably privileged materials to documents produced inadvertently without the redactions. These documents were the subject of an MTA clawback demand. *See* Weber Decl., ¶¶ 76-79. Given the apparent substantive references to the redacted materials, it appears that counsel have read and are now using it in violation of Fed. R. Civ. P. 26(b)(5)(B) ("a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved.").

the MTA's statutorily required Independent Engineering Consultant ("IEC"), David Horn.  Pl. Mem. 27-31.  Plaintiff's assumption is without basis.

Pursuant to New York Public Authorities Law ("PAL") §1263(4)(b), the chairman of the MTA must establish a capital program oversight committee ("CPOC").  The committee is to consist of members of the MTA Board.[12]  The purpose of CPOC is to assist the Chairman of the MTA and the MTA Board in the performance of their duties.  In this capacity, CPOC monitors the approved or proposed five-year capital programs established by the capital program review board under PAL §1269(a), (b) and (c).  Included among the responsibilities of CPOC is the preparation of a quarterly report issued to the Chairman and the MTA Board on the activities of the capital program.  In connection with this function, CPOC is directed to consult with a "nationally recognized independent transit engineering firm."  PAL § 1263(4)(b).  This firm is retained by MTA and operates in accordance with a contract, which identifies the firm as the "Independent Engineering Consultant."   Mr. Horn is the representative of the IEC who was assigned to the MTA's capital security program, which includes the IESS/C3 project.  *See* Declaration of Ronald Saporita ("Saporita Decl," dated July 28, 2011 at ¶¶ 2-3, 5).

CPOC's work and, by extension, Mr. Horn's work, is for the sole purpose of assisting the MTA in its management of the capital programs.  Saporita Decl. ¶¶ 3, 5.  In his role as the IEC representative, Mr. Horn is given complete access to MTA and MTACC meetings, executives, and employees so that he can provide information to CPOC as appropriate in order for CPOC to perform its monitoring function in furtherance of its mandate to provide assistance to the Chairman and MTA Board as contemplated by the statute.  Saporita Decl. ¶ 7.  In connection

---

[12] Pursuant to PAL §1263(1), the MTA "is a body corporate and politic constituting a public benefit corporation."  It consists of "a chairman and 16 other voting members and two non-voting and four alternate non-voting members…."  The "members" comprising the "authority" are commonly referred to as the MTA Board.

with his responsibilities with the IEC, Mr. Horn was occasionally asked by MTA and MTACC executives and employees, including Ms. Hakim, to comment and provide input on the above talking points memoranda before this information was presented to the MTA Board.  Saporita Decl. ¶¶ 7, 12; Hakim Decl. ¶ 9.  To the extent that Ms. Hakim and/or other MTA employees or executives shared drafts of the June 2008 and April 2009 talking points with Mr. Horn, they did so with the understanding that Mr. Horn is an agent of the MTA for the purposes of fulfilling his statutory duties, and that all information contained in these talking points memoranda was confidential, privileged and not to be shared outside of the MTA.  Hakim Decl. ¶ 9; Saporita Decl. ¶¶ 10, 12; s*ee In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 217 (S.D.N.Y. 2001) (attorney client privilege extends to agents of the client).  It bears noting in this regard that Mr. Horn maintains an office and phone at the MTA and also communicates via an MTA email address.  Saporita Decl. ¶ 7.  Of course, as already discussed, information in these memoranda that predominantly relate to business, and not legal matters, has been produced to Lockheed.  But the memoranda, or redacted portions, containing predominantly legal material, remain privileged and the inclusion of Mr. Horn among those communications does not waive that privilege.

