UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LOCKHEED MARTIN TRANSPORTATION
SECURITY SOLUTIONS, AN OPERATING UNIT OF
LOCKHEED MARTIN CORPORATION,         No.: 09 CV 4077 (PGG) (GWG)

                Plaintiff,         <u>ECF CASE</u>

  - against -

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN TRANSPORTATION AUTHORITY,

                Defendants.
------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,
and SAFECO INSURANCE COMPANY OF AMERICA,   No. 09 CV 6033 (PGG) (GWG)

                Plaintiffs,

  - against -

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, NEW
YORK CITY TRANSIT AUTHORITY, and
LOCKHEED MARTIN CORPORATION,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS AND IN SUPPORT OF THE
SURETIES' CROSS-MOTION FOR PROTECTIVE ORDER**

                              WOLFF & SAMSON PC
                              140 Broadway, 46th Floor
                              New York, New York 10005
                              (212) 973-0572

                              *Attorneys for Plaintiffs Travelers Casualty*
                              *and Surety Company of America, Federal*
                              *Insurance Company, and Safeco Insurance*
                              *Company of America*

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTS AND PROCEDURAL HISTORY ................................................................................... 2

LEGAL ARGUMENT
THE DOCUMENTS SOUGHT BY THE MTA
ARE NOT SUBJECT TO PRODUCTION .................................................................................. 7

    The Pre-June 29 Documents In "Category A" Are Not Relevant And Are
    Protected By Privilege ............................................................................................................ 7

    The Post-June 29 Documents In "Category A"
    Are Expressly Protected From Disclosure By Rule 26
    And Are Neither Relevant Nor Reasonably Calculated
    To Lead To The Discovery Of Admissible Evidence ............................................................ 9

    The Same Principles Apply To
    Protect The "Category B" Documents .................................................................................. 13

    The "Category C" Documents Are Expressly Protected By Rule
    26(B)(3)(A) .......................................................................................................................... 14

CONCLUSION ............................................................................................................................ 16

# **TABLE OF AUTHORITIES**

**CASES** **PAGE**

*Ackermann v. New York City Dept. of Information Technology and Telecommunications,*
 2010 WL 1172625 (E.D.N.Y.)..........................................................................................7

*Ager v. Jane C. Stormont Hosp. and Training School for Nurses,*
 622 F.2d 496 (10th Cir. 1980) ..........................................................................................8

*Bank Hapoalim, B.M. v. Am. Home Assurance Co.,*
 1993 WL 37506 (S.D.N.Y. 1993).....................................................................................11

*Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.,*
 2002 WL 31729693 (S.D.N.Y. 2002)...............................................................................15

*Deforge v. Karwoski,*
 87 A.D.3d 1323, 930 N.Y.S.2d 703 (4th Dep't 2011)......................................................15

*Evanston Ins. Co. v. OEA, Inc.,*
 2006 WL 1192737 (S.D.N.Y. 2006).................................................................................11

*Fine v. Bellefonte Underwriters Ins. Co.,*
 91 F.R.D. 420 (S.D.N.Y. 1981) ................................................................................. 10-11

*Fleurimond v. N.Y. Univ.,*
 2011 WL 3273876 (E.D.N.Y. 2011).................................................................................13

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter,*
 2003 WL 22110281 (S.D.N.Y. 2003)...............................................................................11

*Granite Computer Leasing Corp. v. Travelers Indem. Co.,*
 894 F.2d 547 (2d Cir. 1990).............................................................................................16

*Kingdom Auth. v. City of Rockford,*
 2011 WL 245585 (N.D. Ill. 2011) ....................................................................................13

*Mt. Vernon Fire Ins. Co. v. Try 3 Bldg. Servs.,*
 1998 WL 729735 (S.D.N.Y. 1998)...................................................................................12

*North River Insurance Co. v. Columbia Casualty Co.,*
 1995 WL 5792 (S.D.N.Y. 1995).......................................................................................15

*Sara Lee Corp. v. Kraft Foods, Inc.,*
 273 F.R.D. 416 (N.D. Ill. 2010)........................................................................................9

*St. Paul Fire & Marine Ins. Co. v. Continental Cameras Co.,*
   1986 WL 6497 (S.D.N.Y. 1986) ..................................................................................11

