UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LOCKHEED MARTIN TRANSPORTATION SECURITY
SOLUTIONS, AN OPERATING UNIT OF LOCKHEED
MARTIN CORPORATION,                                              No. 09 cv 4077 (PGG)(GWG)

                              Plaintiff,

                          -against-

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN TRANSPORTATION AUTHORITY,

                              Defendants.
------------------------------------------------------------------x
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,           No. 09 cv 6033 (PGG)(GWG)
and SAFECO INSURANCE COMPANY OF AMERICA,

                            Plaintiff,

                          -against-

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, and
NEW YORK CITY TRANSIT AUTHORITY,

                              Defendants.
------------------------------------------------------------------x

**DECLARATION OF MICHAEL CHARTAN, ESQ. IN OPPOSITION TO METROPOLITAN TRANSPORTATION AUTHORITY AND MTA CAPITAL CONSTRUCTION COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

I, MICHAEL CHARTAN, ESQ., pursuant to 28 U.S.C. § 1746(2), declare as follows:

    1.    I am a member of the firm Duane Morris LLP ("Duane Morris"), attorneys for Plaintiff Lockheed Martin Transportation Security Solutions, an Operating Unit of Lockheed Martin Corporation ("Lockheed Martin") and co-counsel to Travelers Casualty and Surety Company of America, Federal Insurance Company, and Safeco Insurance Company of America (collectively the "Sureties").

DM1\2981712.3

2. I respectfully submit this declaration in opposition to the motion of the Metropolitan Transportation Authority ("MTA") and MTA Capital Construction Company ("MTACC") (collectively, the "MTA") to compel production of documents.

3. Specifically, the MTA is challenging three e-mails sent by me to counsel for the Sureties, after the commencement of the Sureties action. These emails are listed as numbers 155, 158 and 161 on Exhibit N – Category C to the Declaration of Steven D. Weber (the "Weber Dec.").

4. As the Court is fully aware, this action this action arises out of a contract between Lockheed Martin and the MTA entered into on August 31, 2005 for "the design, development, furnishing, and installation of an integrated electronic security system (IESS) and security operations (C3) Centers at various locations" (the "Contract").

5. Various disputes arose during the course of the Contract. On April 24, 2009, Lockheed Martin commenced a declaratory judgment action against the MTA to hold MTA in material breach of the Contract. MTA answered and counterclaimed. On May 26, 2009, declared Lockheed Martin in default of the Contract. At the same time, MTA notified the Sureties of the alleged default. On June 4, 2009, Lockheed Martin answered MTA's declaration of default, refuting each "reason" presented by MTA. On June 12, 2009, MTA terminated Lockheed Martin and demanded that the Sureties complete the Contract.

6. The Sureties started an investigation into the circumstances of MTA's allegations of default and to determine their options under the various bonds they had posted. By July 1, 2009 at the latest, and as stated in the Declaration of Edward P. Krugman for several weeks prior to that, it was understood between Lockheed Martin and the Sureties that the two parties were in fact aligned in interest against the MTA.

DM1\2981712.3

7. Indeed, on July 1, 2009, Mr. Krugman wrote to the Sureties' Counsel, Armen Shahinian, and informed him that Lockheed Martin was prepared to cooperate with the Sureties. Mr. Krugman's July 1, 2009 letter states in pertinent part:

> LMC [Lockhed Martin] wishes to participate with the sureties in mitigating the harm caused by MTACC's wrongful conduct, and it is prepared to devote the resources necessary to enable it to do so. It expects to work closely with the sureties throughout the completion effort and expects that the sureties' decisions throughout that effort will take into account input from LMC.

A copy of the July 1, 2009 letter is annexed to the Weber Dec at Exhibit M, and I annex it as Exhibit A hereto for the Court's convenience.

8. On July 2, 2009, the Sureties commenced their declaratory judgment action. The Sureties' action seeks in the First Cause of Action a declaration of the rights of parties. In paragraph 34 of their complaint, the Sureties alleged that their investigation was "unable to conclude that Lockheed Martin was in material breach of the Contract [or] that MTACC, the MTA, and/or the NYCTA are not in material breach of the Contract." A copy of the Sureties' Complaint is annexed hereto as Exhibit B.

