UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LOCKHEED MARTIN TRANSPORTATION SECURITY
SOLUTIONS, AN OPERATING UNIT OF LOCKHEED
MARTIN CORPORATION,

                                          Plaintiff,

                                    -against-

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN TRANSPORTATION AUTHORITY,

                                        Defendants.

No. 09 cv 4077 (PGG)(GWG)

------------------------------------------------------------------x
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,
and SAFECO INSURANCE COMPANY OF AMERICA,

                                        Plaintiff,

                                    -against-

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, and
NEW YORK CITY TRANSIT AUTHORITY,

                                        Defendants.

No. 09 cv 6033 (PGG)(GWG)

------------------------------------------------------------------x

## DECLARATION OF JIM WILLIAMSON
## ON BEHALF OF LOCKHEED MARTIN CORPORATION
## IN OPPOSITION TO
## MTA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

I, JIM WILLIAMSON, pursuant to 28 U.S.C. § 1746(2), declare as follows:

1.    I was the Director of Engineering, Secure Enterprise Solutions for Lockheed Martin Corporation ("Lockheed Martin") on the Integrated Electronic Security Solutions ("IESS") Project that is the subject of this litigation.

2.    I respectfully submit this declaration in opposition to Defendants' Metropolitan Transportation Authority and MTA Capital Construction Company (together, "MTA"'s) motion to compel the production of certain documents designated as privileged or work product by Travelers Casualty and Surety Company of America, Federal Insurance Company, and Safeco

DM1\2975636.2

Insurance Company of America (collectively, the "Sureties").

3. I understand that MTA seeks to force the production of certain documents that I authored, received, or was copied on (the "Williamson Documents"), between July 1, 2009 through August 27, 2009.

4. For reference, this litigation was filed on April 24, 2009.

5. MTA then terminated Lockheed Martin's contract at issue in this litigation on June 12, 2009.

6. After June 12, 2009, Lockheed Martin began to demobilize the program and the parties actively litigated this matter.

7. Lockheed Martin was informed by the Sureties' counsel that it was preparing to commence litigation against the MTA and Lockheed Martin seeking a declaration of the respective parties' rights and obligations under the Surety bonds. Thereafter, on July 2, 2009, the Sureties commenced their litigation.

8. I was directed by Lockheed Martin's counsel to fully cooperate with the Sureties and the Sureties' Counsel in order to assist them in preparing for litigation against the MTA.

9. During the pertinent time period set forth at Paragraph 3 above (between July 1, 2009 through August 27, 2009), in my position as Director of Engineering my responsibilities included–because MTA had terminated Lockheed Martin's work on the project: assisting Lockheed Martin in-house counsel (primarily Barbara Loscalzo, Esq. or Robert Pezzimenti, Esq.), outside litigation counsel Duane Morris LLP (primarily Michael Chartan, Esq.), and the Sureties in furtherance of the ongoing litigation.

10. During that time, I was acting under the direction of Lockheed Martin counsel or outside litigation counsel Duane Morris LLP in furtherance of the litigation.

11. The Williamson Documents include:

DM1\2975636.2

    a. An email I wrote on July 1, 2009 to Louis M. Baldassarre, and copied to Michael Spinelli and Lockheed Martin's Senior Staff Contracts Negotiator Donato Antonucci. My email responded to Mr. Baldassarre's request for information and/or documents pertaining to specific positions taken by MTA in the litigation and/or responses thereto. (See MTA Exhibit N, Page 5 of 5, "Category C," Line 1 of 18, referring to "Document Number" "149").

    b. An email that Mr. Baldassarre sent to me, copied to Michael Spinelli and Lockheed Martin's Donato Antonucci, in response to my email discussed above, which responded to Mr. Baldassarre's request for additional information and/or documents pertaining to specific positions taken by MTA in the litigation and/or responses thereto. (See MTA Exhibit N, Page 5 of 5, "Category C," Line 2 of 18, referring to "Document Number" "150").

12. It was my understanding that documents prepared for Lockheed Martin's Sureties or the Sureties' consulting experts after July 1, 2009 was in anticipation of litigation or for trial and are protected from disclosure based on the federal court rules.

13. Messrs Baldassarre and Spinelli were employed by Cashin Spinelli, consulting experts retained by counsel for the Sureties or directly by the Sureties, as a result of MTA's termination of the contract and in furtherance of the litigation between MTA and Lockheed Martin.

14. It was my understanding that my communications with Cashin Spinelli, after July 1, 2009, was directly related to my role supporting Lockheed Martin outside litigation counsel and counsel for the sureties in furtherance of the litigation against MTA, so that they could render legal advice and counsel, and that such communications were protected from disclosure.

15. The Williamson Documents also include:

DM1\2975636.2

    a. Additional emails that I received, dated August 27, 2009, more than six (6) weeks after MTA terminated the program and well into the litigation, from Donato Antonucci (Lockheed Martin Sr. Staff Contracts Negotiator) or from Adam P. Friedman, Esq., outside litigation counsel for the Sureties, providing additional information or documents pertaining to positions taken by MTA in the litigation and/or responses thereto. (See MTA Exhibit N, Page 5 of 5, "Category C," Lines 14-18 of 18, referring to "Document Numbers" "162," "163," "164," "165," and "166").

16. It was my understanding that these communications were solely for purposes of and in furtherance to the litigation between MTA and Lockheed Martin.

17. It was my expectation with respect to the Williamson Documents that any privileged or protected materials would be kept confidential and would not be shared with unnecessary third parties. To my knowledge, there has been no such disclosure.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 11/30, 2011
November 30, 2011

_____
JIM WILLIAMSON

DM1\2975636.2