UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LOCKHEED MARTIN TRANSPORTATION
SECURITY SOLUTIONS, AN OPERATING UNIT OF
LOCKHEED MARTIN CORPORATION,                                No.: 09 CV 4077 (PGG) (GWG)

                       Plaintiff,                                     <u>ECF CASE</u>

   - against -

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN TRANSPORTATION AUTHORITY,

                       Defendants.
------------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,
and SAFECO INSURANCE COMPANY OF AMERICA,     No. 09 CV 6033 (PGG) (GWG)

                       Plaintiffs,

   - against -

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, NEW
YORK CITY TRANSIT AUTHORITY, and
LOCKHEED MARTIN CORPORATION,

                       Defendants.
------------------------------------------------------------------------X

<b>DECLARATION OF BRUCE L. CORRIVEAU IN SUPPORT<br>
<u>OF THE SURETIES' MOTION FOR PARTIAL SUMMARY JUDGMENT</u></b>

I, Bruce L. Corriveau, pursuant to 28 U.S.C. § 1746(2), declare as follows

1.    I am an attorney admitted to practice in the State of Maryland, and am Regional Claims Officer for Travelers Casualty and Surety Company of America ("Travelers"). I submit this Declaration in support of the motion of Travelers Casualty and Surety Company of America, Federal Insurance Company, and Safeco Insurance Company of America (together, the "Sureties") for partial summary judgment dismissing the Counterclaim against the Sureties

and/or awarding the Sureties a credit against any damages to which the MTA[1] may be entitled (if any), to the extent of $5,468,907.83.

2. The Sureties, as co-sureties, executed the performance bond that is the subject of this litigation ("the Bond"), a copy of which is annexed to the Appendix to the Sureties' Rule 56.1 Statement of Undisputed Facts ("Sureties' Appendix") as Exhibit 1.  Travelers has the greatest share of the exposure under the Bond.  I am the representative from Travelers responsible for this claim and litigation, and I am personally familiar with the facts set forth herein.

3. The MTA and Lockheed Martin Transportation Security Systems, an Operating Unit of Lockheed Martin Corporation ("Lockheed"), are parties to a contract for the delivery of an Integrated Electronic Security System ("the IESS Project") for the MTA.

4. In connection with this contract, the Sureties and Lockheed, as principal, executed a performance bond in favor of the MTA, as obligee.

5. The form of the Bond was drafted by the MTA.

6. The penal sum of the Bond is $293,379,788.00 (*see* Sureties' Appendix, Exhibit 1).

7. By letter dated May 26, 2009, the MTA notified Lockheed that "multiple Events of Default have occurred, resulting in Lockheed being in material breach of its contractual obligations", and that it would deem the IESS Contract to be terminated a week later if Lockheed failed, *inter alia,* to cure these supposed "Events of Default".  A copy of this letter is

---

[1] For purposes of the Sureties' motion, the term "MTA" shall mean the Metropolitan Transportation Authority, MTA Capital Construction and the New York City Transit Authority.  However, the New York City Transit Authority is not a party to litigation between Lockheed Martin and the MTA under Docket No. 09 CV 4077.

2

annexed the Joint Appendix to the Parties' Rule 56.1 Statements of Undisputed Facts as Exhibit 6.[2]

8. By letter dated June 4, 2009, Lockheed provided a detailed response to the allegations contained in the MTA's May 26 letter and provided a plan to complete as requested by the MTA (*see* Ex. J7).

9. By letter dated June 12, 2009, a mere eight days later, the MTA formally declared Lockheed to be in default and terminated the IESS Contract due to this supposed default (*see* Ex. J8).

10. By separate letter also dated June 12, 2009, the MTA demanded that the Sureties complete the performance of Lockheed's obligations under the bonded contract (*see* Sureties' Appendix, Exhibit 2).

11. Upon receipt of the MTA's June 12 letters, the Sureties immediately undertook an investigation. The Bond afforded the Sureties 20 days in which to conduct their investigation (*see* Sureties' Appendix, Exhibit 1).

12. Toward that end, by letter dated June 15, 2009, the Sureties requested various information from the MTA, including:

> 4. All payment applications, paid and unpaid, submitted by Lockheed Martin, and all copies thereof including all "marked up" versions as revised by the MTA;
>
> 5. Cancelled checks and other documentation demonstrating all payments issued by the MTA under the Contract;
>
> 6. A detailed accounting of the remaining contract balance and retainage on hand.

A copy of this letter is annexed to the Sureties' Appendix as Exhibit 3.

---

[2] By agreement of the parties, and for purposes of consistency, the exhibits attached to the Joint Appendix to the Parties' Rule 56.1 Statements of Undisputed Facts shall be referred to as "Ex. J_".

3

13. Despite my request for information regarding the status of the contract funds as of the date of termination of the IESS Contract, the MTA never advised the Sureties that it intended to pay (and did pay) the sum of $5,468,907.83 to Lockheed after having terminated Lockheed for purported default and asserting a demand against the Bond.

14. If, as the MTA alleges, (a) Lockheed performed its obligations under the Contract so poorly that "multiple events of default" occurred, justifying termination of the IESS Contract, and (b) the cost to complete the IESS Project would exceed the contract funds on hand, then the MTA did not have an obligation to make any payment to Lockheed after termination, and should not have made any such payment.

15. To the contrary, as explained in the accompanying Memorandum of Law, the MTA was obligated to protect the contract funds remaining at the time of termination, to ensure their availability to cover the cost of completing the IESS Project.

16. As further explained in the accompanying Memorandum of Law, the MTA's voluntary disbursement of nearly $5.5 million to Lockheed after Lockheed had been terminated and after the MTA demanded that the Sureties undertake completion of the IESS Project (also known as an "overpayment") impaired the Sureties' equitable subrogation rights in the contract funds and reduced their collateral against potential loss under the Bond.

17. It was only through discovery that I learned about this improper payment.

18. The Sureties never consented to this payment.

19. If the Sureties are required to pay or otherwise perform under the Bond, they will have been damaged by the MTA's impairment of their subrogation rights, in the sum of $5,468,907.83.

20. After their investigation, the Sureties advised the MTA that they were unable to conclude that Lockheed was, in fact, in material breach such that the Sureties were obligated to perform under the Bond, and on July 2, 2009, commenced an action seeking a declaration as to the parties' rights and obligations under the Bond (*see* Sureties' Appendix, Exhibit 4; Declaration of Adam P. Friedman, ¶ 5).

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct. Executed on July 15, 2013.

_____
Bruce L. Corriveau