UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LOCKHEED MARTIN TRANSPORTATION
SECURITY SOLUTIONS, AN OPERATING UNIT OF
LOCKHEED MARTIN CORPORATION,                    No.: 09 CV 4077 (PGG) (GWG)

                Plaintiff,                    <u>ECF CASE</u>

   - against -

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN TRANSPORTATION AUTHORITY,

                Defendants.
------------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,
and SAFECO INSURANCE COMPANY OF AMERICA,        No. 09 CV 6033 (PGG) (GWG)

                Plaintiffs,

   - against -

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, NEW
YORK CITY TRANSIT AUTHORITY, and
LOCKHEED MARTIN CORPORATION,

                Defendants.
------------------------------------------------------------------------X

**DECLARATION OF ADAM P. FRIEDMAN IN SUPPORT
<u>OF THE SURETIES' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

     I, Adam P. Friedman, pursuant to 28 U.S.C. § 1746(2), declare as follows:

     1.    I am an attorney admitted to practice before this Court and am a member of Wolff & Samson PC, counsel for Travelers Casualty and Surety Company of America, Federal Insurance Company, and Safeco Insurance Company of America (together, the "Sureties"), the plaintiffs in the action under docket number 09 CV 6033.  I submit this Declaration in support

of the Sureties' motion for partial summary judgment dismissing the Counterclaim against the Sureties to the extent of $5,468,907.83.  I am fully familiar with the facts set forth herein.

2. On or about April 24, 2009, Lockheed Martin Transportation Security Systems, an Operating Unit of Lockheed Martin Corporation ("Lockheed"), commenced an action in this Court entitled *Lockheed Martin Transportation Security Systems, an Operating Unit of Lockheed Martin Corporation v. MTA Capital Construction Company and Metropolitan Transportation Authority,* Docket No. 09 CV 4077 (the "Lockheed Action").  A copy of the Complaint in the Lockheed Action is annexed to the Joint Appendix to the Parties' Rule 56.1 Statements of Undisputed Facts as Exhibit 1.[1]

3. On or about May 26, 2009, the defendants in the Lockheed Action (together with the New York City Transit Authority, collectively referred to in these motion papers as "the MTA") filed their Answer and Counterclaim in the Lockheed Action (*see* Ex. J2).

4. As stated in the accompanying Declaration of Bruce L. Corriveau, by letters dated June 12, 2009, the MTA formally declared Lockheed to be in default, terminated the IESS Contract,[2] and demanded that the Sureties complete the performance of Lockheed's obligations under the IESS Contract pursuant to their Performance Bond ("the Bond") (*see* Ex. J8 (Letter from the MTA to Lockheed, dated June 12, 2009); Appendix to the Sureties' Rule 56.1 Statement of Undisputed Facts ("Sureties' Appendix"), Exhibits 1 (the Bond) and 2 (Letter from the MTA to the Sureties, dated June 12, 2009); Corriveau Declaration, ¶¶ 9 and 10).

---

[1] By agreement of the parties, and for purposes of consistency, the exhibits attached to the Joint Appendix to the Parties' Rule 56.1 Statements of Undisputed Facts shall be referred to as "Ex. J_".

[2] "The IESS Contract" and "the IESS Project" refer to the integrated electronic security system that is the subject of this litigation and the related contract between Lockheed and the MTA.

2

5. On July 2, 2009, after investigating the MTA's claim and being unable to conclude that Lockheed was in material breach such that the Sureties were obligated to act under the Bond, the Sureties filed their Complaint seeking a determination of the parties' rights and obligations under the Bond. A copy of the Sureties' Complaint is annexed to the Sureties' Appendix as Exhibit 4.

6. By Order dated July 29, 2009, a copy of which is annexed to the Sureties' Appendix as Exhibit 5, the action commenced by the Sureties was consolidated with the Lockheed Action.

7. On or about July 7, 2009, Lockheed filed an Amended Complaint in the Lockheed Action (*see* Ex. J3).

8. On or about July 20, 2009, the MTA filed an Answer and Counterclaims to Lockheed's Amended Complaint (the "MTA Answer and Counterclaims") (*see* Ex. J4).

9. In the MTA Answer and Counterclaims, the MTA alleges that its termination of Lockheed arose because, for example, Lockheed "breached fundamental and material provisions of the parties' contract . . . resulting in substantial delays to the job and monetary damages . . ." (MTA Answer and Counterclaims, Counterclaims ¶ 1).