Separate and apart from Mr. Horn being an agent of the MTA and/or MTACC, no waiver could have occurred in any case since the communications in question also fall under work product protection.    Where work product is concerned, the confidentiality of such material is not waived solely by virtue of disclosure to a third party.  The work product protection is waived only when the information is provided to a potential adversary or used in a manner in which it is reasonably likely to be communicated to a potential adversary.  Where, on the other hand, work product is disclosed to a third party, the claim of work product protection may be maintained provided the third party is "aligned in interest with the author" of the work product.  *William A.*

*Gross Const.,* 262 F.R.D. at 361.  "[D]isclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver."  *Bodega Investments, LLC ex rel. Kreisberg v. United States*, 2009 WL 1456642 (S.D.N.Y. May 15, 2009).  Rather, a waiver of work product protection occurs when the covered materials are used in a manner that is inconsistent with the protection.  *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002). One circumstance that is inconsistent with the need for work product protection is when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary. *Id*.

The internal correspondence and drafts of documents that were exchanged with Mr. Horn, and challenged by Lockheed, did not waive the work product doctrine.  These documents are contained throughout Defendants' categories and are challenged by Lockheed as Davis Decl., Exh. E, Tab 5.  First, as discussed above, any documents shared by MTA and MTACC employees with Mr. Horn were shared with the understanding that the information contained within was confidential and it would not be shared with the public.  Secondly, there is nothing inherent in the statutory role of the IEC to suggest that Mr. Horn should be treated as an adversary.  To the contrary, PAL §1263(4)(b) provides that CPOC, to which the IEC provides information,  was formed to *assist* the Chairman of the MTA and its board – not serve as an adverse body.   Finally, requiring waiver of privilege by including the IEC in privileged communications – whether subject to attorney-client or work product – would limit the full amount of information available to the IEC, and would require that the IEC be excluded from meetings and communications with in-house counsel in order to preserve privileges.  This would impede his role and pose an unnecessary administrative burden on MTA counsel.  This cannot be

the result envisioned by the legislature when it required that CPOC consult with an engineer. Saporita Decl. ¶¶ 8-10, 12.

Lockheed's attempt to portray Mr. Horn as an auditor is inapt and disregards the facts communicated to Lockheed during the parties' "meet and confer" sessions. Mr. Horn's role was not one of a "scientist or engineer employed to gather data." Pl. Mem. 28. Neither was Mr. Horn an "independent public watchdog" who exists and reports outside of Defendants' structure, with some public role. Pl. Mem. 30-31. Instead, as per statute, the IEC's sole function is to provide information to the MTA's capital oversight committee, whose sole purpose, in turn is to provide assistance to the Chairman in the performance of his or her duties. Additionally, the IEC does not have any reporting duties external to the MTA. The IEC is an internal aid to a committee of the MTA intended to assist the Chairman. It is not an adversary within the meaning of the rule cited by Lockheed in connection with the waiver of privileges. Saporita Decl. ¶ 8.

### D.    Legal Options Memorandum & Related Legal Correspondence

The third category of documents challenged by Lockheed contains those documents and correspondence to or created by Ms. Hakim in her role as General Counsel and related to her evaluation of Defendants' legal options in response to Lockheed's performance on the IESS Project in 2008.

During the first half of 2008, and especially March 2008, Lockheed's failure to meet its contractual obligations under the IESS project reached a critical level and MTACC sought to evaluate its options with regard to Lockheed's continued work under the contract. For example, it is undisputed that in March 2008, MTACC took steps to serve Lockheed with a default notice in response to Lockheed's contractual deficiencies. In furtherance of evaluating the legal options

available to the MTA and MTACC in 2008, Ms. Hakim exchanged correspondence and accompanying analyses with project personnel and MTA managers in order to determine the options available to the MTA.   Hakim Decl. ¶ 10.   Ms. Hakim consolidated, in the form of briefing documents, the information provided to her by the project personnel in order to weigh the pros and cons of Defendants' options available.     These documents are identified by document numbers: 40-61 of Weber Decl., Exh. F.