*Travelers Cas. & Sur. Co. v. J.D. Elliott & Co., P.C.,*
   2004 WL 2339549 (S.D.N.Y. 2004) ............................................................................10

*Tudor Ins. Co. v. McKenna Assocs.,*
   2003 WL 21488058 (S.D.N.Y. 2003) ..........................................................................11

*United States Fid. & Guar. Co. v. Braspetro Oil Servs.,*
   2000 WL 744369 (S.D.N.Y. 2000) ..................................................................... 8, 10-12

*United States v. Adlman,*
   134 F.3d 1194 (2d Cir. 1998) ......................................................................................12

*Weber v. Paduano,*
   2003 WL 161340 (S.D.N.Y. 2003) ..............................................................................12

*Westhemeco Ltd. v. N. Hampshire Ins. Co.,*
   82 F.R.D. 702 (S.D.N.Y. 1979) ...................................................................................10

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,*
   262 F.R.D. 354 (S.D.N.Y. 2009) .................................................................................12

**OTHER AUTHORITIES**

Rule 26 ................................................................................................................... Passim

## PRELIMINARY STATEMENT

The MTA's motion to compel the production of documents from the Sureties should be denied summarily. It completely ignores applicable privileges expressly stated in Rule 26 – specifically, 26(b)(3)(A), protecting work product prepared by or for a party's surety or indemnitor, and 26(b)(4)(D), protecting facts and opinions held by a non-testifying consultant – despite the fact that in the course of the parties' "meet and confers" the Sureties specifically advised the MTA that their withholding of the subject documents was premised upon these parts of the Rule. The motion also claims that "sparse" descriptions in the Sureties' logs prevent the MTA from ascertaining the substance of certain documents scheduled as privileged, but fails to advise the Court that, again in the course of the "meet and confers", the Sureties specifically explained that these documents pertained to the consideration of potential testifying experts, and the MTA indicated that this explanation satisfactorily addressed its challenges.

The MTA asserted its claim against the Sureties' performance bond on June 12, 2009, by which date the MTA and Lockheed Martin already were in litigation involving the facts underlying the claim. By letter dated June 15, Lockheed advised the Sureties that it vigorously contested the default and that it would contest the Sureties' indemnity rights if they performed in response to the MTA's claim. The Sureties determined to seek declaratory relief on June 29, 2009, and filed their Declaratory Judgment Complaint on July 2, 2009. Despite the fact that the internal analysis and communications of the Sureties' non-testifying consultant prepared during the period June 12-29, 2009, are not discoverable (as both not relevant and privileged work product), the Sureties have produced almost all of such documents and materials to the MTA.[1]

---

[1] Such production has been without admission that the documents are, in fact, discoverable, and without waiver of privilege as to any other document.

1

Incredibly, the MTA seeks more – such as analyses of various issues involved in the litigation, performed by the Sureties' non-testifying consultant after the Sureties commenced litigation; documents evidencing the Sureties' consideration of potential testifying security experts; and communications between Lockheed (and its counsel) and the Sureties (and their counsel) after the Sureties determined to commence litigation and regarding the issues involved therein – all of which are not subject to discovery.

The MTA should not be permitted to delve into the Sureties' litigation preparation and benefit from the work of the Sureties' non-testifying consultant (while avoiding the cost thereof). Its motion should be denied and the Sureties' cross-motion for a protective order should be granted.

## FACTS AND PROCEDURAL HISTORY

On April 24, 2009, Lockheed initiated the underlying consolidated action against the MTA (referred to hereinafter as the "Lockheed Action"),[2] alleging that the MTA breached the parties' contract for the construction of the IESS Project (the "Contract"). (See Declaration of Adam P. Friedman, ¶ 2 and Exh. A). The MTA filed its Answer and Counterclaim in the Lockheed Action on May 26, 2009. (Friedman Decl., ¶ 3 and Exh. B). On May 26, 2009, it issued a notice to Lockheed, copied to the Sureties, asserting that Lockheed was in default under the Contract. (Declaration of Bruce L. Corriveau, ¶ 5 and Exh. B). Lockheed responded on June 4, 2009, contesting the MTA's notice of default. (Corriveau Decl., ¶ 6 and Exh. C).