9. The remaining causes of action in the Sureties' Complaint, all of which were subsequently discontinued, seek indemnification from Lockheed Martin for the Sureties' costs.

10. Paragraph 34 of the Sureties' Complaint eliminated any uncertainty as to whether Lockheed Martin was aligned in interest with the Sureties. Prior to receiving the Sureties Complaint, I believed that Lockheed Martin and the Sureties were not adverse in any material respect but were in fact aligned in interest against the MTA. From the inception of the Sureties' Action, the Sureties and Lockheed Martin were jointly arguing against the MTA that

the MTA's declaration of default against Lockheed Martin was wrongful, and that the MTA, and not Lockheed Martin, was in breach of the Contract.

11. The three emails in question all relate to communications between myself, as Lockheed Martin's outside litigation counsel, to the Sureties outside counsel. All of the persons copied on that e-mail were either attorneys within Mr. Shahinian's office or were the individuals in the Sureties' offices (all of whom I had met) who were directing the Sureties' defense against the MTA.

12. Two of the e-mails in question (numbers 155 and 158 on Exhibit N – Category C to the Weber Dec.), which appear to be duplicative, discuss the outcome of the mediation held before Magistrate Judge Gorenstein. The third email (number 161 on Exhibit N – Category C to the Weber Dec.) discusses an upcoming appearance before Judge Gardephe.

13. These emails are clearly e-mails between the attorneys for parties that are aligned in interest and who had expressly (as of July 15, 2009, orally) acknowledged the obligation to maintain such information in confidence. I fully expected that the e-mail and its contents were and would remain protected. Otherwise, an open dialog amongst the attorneys involved in this matter, while whom representing different clients, maintained common defenses and common goals in this action, would not be possible.

14. Moreover, regardless of whether Lockheed Martin and the Sureties were adverse or united in interest against the MTA, I understood that Federal Rule of Civil Procedure 26(b)(3)(A) to protect communications between a principal and its surety with respect to materials prepared "in anticipation of litigation or for trial by or for another party or its representative…" As such, there is no grounds for the MTA to argue that the e-mails sought herein are not protected by the attorney-client or attorney work product privilege.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:      New York, New York
            November 30, 2011

                                                    _____
                                                    MICHAEL CHARTAN

# EXHIBIT A

# CAHILL GORDON & REINDEL LLP
### EIGHTY PINE STREET
### NEW YORK, NY 10005-1702

FLOYD ABRAMS
L. HOWARD ADAMS
ROBERT A. ALESSI
HELENE R. BANKS
LANDIS C. BEST
SUSAN BUCKLEY
KEVIN J. BURKE
JAMES J. CLARK
BENJAMIN J. COHEN
CHRISTOPHER T. COX
STUART G. DOWNING
W. LESLIE DUFFY
ADAM M. DWORKIN
RICHARD E. FARLEY
PATRICIA FARREN
JOAN MURTAGH FRANKEL
JONATHAN J. FRANKEL
BART FRIEDMAN

CIRO A. GAMBONI
WILLIAM B. GANNETT
CHARLES A. GILMAN
STEPHEN A. GREENE
ROBERT M. HALLMAN
WILLIAM M. HARTNETT
CRAIG M. HOROWITZ
DOUGLAS S. HOROWITZ
DAVID G. JANUSZEWSKI
ELAI KATZ
THOMAS J. KAVALER
DAVID N. KELLEY
CHERIE R. KISER*
EDWARD P. KRUGMAN
JOEL KURTZBERG
ALIZA R. LEVINE
JOEL H. LEVITIN
GEOFFREY E. LIEBMANN

TELEPHONE: (212) 701-3000
FACSIMILE: (212) 269-5420

1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900
FAX: (202) 862-8958

AUGUSTINE HOUSE
6A AUSTIN FRIARS
LONDON, ENGLAND EC2N 2HA
(011) 44.20.7920.9800
FAX: (011) 44.20.7920.9825

WRITER'S DIRECT NUMBER

(212) 701-3506

MICHAEL MACRIS
ANN S. MAKICH
JONATHAN I. MARK
BRIAN T. MARKLEY
GERARD M. MEISTRELL
MICHAEL E. MICHETTI
WILLIAM J. MILLER
ATHY A. MOBILIA
NOAH B. NEWITZ
MICHAEL J. OHLER
KENNETH W. ORCE
DAVID R. OWEN
JOHN PAPACHRISTOS
LUIS R. PENALVER
ROY L. REGOZIN
DEAN RINGEL
JAMES ROBINSON
THORN ROSENTHAL