10. The MTA Answer and Counterclaims identifies nine specific supposed failures of Lockheed (*id.*, ¶ 2).

11. The MTA Answer and Counterclaims alleges damages in excess of $88 million (*see id.* at 33).

12. The MTA currently alleges that the cost to achieve "minimum System functionality" of the IESS System is $51,417,831.54 over and above the remaining contract

funds (*see* the MTA's Fifth Supplemental Responses and Objections to Lockheed's First Set of Interrogatories, a copy of which is annexed to the Sureties' Appendix as Exhibit 6, at 2-3).

13. The MTA further asserts that the cost of "bringing the System from the minimally functional state that MTA is currently seeking to achieve to a System that meets the requirements of the Contract" is an additional $117,730,000.00 (*see id.* at 4).

14. On or about August 18, 2009, the MTA filed its Answer and Counterclaim against the Sureties (*see* Sureties' Appendix, Exhibit 7). The Counterclaim seeks damages for the Sureties' supposed default under the Bond.

15. On or about August 25, 2009, the Sureties filed their Reply to the MTA's Counterclaim (*see* Sureties' Appendix, Exhibit 8). In the Reply's Fifth Affirmative Defense, the Sureties allege that the MTA failed to mitigate its damages. In the Reply's Eleventh Affirmative Defense, the Sureties allege that they are entitled to relief as a result of the MTA's overpayment of Lockheed.

16. The MTA's construction manager for the IESS Project,[3] Nino Pirraglia, was deposed on August 5, 2010. A copy of the transcript of Mr. Pirraglia's deposition is annexed to the Sureties' Appendix as Exhibit 9 (the "Pirraglia Deposition").

17. As construction manager, Mr. Pirraglia's responsibilities included reviewing and approving Lockheed's payment requests and arranging for the issuance of payment to Lockheed (Pirraglia Deposition at 27 (lines 17-25), 28 (lines 2-3)).

18. Mr. Pirraglia testified that, on or about June 1, 2009, approximately one week after the MTA notified Lockheed that "multiple Events of Default" had occurred and that it

---

[3] Mr. Pirraglia identified himself as Construction Manager at his deposition (*see* Pirraglia Deposition at 27 (lines 6-16)).

4

would deem the IESS Contract terminated a week later if Lockheed failed, *inter alia,* to cure these supposed defaults, Lockheed submitted "Estimate No. 40" in the amount of $5,468,907.83 to the MTA for payment (*see* Pirraglia Deposition at 77 (lines 4-24), 82 (lines 13-19)). A copy of Estimate No. 40 is annexed to the Sureties' Appendix as Exhibit 10.

19. The amount sought by Lockheed in Estimate No. 40 represented the value of the work Lockheed estimated it had completed between April 18, 2009, and May 22, 2009 (*see* Sureties' Appendix, Exhibit 10 at 1).

20. Subsequent to the MTA's June 12, 2009, formal declaration of a default and termination of the IESS Contract, and the MTA's demand that the Sureties complete the performance of Lockheed's obligations under the IESS Contract, the MTA approved Estimate No. 40 and paid Lockheed the sum of $5,468,907.83 (*see* Pirraglia Deposition at 83 (lines 11-25), 84 (line 2)).

21. When asked why the MTA paid Lockheed nearly $5.5 million after it had terminated Lockheed for default, Mr. Pirraglia testified that he "wouldn't have paid Lockheed, but that decision wasn't up to me" (*see* Pirraglia Deposition at 84 (lines 3-10)).

22. In an email dated June 19, 2009, a copy of which is annexed to the Sureties' Appendix as Exhibit 11, Mr. Pirraglia cautioned that the MTA should "hold the money in escrow until we get a better understanding of the cost of the remaining work".[4]

23. In an email dated June 24, 2009, a copy of which is annexed to the Sureties' Appendix as Exhibit 12, Mr. Pirraglia implored the MTA to "hold the electronic transfer of funds to Lockheed Martin under Payment 40".

---

[4] This email erroneously references the subject payment as "Payment 41". Payment 41 appears to have been a $33,341.52 payment made to Con Edison.

5

24.     Despite Mr. Pirraglia's pleas, the MTA paid Lockheed $5,468,907.83 on or about July 1, 2009, approximately 30 days after Lockheed's submission of Estimate 40 (*see* Pirraglia Deposition at 83 (lines 11-25)).

25.     In an internal memo dated August 19, 2009, a copy of which is annexed to the Sureties' Appendix as Exhibit 13, the MTA acknowledged that, together with retainage, there were approximately $66.2 million in contract funds remaining as of that date (*see* Sureties' Appendix, Exhibit 13 at 3). Thus, together with the over $5.4 million that the MTA paid to Lockheed after it had been terminated, at the time of the termination, there were approximately $71.6 million in contract funds remaining.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.  Executed on July 15, 2013.

~     /s Adam P. Friedman    ~
Adam P. Friedman