The documents are protected by the attorney-client privilege and/or the work product doctrine.  These documents were created by Ms. Hakim in her capacity as General Counsel in order to render legal advice in response to Lockheed's failure to meet its contractual obligations under the IESS Project.  Hakim Decl. ¶ 10.  To the extent that Lockheed argues that Ms. Hakim was making such a decision in her role as Acting President, and not as General Counsel, it ignores the applicable law regarding the scope of legal advice.  As set forth by the Second Circuit in *In re County of Erie*, 473 F.3d at 420-21, legal advice does not merely consist of the interpretation of legal statues and cases, but also includes factual considerations:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it. The predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer. The more careful the lawyer, the more likely it is that the legal advice

will entail follow-through by facilitation, encouragement and monitoring.

Such is the case here.  The predominant purpose of these documents and correspondence directed to Ms. Hakim was to inform her so that she could ultimately provide legal advice regarding the pros and cons of the options available to the MTA given the status of the Project and Lockheed's performance.  In order to evaluate these options, Ms. Hakim received factual input from project employees and this information was incorporated into her documents.  Hakim Decl. ¶ 10.  Ms. Hakim's communications to these employees, her receipt of information from these employees, and her compilation of factual information into a briefing document, which contains her ultimate legal counsel – is privileged.  *Upjohn*, 449 U.S. at 390-91 ("the first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant"); *Davis*, 131 F.R.D. at 404 ("Furthermore, the attorney-client privilege encompasses factual investigations by counsel.") (citing *Upjohn Co. v. United States,* 449 U.S. 383, 390–91 (1981)).  Finally, these documents and communications were intended to be kept confidential and were not disclosed to outside parties.  Hakim Decl. ¶ 6, 10. Accordingly, Defendants have met their burden that these documents are protected by the attorney-client privilege and they should not be disclosed to Lockheed.

In addition, these documents are protected by the work product doctrine.  As set forth above, the first two requirements of the work product doctrine are met because these documents were created by Ms. Hakim or MTA and MTACC personnel.   Additionally, these documents were created in anticipation of litigation.  In March 2008, the time period when these documents were created, the parties had already asserted claims against each other and Lockheed was failing to achieve its contractual obligations.  Lockheed's failures to meet its contractual obligations and the claims already asserted by Lockheed caused Ms. Hakim to consider a legal strategy for

proceeding, just one year prior to Lockheed's institution of a lawsuit.  Hakim Decl. ¶ 10; *Univ. Sports Publications Co., Inc. v. Playmakers Media Co.*, 09 CIV. 8206, 2011 WL 1143005 (S.D.N.Y. Mar. 21, 2011) ("A document is said to be prepared in anticipation of litigation if, 'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'"); *William A. Gross Const., Assoc.,* 262 F.R.D. at 361 (finding documents were prepared in anticipation of litigation because counsel believed litigation was imminent due to claims asserted by the contractor).  Accordingly, such documents are protected by the work product doctrine.

### E.    Other Hakim Documents

The remaining documents do not allow for the same convenient collective analysis as the three categories above, but all fall under the protection of attorney-client privilege and/or the work product doctrine, as specified on Defendants' privilege log.

Again, that Ms. Hakim may have been wearing multiple "hats" when these documents were created is not dispositive.  As with all of the documents discussed herein, to fall within the attorney-client privilege, the communication must merely be of a "predominantly" legal character.  *Spectrum Systems*, 78 N.Y.2d at 378; *see also, supra*, Point II.A, at pp. 26-27, above). Defendants have engaged in a document by document review of each item in question to determine whether the communication in question, viewed in its proper context, can be deemed to be of a predominantly legal, as opposed to business, character.   The remaining Hakim documents are properly subject to the protection of attorney-client privilege and/or the work product doctrine.

For example, documents numbers 82-134 of Weber Decl. Exh. F are protected by the attorney-client privilege and/or work product doctrine.  In these documents, MTA and MTACC

employees request Ms. Hakim's internal review of documents such as potential correspondence to Lockheed or correspondence and/or reports to be issued to state agencies, such as the New York State Comptroller.   Hakim Decl. ¶ 12.   These documents were intended to be kept confidential because they request Ms. Hakim's legal advice to MTA and MTACC in connection with these communications.