On Friday, June 12, 2009, the MTA issued its notice of termination of Lockheed. (Corriveau Decl., ¶ 7 and Exh. D). The MTA accompanied its notice of termination with a letter, also dated June 12, 2009, notifying the Sureties that the MTA was asserting a claim against the

---

[2] Lockheed Martin Transportation Security Systems, an Operating Unit of Lockheed Martin Corporation v. MTA Capital Construction Company and Metropolitan Transportation Authority, Docket No. 09-CV-4077.

2

Sureties' performance bond ("the Bond"). (Corriveau Decl., ¶ 8 and Exh. E; Friedman Decl., ¶ 4). Under the Bond, which had a penal limit of nearly $300 million, the Sureties had to complete their investigation of the claim and "commence completion" of the Contract within 20 days after receiving written notice of Lockheed's termination (by July 2, 2009). (See Corriveau Decl., ¶ 2 and Exh. A).

The Sureties, of course, immediately undertook an investigation of the MTA's claim against the Bond. (Corriveau Decl., ¶ 9; Friedman Decl., ¶ 5). Given fact that Lockheed and the MTA were already in litigation involving the facts underlying the claim, along with other circumstances such as the incredibly complex nature of the IESS Project, the public importance of that project, and the substantial dollar amount at issue, the Sureties reasonably contemplated as of June 12 that the MTA's bond claim would result in litigation. (Corriveau Decl., ¶ 11; Friedman Decl., ¶ 7). In fact, on the following Monday, June 15, 2009, the Sureties received a letter from Lockheed's counsel vehemently contesting the MTA's declaration of default, and advising the Sureties that Lockheed would take the position that, if the Sureties completed the Contract, they would be doing so as volunteers (thereby disputing its obligation to indemnify the Sureties for their losses under the Bond, pursuant to written agreements of indemnity Lockheed executed in the Sureties' favor). (Corriveau Decl., ¶ 12 and Exh. F; Friedman Decl., ¶ 11). Consequently, while the Sureties were conducting their investigation of the MTA's claim, they also, prudently, began to take steps to prepare for litigation. (Corriveau Decl., ¶¶ 13-14; Friedman Decl., ¶¶ 7, 15).

Of import to this motion, this early preparation included the consideration of security analysts to serve as potential testifying experts in future litigation. (Corriveau Decl., ¶ 15). The Sureties already had retained the firm of Cashin Spinelli & Ferretti, LLC ("CSF"), to assist it in

the investigation of the claim. (Corriveau Decl., ¶ 16). CSF also served as non-testifying consultant to the Sureties for the litigation. (Corriveau Decl., ¶ 16).

The Sureties' investigation of the claim culminated in a meeting among the Sureties, CSF, and counsel on June 29, 2009. At this meeting, the Sureties determined to commence an action seeking a declaration of the rights and responsibilities of the parties under the Bond. (Corriveau Decl., ¶ 17; Friedman Decl., ¶ 9). Counsel for the Sureties began drafting a Complaint the next day, and on July 2, 2009, the Sureties filed their Complaint. (Friedman Decl., ¶¶ 10-11 and Exh. C). The Complaint also contained various causes of action against Lockheed relating to Lockheed's indemnity obligations under various agreements of indemnity and common law. (Friedman Decl., ¶ 11).

A day earlier, on July 1, 2009, the Sureties had received a letter from Lockheed's counsel withdrawing the position stated in his June 15 letter. (Friedman Decl., ¶ 12 and Exh. D; Corriveau Decl., ¶ 21; Declaration of Edward P. Krugman, ¶ 6 and Exh. A). When the Sureties completed their consideration of the letter several days later, they determined that it substantially satisfied their concerns regarding Lockheed's satisfaction of a future indemnity obligation, and agreed in principle to withdraw the indemnity claims. (Corriveau Decl., ¶ 21; Friedman Decl., ¶ 13). The parties also embarked upon the preparation of a Joint Defense Agreement. (Friedman Decl., ¶ 14). While preparation of that Agreement started immediately, given the complexity of the issues and the amount involved, it took many months to finalize an agreement for execution. (Friedman Decl., ¶ 14 n.2). The Joint Defense Agreement was signed in January 2010, and the

Sureties' indemnity claims against Lockheed were formally withdrawn by Stipulation on April 30, 2010.[3]