JONATHAN A. SCHAFFZIN
JOHN SCHUSTER
MICHAEL A. SHERMAN
DARREN SILVER
HOWARD G. SLOANE
LAURENCE T. SORKIN
SUSANNA M. SUH
JONATHAN D. THIER
JOHN A. TRIPODORO
ROBERT USADI
GEORGE WAILAND
GLENN J. WALDRIP, JR.
MICHAEL B. WEISS
S. PENNY WINDLE
COREY WRIGHT
DANIEL J. ZUBKOFF
ADAM ZUROFSKY

*ADMITTED IN DC ONLY

July 1, 2009

Dear Armen:

      I write to advise that, if the sureties conclude that it would be prudent to perform vis-à-vis the MTACC under a reservation of rights, as opposed to declining to perform, LMC will accept that decision and will not take the position that the sureties are volunteers. LMC continues to believe that MTACC is in breach of the contract and that its declaration of default was wrongful, but as a result of our conversations with you over the past few weeks, LMC is prepared for the sureties to proceed in the manner set forth above. LMC wishes to participate with the sureties in mitigating the harm caused by MTACC's wrongful conduct, and it is prepared to devote the resources necessary to enable it to do so. It expects to work closely with the sureties throughout the completion effort and expects that the sureties' decisions throughout that effort will take into account input from LMC.

      In this connection, however, LMC remains extremely concerned that the sureties in attempting to perform will encounter the same roadblocks from MTACC that caused LMC to commence its declaratory judgment action. In particular, and notwithstanding AWO 126, there remain significant dependencies, arising from MTACC's lack of performance of its own obligations, that must be resolved if the sureties are not to find themselves prevented from performing completely for the same reasons that LMC was prevented. Accordingly, the sureties' reservations of rights should include not only preservation of LMC's historical positions (and such surety-specific matters as the sureties choose to raise) but also a clear statement that successful completion of the project will depend on MTACC's ability to resolve the dependencies.

Sincerely,

Edward P. Krugman

Armen Shahinian, Esq.
Wolff & Samson
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, FEDERAL
INSURANCE COMPANY, and SAFECO
INSURANCE COMPANY OF AMERICA,

                Plaintiffs,

- against -

METROPOLITAN TRANSPORTATION
AUTHORITY, MTA CAPITAL
CONSTRUCTION COMPANY, NEW YORK
CITY TRANSIT AUTHORITY, and
LOCKHEED MARTIN CORPORATION,

                Defendants.
-------------------------------------------------------------X

09 CIV 6033

**COMPLAINT**

Docket No.: 09-CV-

ECF CASE

RECEIVED
JUL 02 2009
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA ("Travelers"), FEDERAL INSURANCE COMPANY ("Federal"), and SAFECO INSURANCE COMPANY OF AMERICA ("Safeco"), by their undersigned attorneys, as and for their Complaint against the above-named defendants, allege as follows:

**PARTIES**

1.    Travelers is a corporation organized and existing pursuant to the laws of the State of Connecticut, with its principal place of business at One Tower Square, Hartford, Connecticut.

2.    Federal is a corporation organized and existing pursuant to the laws of the State of Indiana, with its principal place of business at 15 Mountain View Road, Warren, New Jersey.

3.    Safeco is a corporation organized and existing pursuant to the laws of the State of Washington, with its principal place of business at Safeco Plaza, Seattle, Washington.

4. Upon information and belief, defendant Metropolitan Transportation Authority ("the MTA") is a public benefit corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business at 2 Broadway, New York, New York.

5. Upon information and belief, defendant MTA Capital Construction Company ("MTACC") is a public benefit corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business at 2 Broadway, New York, New York.

6. Upon information and belief, defendant New York City Transit Authority ("NYCTA") is a public benefit corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business at 2 Broadway, New York, New York.