For example, with respect to responses to queries from the Comptroller's office, Ms. Hakim was called upon as counsel to consider the proposed communications in the light of MTA's legal position regarding claims or potential or actual litigation.  Hakim Decl. ¶ 12.  Any communications with the Comptroller's office have been disclosed.  We withhold instead only internal communication to, from or by counsel that in context, are properly found to be of a predominantly legal nature.   Similarly, the communications withheld by Defendants in connection with Ms. Hakim's review of proposed correspondence to Lockheed is privileged.  In this regard, her role in reviewing Project correspondence is no different than that asserted by Lockheed's in-house counsel.  Lockheed merely asserts that such privilege should not attach to Ms. Hakim's documents because she wears "two hats," but (i) all in-house counsel, including Lockheed's in-house counsel, typically wear "two hats"; and (ii) that is simply not the legal standard for determining whether an in-house attorney's communications are privileged.   *See infra* II.A at pp. 25-30.  Further, the documents in this category were not exchanged with outside third parties.

Additionally, these documents would be protected by the work product doctrine.  Unlike those cases where work product protection was denied to an attorney's edits to a document because an attorney was only editing the documents, here Ms. Hakim was asked by MTA and MTACC personnel to review documents in light of the potential exposure to MTA and MTACC

in connection with claims and/or litigation.  Hakim Decl. ¶ 7, 10.  This constitutes work product. *See Rattner v. Netburn*, 88 CIV. 2080 (GLG), 1989 WL 223059 (S.D.N.Y. June 20, 1989) *aff'd* 88 CIV. 2080 (GLG), 1989 WL 231310 (S.D.N.Y. Aug. 23, 1989) ("If counsel chose in this case to perform a publicist's function, the documents prepared in that connection cannot be shielded by the work-product rule.").

      **F.**     **Lockheed's "Category 6"**

      Lockheed complains of recent, supposedly "inconsistent" disclosures in Defendants' final privilege log, claiming "newly-hatched" justifications that, it alleges, warrant skepticism by the Court in examining these documents.  The recent disclosures Lockheed refers to, however, are nothing more than the result of our revisiting MTA's privilege assertions following the June 28, 2011, meet and confer.  Lockheed's assertions are entirely objectionable and reflect counsel's unwillingness to play by the rules.

      This Court recommended during the January 19, 2011, conference that the parties use the meet and confer process to better understand each side's bases for their respective assertions of privilege, to minimize the scope of the dispute over privileged documents and advance the resolution of this dispute.  Pursuant to that recommendation, and with the assistance of this Court's order allowing the disclosure of privileged material pursuant to FRE Rule 502, both Lockheed and the MTA prepared revised descriptions of the documents in question in their respective privilege logs (referred to as "the fourth column") and then engaged in a series of meet and confer sessions. Counsel met on four occasions: February 8, 2011, March 30, 2011, April 15, 2011, and June 28, 2011.  Weber Decl., ¶¶ 24, 26, 29.  Each meet and confer resulted in reconsideration of positions, the production of additional documents, the concession of some challenges, and the production of revised logs.  Weber Decl. ¶¶ 21-35.

For example, following the April 15 meet and confer session, Lockheed again revised its logs and produced 35 documents in whole and 15 documents with redactions, and provided Defendants with a revised privilege log describing the documents it continued to withhold. Significantly, Lockheed took more than two months to perform this task, ultimately producing its revised privilege on July 1, 2011. Lockheed alerted Defendants to this production and revised privilege log during the parties' last meet and confer on June 28. Weber Decl. ¶¶ 30, 32-33.

Following the June 28 meet and confer, and in response to Lockheed's arguments, Defendants once again engaged in a wholesale review of the documents Lockheed challenged, through the lens of Lockheed's most recently revealed arguments. Within three weeks, Defendants reviewed those documents, produced 58 of them in whole or with redactions, and provided revised privilege logs with newly-enhanced descriptions in accordance with the protocol under which we had been operating. Weber Decl. ¶¶ 31, 34.