Since June 29, 2009, the Sureties largely have been preparing for litigation of the consolidated actions. (Corriveau Decl., ¶ 18; Friedman Decl., ¶ 15). This preparation includes, of course, CSF's analysis of the parties' respective claims and defenses and of information obtained through the discovery process, and involves the sharing of work product between the Sureties and their principal/indemnitor, Lockheed. (Corriveau Decl., ¶ 19; Friedman Decl., ¶ 18). (With regard to the sharing of work product between the Sureties and Lockheed in preparing for litigation, see Declaration of Donato A. Antonucci, ¶¶ 8-11, 15; Declaration of Jim Williamson, ¶¶ 8-11, 15; Declaration of Michael Chartan, ¶¶ 6-13). As discussed below, such exchange of work product is specifically protected by Rule 26, and the parties have relied upon this protection. (*See* Friedman Decl., ¶¶ 23-24; Corriveau Decl., ¶¶ 19-20; Antonucci Decl., ¶¶ 12-14, 16-17; Williamson Decl., ¶¶ 12-14, 16-17; Krugman Decl., ¶¶ 7-14; Chartan Decl., ¶¶ 13-14).

Notwithstanding their reasonable anticipation of litigation as of June 12, 2009, and despite their belief that these documents are not discoverable on both relevance and privilege grounds, the Sureties have produced almost all of their (and CSF's) documents generated between that date and June 29, 2009 (the date the Sureties decided to commence litigation), that were demanded by the MTA. (Friedman Decl., ¶ 19). These documents consist of hundreds of thousands of pages, and include, without prejudice, production of much of CSF's work product and communication, along with documents and information shared by and with Lockheed. (*See* Friedman Decl., ¶¶ 19, 22). The few pre-June 29 documents withheld largely concern the

---

[3] There was no substantive reason for the delay in the filing of the Stipulation. The parties agreed that the Stipulation would be filed after the Joint Defense Agreement was executed. The four-month delay in filing the Stipulation was the result of a mere oversight. (*See* Friedman Decl., ¶ 14 n.2).

5

Sureties' consideration of potential testifying security experts and, although not relevant, were identified on the Sureties' privilege logs in response to the MTA's overbroad demand for "all ... documents ... provided to the Sureties by any consultants or experts". (*See* the Sureties' Responses to the MTA's First Request for Production of Documents, annexed to the Declaration of Eric Yun as Exh. A, at p. 9 ¶ 12).

From June 29, 2009, forward, the Sureties' position is that its work was primarily for purposes of litigation preparation, and thus the documents withheld are protected from disclosure. (*See* Corriveau Decl., ¶ 18). With specific regard to the CSF post-June 29 work product, such materials are expressly protected by Rule 26(b)(4)(D), and also, in most instances, are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. With regard to communications between the Sureties and Lockheed post-June 29, such materials are expressly protected by Rule 26(b)(3)(A).

The Sureties' grounds for withholding these documents have been discussed at or in conjunction with the two "meet and confers" between the Sureties and the MTA. The Sureties identified the specific parts of Rule 26 and other legal grounds that expressly protect the documents withheld, along with case law supporting the Sureties' positions. (Friedman Decl., ¶ 30). The MTA has never explained why Rule 26 and the law provided do not apply, and its motion papers do not even address Rule 26.

During the first of these two "meet and confers", the Sureties advised the MTA that the majority of the pre-June 29 documents it was challenging pertained to the Sureties' consideration of potential testifying security experts. (Friedman Decl., ¶ 28; Yun Decl., ¶ 3). The MTA indicated that the explanation satisfied its challenges to these documents, and it was the Sureties' understanding that these documents were no longer being challenged. (Friedman Decl., ¶ 28;

6

Yun Decl., ¶ 4). When the Sureties served a supplemental privilege log, its supplemental descriptions of documents created in this time frame was simply "pre-July 1 document", as the Sureties understood that no further description of these documents was needed. (Friedman Decl., ¶ 28 and n.5). The Sureties thus are surprised not only to see these documents included in the MTA's motion, but to see the MTA feigning ignorance as to the subject matter of these documents.