7. Upon information and belief, defendant Lockheed Martin Corporation ("Lockheed") is a corporation organized and existing pursuant to the laws of the State of Maryland, with its principal place of business at 9221 Corporate Boulevard, Rockville, Maryland.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this is an action between citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue is proper as a substantial part of the events or omissions giving rise to the subject matter of this litigation occurred in this District.

## FACTS

10. On or about August 31, 2005, Lockheed (through its division "Lockheed Martin Transportation Security Solutions") and MTACC, acting for itself and on behalf of the MTA, entered into a contract known as "Contract No. C-52038, Design, Development, Furnishing,

and Installation of an Integrated Electronic Security System (IESS) and Security Operations (C3) Centers at Various Locations" ("the Contract").

11. The original Contract price was $212,752,788.00, which amount has been increased to more than $300 million.

12. On or about August 25, 2005, Travelers, Federal, and Safeco (collectively "the Sureties"), as co-sureties, and Lockheed, as principal, executed a Performance Bond ("the Bond") in favor of the MTA ("acting by" the NYCTA), as obligee, in connection with the Contract (a copy of the Bond is annexed as Exhibit "A").

13. The penal limit of the Bond originally was $212,752,788.00.

14. In connection with certain increases in the original Contract price, the penal limit of the Bond has been increased to $293,379,788.00, pursuant to a Rider to the Bond effective March 31, 2006.

15. The Bond is a form drafted and prepared by MTACC, the MTA, and/or NYCTA.

16. As a condition to the Sureties' execution of bonds on Lockheed's behalf, and to induce the Sureties to execute bonds on Lockheed's behalf, Lockheed executed various written Agreements of Indemnity in the favor of each of the Sureties.

17. Pursuant to each of these Agreements of Indemnity, Lockheed is obligated, among other things, to indemnify the Sureties for all losses, costs, and expenses that the Sureties may incur and/or pay as a result of having executed any bond on Lockheed's behalf.

18. The Bond expressly conditions the Sureties' obligation thereunder as follows:

> **NOW, THEREFORE,** the conditions of this obligation are such that if [Lockheed], its representatives or assigns, shall well and faithfully perform the said Contract and all modifications, amendments, additions and alterations thereto that may hereafter

3

> be made, according to its terms and its true intent and meaning, including repair and/or replacement of defective work and guarantees of maintenance for the periods stated in the Contract, and shall fully indemnify and save harmless the [MTA] and the [NYCTA] from all cost and damage which it may suffer by reason of failure so to do, and shall fully reimburse and repay the [MTA] and the [NYCTA] for all outlay and expense which the [MTA] and the [NYCTA] may incur in making good any such default, and shall protect the [MTA] and the [NYCTA] against, and pay any and all amounts, damages, costs and judgments which may or shall be recovered against the [MTA] or the [NYCTA] or their officer or agents or which the [MTA] or [the NYCTA] may be called upon to pay any person or corporation by reason of any damages arising or growing out of the doing of said work, or the repair or maintenance thereof, or the manner of doing the same, or the neglect of the [Lockheed], or its agents or servants, or the infringement of any patent rights by reason of the use of any materials furnished or work done as aforesaid or otherwise, then this obligation shall be null and void, otherwise to remain in full force and effect.

19. The Bond incorporates the Contract by reference.

20. Article 7.03(a) of the Contract Terms and Conditions section of the Contract states, in pertinent part: "Upon Contractor's default, the Authority shall have the right to either complete the Work with its own forces and/or other contractors or to require the Surety to complete the Work under the Performance Bond hereunder."

21. Article 7.01(a) of the Contract Terms and Conditions defines an "Event of Default" as follows:

> An Event of Default shall mean a material breach of the Contract by either party which, without limiting the generality of the foregoing and in addition to those instances specifically referred to in the Contract as a material breach or an Event of Default, shall include a determination that: (i) performance of this Contract is unnecessarily or unreasonably delayed; (ii) either party is willfully violating any of the provisions of the Contract Documents or is not executing the same in good faith and in accordance with this Contract; (iii) the Contractor has abandoned the Work; (iv) Contractor has become insolvent (other than as a bankrupt), or has assigned the proceeds of this Contract for the benefit of creditors, or taken advantage of any insolvency statute or debtor or creditor

WOLFF & SAMSON PC • 140 Broadway, 46th Floor • New York, New York 10005 • (212) 973-0572

law or if his property or affairs have been put in the hands of a receiver; (v) Contractor has failed to obtain an approval required by the Contract; or (vi) the Contractor has failed to provide "adequate assurance" as required under paragraph (b) hereof.