Absurdly, Lockheed's now seeks to cast the MTA's revised logs and final disclosures in an untoward light. The MTA's revised disclosure, with which Lockheed now takes umbrage, was the whole point of the last meet and confer.

Ironically, Lockheed's false accusations belie its own constantly shifting positions on the documents it continues to withhold. For example, as early as February 7, 2011, Lockheed described document LM-PRIV 5466 as withheld on the grounds of attorney-client privilege. Weber Decl., ¶ 54. In its July 1, 2011, privilege log, however, counsel asserted it was being withheld for attorney-client privilege *and* the work product doctrine. *Id.* Similarly, Lockheed withheld document LM-PRIV 1928 entirely for more than 5 months on the stated grounds of "Privileged Materials Prepared for Negotiation/Settlement" and then on July 1 produced it in

44

redacted form and claimed it was protected by attorney-client privilege and the work product doctrine. *Id.*

Of course, both sides were expected to revisit their positions after each meet and confer – that was the purpose of the process, especially given the number of documents at issue in this dispute. Nevertheless, Lockheed did not examine its own actions before it shot from the hip and accused Defendants of "inconsistent" disclosures and "newly-hatched" justifications. Lockheed's self-serving request that the Court not allow Defendants to "move the goal posts" and change their asserted privileges blindly misconstrues MTA's action, to say nothing of reflecting Lockheed's one-way street approach. Lockheed has no good faith basis for challenging the documents in this category other than its baseless assertions, and its challenges should be denied on their face.[13]

Indeed, Lockheed has used this argument as a back door to challenge documents described by Defendants as relating to Bruce Stephan, Defendants' expert, despite the parties' explicit agreement not to challenge such documents. These documents are document numbers 126-134 of Weber Decl. Exh F. During a meet and confer held on August 13, 2010, the parties agreed not to challenge certain documents related to Mr. Stephan and Lockheed's expert Doug Peterson. Under this agreement, Defendants agreed to produce a limited number of Bruce Stephan documents. The details of the parties' agreement was set forth and memorialized in correspondence to Lockheed's counsel dated September 8, 2010 (Weber Decl. Exh. M), and as described in Defendants' privilege logs and now at length in the accompanying Declaration of

---

[13] Lockheed also views as suspicious five documents that Defendants have now marked as "not relevant." As set forth in Defendants' privilege log (document numbers 135-139 of Weber Decl., Exhibit F) and the Declaration of Steven D. Weber, these documents are not relevant and we add that Lockheed has itself described documents as relevant and, after months of exchanging privilege logs, changed the descriptions of those same documents to "Non Responsive." Weber Decl. ¶¶ 61-67.

Steven D. Weber, these documents, that Lockheed continues to challenge, do not fall within framework agreed to by the parties regarding the production of documents relating to the parties' experts. Lockheed's continued challenge of these documents solely because Defendants have provided Lockheed with newly expanded descriptions – something both parties have done for close to a year – is unfounded and reflects Lockheed's unwillingness to approach the privilege log dispute in good faith. Weber Decl. ¶¶ 56-58.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Compel the production of documents improperly withheld by Plaintiff; and deny Plaintiff's motion for a protective order with respect to those documents. Defendants further request that the Court deny Plaintiff's Motion to Compel the production of Defendants' documents withheld for privilege and grant Defendants' Motion for a Protective Order preserving the privileged status of those documents.

Dated: New York, New York
      July 28, 2011

                     HOGUET NEWMAN REGAL & KENNEY, LLP

             By: _____
                 Ira J. Lipton (IL 4835)
                 Steven D. Weber (SW 7627)
                 Marc A. Melzer (MM 0677)
                 10 East 40th Street
                 New York, New York 10016
                 212-689-8808

                 *Attorneys for Defendants Metropolitan*
                 *Transportation Authority and MTA Capital*
                 *Construction Company*