**LEGAL ARGUMENT**
**THE DOCUMENTS SOUGHT BY THE MTA**
**<u>ARE NOT SUBJECT TO PRODUCTION</u>**

Motions to compel discovery are generally "entrusted to the sound discretion of the court." *Ackermann v. New York City Dept. of Information Technology and Telecommunications*, 2010 WL 1172625, *1 (E.D.N.Y.) (quoting *Fitch, Inc. v. UBS Painewebber, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003)) (internal quotation marks omitted). Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including among other things an order "forbidding the disclosure or discovery". The reasons both for denying the MTA's motion to compel and for granting the Sureties' Cross-Motion for a Protective Order are identical, and are therefore treated simultaneously below.

**The Pre-June 29 Documents In "Category A"**
**Are Not Relevant And Are Protected By Privilege**

There cannot be a reasonable question that the few pre-June 29 documents that the Sureties have withheld are not discoverable.[4] The overwhelming majority of the pre-June 29 documents withheld pertain to the Sureties' consideration of security experts to testify in

---

[4] While there are 17 pre-June 29 documents listed on the MTA's challenge log pertaining to the Sureties' consideration of potential testifying security experts, many of these entries are duplicative, as the same document would have been found in each of the three surety's files. (*See* Friedman Dec., ¶ 31 and Exh. G).

7

potential litigation.[5] Why the MTA continues to believe it is entitled to these documents is wholly unclear. They are obviously of no relevance and are not reasonably calculated to the lead to the discovery of admissible evidence. In addition, since they concern preparation for litigation they are protected as work product under Rule 26(b)(3)(A). *See, e.g., Ager v. Jane C. Stormont Hosp. and Training School for Nurses,* 622 F.2d 496 (10th Cir. 1980) (no discovery may be had regarding potential expert informally consulted in anticipation of litigation but not formally retained). The *Braspetro* case[6] cited by the MTA does not apply, as the expert retention there was not for purposes of testifying at trial (as here), but merely for purposes of a non-litigation investigation. The Court should recall that, consistent with *Braspetro,* the Sureties have produced the documents its non-testifying consultant (CSF) generated before the Sureties determined to proceed to litigation.

The MTA's contention that the Sureties' privilege logs did not provide enough information for it to determine what these documents concern is belied by the events at the parties' first "meet and confer". These documents were specifically discussed at that time, and it was the Sureties' understanding that, after being advised of the subject matter of the documents, the MTA was no longer challenging their withholding. (Friedman Decl., ¶ 28). Even if the MTA remained unclear as to the subject matter of these documents (or any others), the MTA had every opportunity to obtain additional information about the documents by requesting a "sneak peek", but it did not do so. In fact, the Sureties never refused an MTA "sneak peek" request for any document scheduled on its logs.[7] (Friedman Decl., ¶ 29).

---

[5] Documents 18 and 19 on the MTA's list were produced with the redaction of an e-mail from the Sureties' counsel (and were identified as such). The MTA's papers do not appear to explain why the redaction should be produced. Document 20 is a non-substantive, irrelevant CSF e-mail that the Sureties have produced to the MTA notwithstanding the fact that it is not subject to disclosure.
[6] *United States Fid. & Guar. Co. v. Braspetro Oil Servs.,* 2000 WL 744369 (S.D.N.Y. 2000).
[7] The only document that the Sureties have declined to allow the MTA to "sneak peek" is the Joint Defense Agreement between the Sureties and Lockheed. The Joint Defense Agreement is not the subject of any of the

8

**The Post-June 29 Documents In "Category A"
Are Expressly Protected From Disclosure By Rule 26
And Are Neither Relevant Nor Reasonably Calculated
To Lead To The Discovery Of Admissible Evidence**

The documents in "Category A" dated June 29, 2009, and after also are unquestionably protected from disclosure. There cannot be any reasonable dispute that, after the Sureties determined on June 29 to commence litigation, the purpose of their work became primarily preparation for litigation.

All of the post-June 29 documents on the MTA challenge grid are documents prepared by the Sureties' non-testifying consultant, CSF. As the MTA knows, CSF's role in this matter, as of June 29 and thereafter, was to assist the Sureties in preparing for trial. These documents are specifically protected by the Rule 26(b)(4)(D) protection of facts and opinions held by an expert retained for litigation "who is not expected to be called as a witness at trial" (and which are subject to disclosure only under "exceptional circumstances" that the MTA has not contended exist). *See, e.g., Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416, 419 (N.D. Ill. 2010) (under Rule 26(b)(4)(D), discovery of documents generated by non-testifying expert not discoverable absent "exceptional circumstances").