22. The Bond further provides, after setting forth the conditions of the Sureties' obligation under the Bond as set forth above, that "if requested to do so by the [NYCTA]" the Sureties will commence completion of Lockheed's obligations under the Bond within 20 days "after written notice thereof from the [NYCTA] . . . ."

23. On or about April 24, 2009, Lockheed commenced an action in this Court entitled *Lockheed Martin Transportation Security Systems, an Operating Unit of Lockheed Martin Corporation v. MTA Capital Construction Company and Metropolitan Transportation Authority*, Docket No. 09-CV-4077.

24. In its Complaint in that action, Lockheed alleges that MTACC and the MTA are in material breach of the Contract and that, as a result, Lockheed has been discharged from further performance thereunder.

25. By letter dated May 26, 2009, MTACC notified Lockheed that, for the reasons described therein, MTACC believed that multiple "Events of Default" had occurred and that Lockheed was in material breach of its obligations under the Contract.

26. This letter further advised Lockheed that, unless Lockheed cured these Events of Default and took other steps stated in the letter by June 4, 2009, MTACC would terminate the Contract.

27. By letter dated May 27, 2009, MTACC, apparently on behalf of the MTA, notified the Sureties that Lockheed "has been placed in default of" the Contract.

5

28. By letter dated June 4, 2009, Lockheed responded, in detail, to each of the allegations contained in MTACC's letter of May 26, 2009, and vehemently denied that it was in material breach of the Contract.

29. By letter dated June 12, 2009 to Lockheed, MTACC declared Lockheed to be in default of its obligations under the Contract.

30. This letter stated, *inter alia:* "Pursuant to Article 7.03(a) of the Contract Terms and Conditions MTACC is requesting that the Sureties undertake their obligations under [the Bond]."

31. By separate letter to the Sureties also dated June 12, 2009, MTACC notified the Sureties of its declaration of Lockheed's default and requested that the Sureties undertake completion of Lockheed's obligations under the Contract.

32. Lockheed has advised the Sureties that it considers the default declaration to be wrongful, that it is not in default under the Contract, that MTACC had and has no basis for terminating it, and that, as a result, neither MTACC, the MTA, nor the NYCTA has any basis for demanding that the Sureties takeover and perform the Contract pursuant to the Bond and Article 7.03(a) of the Contract.

33. Upon receipt of notice of default from MTACC and its demand that the Sureties undertake completion, the Sureties executed the Non-Disclosure Agreements required by the Contract and undertook an expedited investigation of the claim in as comprehensive a manner as reasonably possible in light of the attenuated time frame allowed by the Bond for the Sureties to investigate the claim and determine their obligation under the Bond, if any.

34. As of the date hereof, which is the 20th day since MTACC's written notice to the Sureties of the declaration of default and termination of Lockheed, the Sureties are unable to

conclude that Lockheed is in material breach of the Contract, that MTACC, the MTA, and/or the NYCTA are not in material breach of the Contract, or otherwise that the conditions to the Sureties' obligation under the Bond have been satisfied.

### FIRST CAUSE OF ACTION

35.   The Sureties repeat and reassert the allegations contained in paragraphs 1 through 34 with the same force and effect as if set forth at length.

36.   An actual controversy exists among the parties as to the Sureties' obligations under the Bond, if any.

37.   Pursuant to 28 U.S.C. § 2201, the Sureties request judgment declaring the present rights and obligations of the parties, if any, under the Bond.

### SECOND CAUSE OF ACTION

38.   The Sureties repeat and reassert the allegations contained in paragraphs 1 through 37 with the same force and effect as if set forth at length.

39.   Under the Agreements of Indemnity, Lockheed has a duty to exonerate, save harmless, and obtain a discharge of the Sureties from all liability, loss, cost, and expense that may be asserted against them and/or to which they may be exposed by virtue of having executed the Bond, and to place the Sureties in funds in an amount sufficient to pay the liability asserted against them.