The MTA's motion fails to address Rule 26(b)(4)(D). The MTA appears to hang its hat on the contention that the documents are discoverable because somehow they were prepared in the "ordinary course" of the Sureties' business. The MTA's position erroneously assumes that there was ever an "ordinary course" with respect to this claim, which involves (1) unique, complicated circumstances, (2) pre-existing litigation between the principal and obligee, (3) the

---

MTA's document demands; even if it was, there cannot be any reasonable dispute that the Agreement is not subject to disclosure and is not germane to the application of the privilege for surety/principal materials under Rule 26(b)(3)(A), as discussed below. That the MTA's motion does not seek to compel production of the Joint Defense Agreement is noteworthy.

9

substantial amounts in dispute between the parties, and (4) Lockheed having disputed its indemnity obligation (and thus assuring litigation) if the Sureties performed pursuant to the MTA's demand, in light of Lockheed's contention that there was no default and therefore no obligation on the part of the Sureties to perform.

Nevertheless, even if one assumes that the Sureties' pre-June 29 actions were in the "ordinary course" of their business, the MTA's argument that the documents generated after June 29 are not protected work product defies both law and common sense, and would leave sureties (and any other business involved in the receipt and investigation of claims) without the work product privilege available to every other litigant. The cases in this District are clear in recognizing that there comes a point when the actions of a surety or insurer[8] shift from investigation of a claim in the ordinary course of business to being taken in anticipation of litigation. *See, e.g., United States Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 2000 WL 744369 at *9 (S.D.N.Y. 2000); *Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420 (S.D.N.Y. 1981); *Westhemeco Ltd. v. N. Hampshire Ins. Co.*, 82 F.R.D. 702 (S.D.N.Y. 1979); *see also Travelers Cas. & Sur. Co. v. J.D. Elliott & Co., P.C.*, 2004 WL 2339549 (S.D.N.Y. 2004) (role of specific consulting expert can shift "from ordinary claim processing work to work performed in anticipation of litigation").

While the cases reflect that determining the time at which the purpose of the surety's or insurer's analysis shifts requires a fact-specific analysis, they also are clear that the latest point at which such a shift occurs usually is when the surety or insurer determines its response to the claim, particularly when its response is likely to result in litigation. *See Evanston Ins. Co. v. OEA, Inc.*, 2006 WL 1192737 at *4 (S.D.N.Y. 2006) (materials generated after denial of claim

---

[8] It should be noted that suretyship is not insurance and is afforded special protection under Rule 26 because the surety is only a secondary obligor. Here, Lockheed, as the primary obligor under the Bond, was already in litigation with the MTA.

are protected work product as insurer "could plainly have anticipated litigation once OEA's claim for reimbursement was denied"); *Tudor Ins. Co. v. McKenna Assocs.*, 2003 WL 21488058 (S.D.N.Y. 2003) ("An insurer's decision to decline coverage is typically the point at which the ordinary course of business ends and the anticipation of litigation begins"); *Braspetro,* 2000 WL 744369 at * 13 (sureties' investigation was undertaken for ordinary business reasons until determination of claims was reached); *St. Paul Fire & Marine Ins. Co. v. Continental Cameras Co.,* 1986 WL 6497 (S.D.N.Y. 1986) (shift "from routine investigation to anticipation of litigation ... would logically seem to occur when the insurance company determines that it will not pay the claim"); *Bank Hapoalim, B.M. v. Am. Home Assurance Co.,* 1993 WL 37506 (S.D.N.Y. 1993) ("In general, an insurer's decision to decline is the point at which the ordinary course of business ends and the anticipation of litigation begins"); *Fine,* 91 F.R.D. at 423 (referencing a "clear decision, based on substantial bona fide reasons, to reject the claim and to litigate").