40.   The Sureties will lack an adequate remedy at law if these obligations are not satisfied.

41.   The Sureties request judgment directing Lockheed to specifically perform its obligations under the Agreements of Indemnity to exonerate, save harmless, and/or obtain a discharge of the Sureties from all liability, loss, cost, and expense that may be asserted against

the Sureties and/or to which they may be exposed by virtue of having executed the Bond, and to place the Sureties in funds in an amount sufficient to pay the liability asserted against them.

### THIRD CAUSE OF ACTION

42. The Sureties repeat and reassert the allegations contained in paragraphs 1 through 41 with the same force and effect as if set forth at length.

43. Lockheed has a common-law duty to exonerate the Sureties and obtain a discharge of them from any liability, loss, cost, and expense that may be asserted against them and/or to which they may be exposed by virtue of having executed the Bond.

44. The Sureties request judgment directing Lockheed to perform its common-law obligation to exonerate and/or obtain a discharge of the Sureties from all liability, loss, cost, and expense that may be asserted against the Sureties and/or to which they may be exposed by virtue of having executed the Bond.

### FOURTH CAUSE OF ACTION

45. The Sureties repeat and reassert the allegations contained in paragraphs 1 through 44 with the same force and effect as if set forth at length.

46. Under the Agreements of Indemnity, Lockheed is obligated to indemnify the Sureties for all losses, costs, and expenses, including but not limited to attorneys' and consultants' fees, that the Sureties have incurred and/or may incur as a result of the claim by MTACC and MTA against the Bond, otherwise as a result of their execution of the Bond, and in enforcing their rights under the Agreements of Indemnity.

47. Accordingly, the Sureties demand judgment against Lockheed in the amount of all such losses, costs, and expenses, including but not limited to attorneys' fees and consultants'

fees, which they have incurred and will continue to incur as a result of having executed the Bond and in enforcing their rights under the Agreements of Indemnity.

### FIFTH CAUSE OF ACTION

48.  The Sureties repeat and reassert the allegations contained in paragraphs 1 through 47 with the same force and effect as if set forth at length.

49.  Lockheed has a common-law obligation to indemnify and reimburse the Sureties from and against all liability, losses, costs, and expenses, including but not limited to attorneys' and consultants' fees, that the Sureties have incurred and/or may incur as a result of the claim by MTACC and MTA against the Bond and otherwise as a result of their execution of the Bond.

50.  Accordingly, the Sureties demand judgment against Lockheed in the amount of all such liability, losses, costs, and expenses, including but not limited to attorneys' fees and consultants' fees, which the Sureties have incurred and will continue to incur as a result of the claim by MTACC and the MTA against the Bond and otherwise as a result of their execution of the Bond.

**WHEREFORE**, the Sureties demand judgment as follows:

(a)  on the First Cause of Action, declaring the present rights and obligations of the parties, if any, under the Bond;

(b)  on the Second Cause of Action, directing Lockheed to specifically perform its obligations under the Agreements of Indemnity to exonerate, save harmless, and/or obtain a discharge of the Sureties from all liability, loss, cost, and expense that may be asserted against the Sureties and/or to which they may be

exposed by virtue of having executed the Bond, and to place the Sureties in funds in an amount sufficient to pay the liability asserted against them;

(c) on the Third Cause of Action, directing Lockheed to perform its common-law obligation to exonerate and/or obtain a discharge of the Sureties from all liability, loss, cost, and expense that may be asserted against the Sureties and/or to which they may be exposed by virtue of having executed the Bond;

(d) on the Fourth Cause of Action, against Lockheed in an amount to be determined;

(e) on the Fifth Cause of Action, against Lockheed in an amount to be determined;

(f) all of the foregoing with interest, costs, and disbursements; and

(g) awarding the Sureties such other and further relief as the Court deems just and proper.

Dated: July 2, 2009

**WOLFF & SAMSON PC**
Attorneys for Plaintiffs
*Travelers Casualty & Surety Company of America, Federal Insurance Company, and Safeco Insurance Company of America*

By: /s/ Armen Shahinian
Armen Shahinian (AS-8196)
Adam P. Friedman (AF-5700)
Jonathan S. Bondy (JB-3106)

140 Broadway, 46th Floor
New York, New York 10005
(212) 973-0572