Here, this shift would have occurred at the latest on June 29, 2009, when the Sureties determined to commence litigation. There can be no better guidepost of a shift from supposed claim investigation in the "ordinary course" to litigation than the Sureties' own determination to sue and their commencement of litigation several days later. *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter,* 2003 WL 22110281 (S.D.N.Y. 2003) (determination of application of work product privilege "depends on whether the moving party can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation"); *Weber v. Paduano,* 2003 WL 161340 at *6 (S.D.N.Y. 2003) (insurer's documents will be protected under work product privilege where "they were prepared in furtherance of a sufficiently identifiable resolve to litigate"), and *9 (reliance upon "objective

11

benchmarks ... that indicate the point at which [the insurer] turned its attention to potential litigation"); *Mt. Vernon Fire Ins. Co. v. Try 3 Bldg. Servs.*, 1998 WL 729735 at *8 (S.D.N.Y. 1998) (insurer's documents protected by work product privilege upon "a sufficiently identifiable resolve to litigate").

The MTA's argument that the withheld materials are discoverable because they "would have been created in essentially similar form irrespective of the litigation" is premised upon a false assumption. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). The MTA ignores the factual reality that the post-June 29 CSF documents were primarily created in anticipation, and for purposes, of assisting the Sureties with respect to the litigation. The Sureties had until July 2, 2009 under the Bond to complete what the MTA describes as their "ordinary course" investigation. Moreover, even if the CSF work product had a dual litigation and business-investigative purpose, such a showing would not defeat the privilege. *See, e.g., id.* (a document created for litigation purposes "does not lose protection ... merely because it is created in order to assist with a business decision"); *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 360 (S.D.N.Y. 2009) (same); *Braspetro*, 2000 WL 744369 at *8 ("documents prepared for both litigation and business purposes generally enjoy work product protection . . ."); *Mt. Vernon*, 1998 WL 729735 at * 5 (same). Further, even if the Sureties were inclined to attempt to continue an investigation outside of the litigation after July 2, the MTA clearly advised the Sureties that it would not cooperate and that information would be exchanged only through the discovery process. (*See* Friedman Decl., Exhs. E and F).

There also is the matter of the CSF work product being irrelevant, as Rule 26(b)(4)(D) recognizes in excluding a non-testifying consultant's work product from disclosure. The claims in this consolidated litigation concern whether Lockheed was or was not properly terminated by

12

the MTA. The only claim against the Sureties is that, if Lockheed was properly terminated, the Sureties were obligated to perform under the Bond. The facts, opinions, and communications of CSF (internal and with the Sureties and Lockheed) do not make any allegation involved in any of the claims in this litigation any more or less likely, and they do not "bear[] on, or [ ] reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Fleurimond v. N.Y. Univ.*, 2011 WL 3273876 (E.D.N.Y. 2011) (defining "relevance" under Rule 26). The MTA's effort to obtain the benefit of the CSF analysis and work product, at the Sureties' expense, thus should be rejected. *See Kingdom Auth. v. City of Rockford*, 2011 WL 245585 (N.D. Ill. 2011) ("The purpose of Rule 26(b)(4)(D) is to shield the facts or opinions of experts retained at the expense of one party in anticipation of litigation from discovery and use by an adversarial party. In essence, the doctrine exists to ensure that a party cannot freely benefit from expert legal information obtained at the expense of an adversarial party in anticipation of litigation.").

**The Same Principles Apply To Protect The "Category B" Documents**

Two of the "Category B" documents (numbers 145 and 146) pertain to the Sureties' consideration of a testifying security expert for purposes of anticipated litigation. For the reasons stated above, these documents (a) are not relevant or reasonably calculated to lead to the discovery of admissible evidence and (b) are protected work product.

The other two "Category B" documents were created after the Sureties determined to proceed to litigation, and pertain to matter related to trial preparation (number 148 was prepared four months after the July 2 commencement of litigation). Again, as described above, these documents are privileged work product, as they pertain to matters related to the Sureties' preparation for trial. Nevertheless, because the documents contain minimal substance, the

13

Sureties have produced them (without prejudice or waiver of privilege as to any other documents).

**The "Category C" Documents Are Expressly Protected By Rule 26(B)(3)(A)**

The "Category C" documents are communications between Lockheed (and its counsel) and the Sureties (and their counsel) post-June 29 that constitute work product protected by the common interest privilege of Rule 26(b)(3)(A). (*See* Friedman Decl., ¶¶ 25-26). The MTA does not dispute that the documents are work product, but argues that the privilege was waived by disclosure to Lockheed. Nowhere in the MTA's brief is there any discussion of the explicit provision in Rule 26(b)(3)(A) that protects work product created by or for a party's surety and/or indemnitor. Simply put, if the documents are work product (which is not disputed), then Rule 26(b)(3)(A) protects them from disclosure irrespective of the sharing of them between the Sureties and their principal-indemnitor, Lockheed.

The MTA's arguments regarding courts' supposed reluctance to find a "joint defense privilege" in non-surety circumstances are inapplicable. Nowhere does the MTA demonstrate, let alone contend, that the non-surety decisions upon which it relies have any relevance to the surety/principal or surety/indemnitor relationship squarely addressed in the Rule. *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, 2002 WL 31729693 (S.D.N.Y. 2002), involved communications between an insurer and its insured building owner. *North River Insurance Co. v. Columbia Casualty Co.*, 1995 WL 5792 (S.D.N.Y. 1995), concerned a dispute between a primary insurer and a reinsurer. Neither of these cases concerned the surety-principal/indemnitor relationship, which involves primary and secondary liability for the same obligation (as opposed to the insurer/insured or insurer/reinsurer context). Thus the express privilege contained in Rule 26(b)(3)(A) was not implicated.

14

The contention that some type of "adversity" prevents the Rule 26(b)(3)(A) protection from applying also is not correct. The Rule does not contain any language conditioning its application upon a lack of "adversity". This omission is intentional. The potential always exists for the surety and its principal/indemnitors to be adverse in some manner. A bond principal (which has primary liability for the bonded obligation) signs an indemnity agreement in favor of its surety (which has secondary liability for the bonded obligation), pursuant to which the principal agrees to indemnify the surety for any loss that the surety may incur as a result of having answered for the principal's debt under its bond (along with all costs and expenses paid by the surety in connection therewith). The principal also will have a common-law indemnity obligation to its surety, and thus, even in the absence of an indemnity agreement the principal is bound, as a matter of law, to indemnify and exonerate its surety. *See Deforge v. Karwoski*, 87 A.D.3d 1323, 1323-24, 930 N.Y.S.2d 703, 704 (4th Dep't 2011) (*citing Lori–Kay Golf, Inc. v. Lassner*, 61 N.Y.2d 722, 723, 472 N.Y.S.2d 612 (N.Y. 1984). Further, the principal also frequently contests the obligee's declaration of default and argues, as Lockheed did here, that the surety should not perform. The Rule recognizes that, in matters involving a principal and its surety, these parties' interests as to the bond claim are identical – if the principal is not liable then the surety is not liable. *See, e.g., Granite Computer Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 551 (2d Cir. 1990) ("Under basic suretyship law, a surety's obligations cannot be more burdensome than those of its principal, and where the principal is not liable on the obligation, neither is the guarantor") (citation and internal quotation marks omitted).

If the protection afforded by the Rule to sureties and their principals/indemnitors applied only where no adversity existed between them, then the protection, in reality, would not exist and the language of the Rule would be totally without effect. Thus, the fact that Lockheed contested

15

the termination and, between June 15 and July 1, 2009 took the position that it would contest indemnity if the Sureties performed, does not create adversity so as to defeat application of Rule 26(b)(3)(A). (*See* Krugman Decl., ¶¶ 6-14; Chartan Decl., ¶¶ 6-14). Not only does the existence of a principal's obligation to indemnify its surety have no effect upon application of the Rule's express protection, but the Sureties have already produced to the MTA (without prejudice) communications between the Sureties and Lockheed during the period of alleged "adversity". All documents on the "Category C" grid are dated July 1, 2009, and after, and are protected work product.

## CONCLUSION

For the reasons set forth above, the MTA's motion to compel should be denied and the Sureties' cross-motion for a protective order should be granted.

Dated: November 30, 2011

                                            Respectfully submitted,

                                            **WOLFF & SAMSON PC**
                                            *Attorneys for Plaintiffs*
                                            *Travelers Casualty & Surety Company of*
                                            *America, Federal Insurance Company, and*
                                            *Safeco Insurance Company of America*

                                            By: ~   /s Adam P. Friedman   ~
                                                  Adam P. Friedman (AF-5700)

                                            140 Broadway, 46th Floor
                                            New York, New York 10005
                                            (212) 973-0572
                                            afriedman@wolffsamson.com

Of Counsel:
Eric Yun