UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LOCKHEED MARTIN TRANSPORTATION
SECURITY SOLUTIONS, AN OPERATING UNIT
OF LOCKHEED MARTIN CORPORATION,

                        **Plaintiff,**

  -against-

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN TRANSPORTATION AUTHORITY,

                        **Defendants.**
------------------------------------------------------------------------x
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,
and SAFECO INSURANCE COMPANY OF AMERICA,

                        **Plaintiffs,**

  -against-

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, NEW
YORK CITY TRANSIT AUTHORITY and
LOCKHEED MARTIN CORPORATION,

                        **Defendants.**
------------------------------------------------------------------------x

No.: 09 CV 4077 (PGG)(GWG)

ECF CASE

No.: 09 CV 6033(PGG)(GWG)

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
### OF THE SURETIES' MOTION FOR PARTIAL SUMMARY JUDGMENT

                        WOLFF & SAMSON PC
                        140 Broadway, 46th Floor
                        New York, NY  10005
                        (212) 973-0572

                        *Attorneys for Plaintiffs Travelers Casualty*
                        *and Surety Company of America, Federal*
                        *Insurance Company, and Safeco Insurance*
                        *Company of America*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT .............................................................................................................................. 2

    A.    THE MTA HAD AN OBLIGATION TO PRESERVE THE REMAINING CONTRACT BALANCE AFTER IT DECLARED A DEFAULT AND MADE A DEMAND UPON THE SURETIES TO PERFORM ..................................................... 2

        1.    **The MTA Failed to Mitigate Damages.**....................................... 2

        2.    **The MTA Impaired the Security Available to Complete the IESS Project.**............................................................. 3

        3.    **The Sureties' Performance Is Not a Requisite to the MTA's Duty to Preserve Contract Funds Upon Lockheed's Alleged Default or of Its Obligation to Mitigate Damages.**.................................................. 5

        4.    **The Sureties Were Not Required to Provide the MTA with Notice that the MTA Had Terminated Lockheed.**......................................................................................... 6

    B.    THE LANGUAGE OF THE MTA'S FORM OF PERFORMANCE BOND DOES NOT CONSTITUTE A WAIVER OF THE SURETIES' OBJECTION TO THE MTA'S VOLUNTARY POST-TERMINATION PAYMENTS. ........................................................................................... 8

    C.    LOCKHEED'S INDEMNITY OBLIGATIONS TO THE SURETIES ARE IRRELEVANT TO THE COURT'S DETERMINATION OF THIS MOTION. .............................................. 11

CONCLUSION........................................................................................................................ 12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*151 West Assocs. v. Printsiples Fabric Corp.*,
  61 N.Y.2d 732, 472 N.Y.S.2d 909 (1984) ...............................................................................11

*Aetna Cas. & Sur. Co. v. United States*,
  4 N.Y.2d 639, 176 N.Y.S.2d 961 (1958) ...................................................................................5

*Aniero Concrete Co. v. New York City Construction Authority*,
  1998 WL 148324 (S.D.N.Y. 1998), *aff'd,* 404 F.3d 566 (2005) ................................................8

*City of N.Y. v. Aetna Cas. & Sur. Co.*,
  1997 WL 379704 (S.D.N.Y. 1997) ............................................................................................6

*Corporation of the President of Church of Jesus Christ of Latter-Day Saints v. Hartford
  Accident & Indemnity Co.*,
  95 P.2d 736 (Utah 1939) ....................................................................................................... 9-10

*David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*,
  2013 WL 1277882 (E.D.N.Y. 2013) ........................................................................................10

*Dupack v. Nationwide Leisure Corp.*,
  73 A.D.2d 903, 424 N.Y.S.2d 436 (1st Dep't 1980) ................................................................10

*Fireman's Fund Insurance Co. v United States*,
  909 F.2d 495 (Fed. Cir. 1990) ............................................................................................... 7-8

*Globe Indem. Co. v. S. Pac. Co.*,
  30 F.2d 580 (2d Cir. 1929) ........................................................................................................4

*Hall & Co., Inc. v. Continental Cas. Co.*,
  34 A.D.2d 1028, 310 N.Y.S.2d 950 (3d Dep't 1970), *aff'd,* 30 N.Y.2d 519, 330
  N.Y.S.2d 64 (1972) ....................................................................................................................9

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,
  252 F.3d 608 (2d Cir. 2001) ....................................................................................................10

*Insurance Company of the West v. United States*,
  83 Fed. Cl. 535 (2008) ...............................................................................................................7

*Kapsis v. Am. Home Mortg. Servicing Inc.*,
  923 F. Supp. 2d 430 (E.D.N.Y. 2013) .......................................................................................3

*Krause v. Am. Guar. & Liab. Ins. Co.*,
  22 N.Y.2d 147, 292 N.Y.S.2d 67 (1968) ...................................................................................6

*Lori-Kay Golf, Inc. v. Lassner,*
   61 N.Y.2d 722, 472 N.Y.S.2d 612 (1984) ...............................................................................11

*McCarthy v. Am. Int'l Group, Inc.*,
   283 F.3d 121 (2d Cir. 2002).....................................................................................................10

*Menorah Nursing Home, Inc. v. Zukov*,
   153 A.D.2d 13, 548 N.Y.S.2d 702 (2d Dep't 1989) ..................................................................6

*Nat'l Sur. Corp. v. United States,*
   118 F.3d 1542 (Fed. Cir. 1997)............................................................................................. 7-8

*Nobel Insurance Co. v. City of N.Y.,*
   2006 WL 2848121 (S.D.N.Y. 2006) ................................................................................ 6, 8-10

*Pearlman v. Reliance Ins. Co.,*
   371 U.S. 132 (1962) ..................................................................................................................5

*Ransom v. United States*,
   17 Cl. Ct. 263 (1989), *aff'd,* 900 F.2d 242 (Fed. Cir. 1990)......................................................7

*S. Pac. Co. v. Globe Indem. Co.*,
   21 F.2d 288 (2d Cir. 1927)........................................................................................................4

*Transamerica Premier Ins. Co. v. United States*,
   32 Fed. Cl. 308 (1994) ..............................................................................................................8

*Tynan Incinerator Co. v. Int'l Fid. Ins. Co.,*
   117 A.D.2d 796, 499 N.Y.S.2d 118 (2d Dep't 1986) ................................................................2

*U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*,
   696 F. Supp. 2d 428 (S.D.N.Y. 2010) .......................................................................................2

*U S West Fin. Servs., Inc. v. Marine Midland Realty Credit Corp.*,
   810 F. Supp. 1393 (S.D.N.Y. 1993) ..........................................................................................2

*United States Fidelity & Guar. Co. v. Triborough Bridge Auth.,*
   297 N.Y. 31 (1947) ................................................................................................................ 5-6

*Westchester Fire Ins. Co. v. United States*,
   52 Fed. Cl. 567 (2002) ..............................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56...........................................................................................................................1

N.Y. Jur. Bonds § 117....................................................................................................................3

Restatement (Third) Suretyship & Guar. § 42 (1996) ...................................................................4

## PRELIMINARY STATEMENT

The MTA's opposition to the Sureties' motion for partial summary judgment[1] concedes that it made a nearly $5.5 million payment to Lockheed a month after it terminated Lockheed for a performance supposedly so deficient that it rose to the level of a default.  The MTA apparently believes that it, unlike every other party to a contract dispute, is not obligated to mitigate damages.  Indeed, the MTA's papers do not even address its failure to mitigate damages. The MTA's failure to mitigate damages alone warrants the entry of partial summary judgment in the Sureties' favor.  The remaining arguments made by the MTA are inapposite to the issues raised by the Sureties' motion or are otherwise unavailing.

The MTA evidently believes that it was free to make whatever payment it unilaterally deemed appropriate to Lockheed after terminating Lockheed for its alleged default, up to and including the entire remaining contract balance; and that it can add the amount of that voluntary payment to the amount the MTA now seeks from the Sureties.  The MTA, however, offers no explanation, let alone a justification, as to why, over the repeated objections of its own construction manager and contract language providing for the withholding of payment upon default, it made a payment of nearly $5.5 million to Lockheed a month after declaring Lockheed to be in default and weeks after terminating Lockheed for that default and asserting a claim against the Sureties.  The MTA's actions are contrary to well-settled law and are a violation of its obligations to the public and to the Sureties.  Should the Court determine that the MTA's

---

[1] The MTA's reference to Rule 56(d) of the Federal Rules of Civil Procedure is curious. Rule 56(d) refers to a non-movant's need for further discovery in order to oppose a Rule 56 Motion. The MTA has made no such assertion in this matter. To the extent the MTA is referring to former Rule 56(d), which was revised in 2010, the revised Rule 56(a) now makes explicit that "[a] party may move for summary judgment, identifying each claim or defense – or *the part of each claim or defense* – on which summary judgment is sought" (emphasis added).  Thus, the argument raised in footnote 1 of the MTA's Memorandum of Law, which appears to be premised upon the previous version of Rule 56, is without merit.

termination of Lockheed was proper, the Sureties' obligation under its bond should not be expanded so as to obligate them to reimburse the MTA for this improper payment.

## ARGUMENT

**A.   THE MTA HAD AN OBLIGATION TO PRESERVE THE REMAINING CONTRACT BALANCE AFTER IT DECLARED A DEFAULT AND MADE A DEMAND UPON THE SURETIES TO PERFORM**

**1.   The MTA Failed to Mitigate Damages.**

The MTA does not contest the fact that, had it withheld the $5.5 million payment from Lockheed, there now would be an additional $5.5 million in contract funds to be applied against the MTA's cost complete the IESS Project, thereby reducing the MTA's loss and its claim against the Sureties. The MTA thus concedes that it failed to mitigate damages. Nor does the MTA contest that under New York law it was obligated to mitigate damages.[2] It is hard to imagine a clearer case of a failure to mitigate damages.

The obligation to mitigate damages is well established in New York:

> It has long been the rule that where there has been a breach of contract, the party who suffers damage by reason of the breach has a duty to minimize the damages and any award of damages should be reduced by any unnecessary increase in damages due to the failure of the plaintiff to avoid them.

*U S West Fin. Servs., Inc. v. Marine Midland Realty Credit Corp.*, 810 F. Supp. 1393, 1402 (S.D.N.Y. 1993); *see also U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 440-41 (S.D.N.Y. 2010) ("If the plaintiff fails to mitigate his damages, the defendant cannot be charged with them"). The duty to mitigate damages extends to an obligee under a performance bond. *See, e.g., Tynan Incinerator Co. v. Int'l Fid. Ins. Co.,* 117 A.D.2d 796, 797, 499 N.Y.S.2d

---

[2] *See* Sureties' Memorandum of Law in support ("MOL") at 11 and the authorities cited therein.

2

118, 120 (2d Dep't 1986); N.Y. Jur. Bonds § 117 (obligee required to mitigate damages upon contractor's default).

If the MTA's contention that Lockheed materially breached the IESS Contract is true, then the MTA would have been excused from further payment. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013) ("A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party"). Moreover, Article 7.03(b) of the IESS Contract's Terms and Conditions specifically authorizes the MTA to mitigate its damages and provides the means of doing so: "If a Default occurs, Contractor shall be liable for all damages resulting from the Default. . . . *All damages may be deducted and paid out of such monies due the Contractor.*" *See* Ex. J10.4 (emphasis added). Yet, despite the MTA's obligation to mitigate its damages by withholding payment from Lockheed and contract language specifically providing therefor, the MTA did the exact opposite and paid almost $5.5 million to Lockheed after terminating it for default and asserting a demand against the Sureties' bond.

## 2. The MTA Impaired the Security Available to Complete the IESS Project.

The MTA's assertion that it did not owe a duty to the Sureties because the Sureties did not perform under the Bond is untenable and amounts to an *ex post facto* attempt to rationalize its improper payment. To begin with, the Sureties were still in their investigation phase under the bond when the MTA paid the $5.5 million to Lockheed. The Sureties were not required to commence performance until twenty days after the MTA's demand. *See* Corriveau Declaration, ¶ 11; Sureties' Appendix, Exhibit 1; S¶ 38.[3] The MTA made the post-termination payment to

---

[3] For purposes of consistency with the naming convention established by the MTA, references to paragraphs in the Sureties' Statement of Undisputed Material Fact, and the MTA's responses thereto, shall be cited as "S¶__".

3

Lockheed on June 25, 2009 – one week before the Sureties would have been required to perform under the Bond, had Lockheed truly been in default.  *See* MTA's Response to S¶ 34. Therefore, the Sureties would not have had the benefit of the $5.5 million post-termination payment even if the Sureties ultimately determined, at the end of the twenty-day investigative period, that the MTA's demand under the Bond was proper.

The contract balance serves as the Sureties' security against a potential loss that they may incur if they are required to pay or otherwise perform under the Bond.  *See* Restatement (Third) Suretyship & Guar. § 42 (1996); *Globe Indem. Co. v. S. Pac. Co.*, 30 F.2d 580, 581 (2d Cir. 1929).  If the Court ultimately determines that the MTA properly terminated Lockheed, then the MTA's post-termination payment to Lockheed impaired the security against loss that should have been available – to both the MTA and the Sureties – of nearly $5.5 million.  *S. Pac. Co. v. Globe Indem. Co.*, 21 F.2d 288, 290 (2d Cir. 1927).[4]  There is no disputing the fact that the MTA's failure to withhold payment from Lockheed, as authorized by the Contract, increased the amount of the MTA's claim against the Sureties, thereby expanding the Sureties' potential obligation under their bond.  Even viewing the facts in a light most favorable to the MTA, the MTA's actions are an impairment of security, and the Sureties are not responsible for damages the MTA easily could have, and should have, avoided.

---

[4] The MTA's attempt to distinguish these decisions is unavailing. In the *Globe Indemnity* decisions, the Second Circuit held that, while the subject bond secured the obligee in connection with advance payments, the obligee's voluntary payment to the bond principal *after the bond principal had abandoned the project* nevertheless discharged the surety *pro tanto*.  Similarly, in this case, the MTA made payment to Lockheed *after* it terminated the IESS Contract.  The MTA's characterization of the payment – advance vs. overpayment – is beside the point. That is, funds, which should have been available to secure the surety and obligee against future loss, were voluntarily released by the bond obligee.

3.  **The Sureties' Performance Is Not a Requisite to the MTA's Duty to Preserve Contract Funds Upon Lockheed's Alleged Default or of Its Obligation to Mitigate Damages.**

The MTA's argument that the Sureties were required to perform under the Bond before asserting their rights in the remaining contract balance as a potential subrogee is a red herring. If the Court concludes that the Sureties are liable under their performance bond and they pay or otherwise perform thereunder, the Sureties without question would be subrogated to the right of the MTA to apply the remaining contract balance to the cost of completion. *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 136-37 (1962) ("And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed."). The MTA wasted, both for itself and for the Sureties, funds that otherwise would have been available to complete the Project. The Sureties' present right to subrogation is not the issue; it is the fact that the Sureties' obligation under the performance bond has been expanded and their exposure increased by nearly $5.5 million because the MTA failed to preserve contract funds and mitigate its damages.

It is well settled in New York that a surety obtains an equitable lien against proceeds of a bonded contract immediately upon the issuance of a bond. *Aetna Cas. & Sur. Co. v. United States,* 4 N.Y.2d 639, 644, 176 N.Y.S.2d 961, 965 (1958); *United States Fidelity & Guar. Co. v. Triborough Bridge Auth.,* 297 N.Y. 31, 35-36 (1947). As the Court of Appeals stated in *Triborough Bridge:*

> [T]he equity in the surety's favor arose at the time it gave its bond, although the right *became available and enforcible* [sic] when it carried out the contract's provisions . . . . The equity in favor of the surety company *arose* at the time of the giving of its bond. The right *became available* when the surety company completed that work at a loss. [citation omitted] The equitable lien arose at the time of the execution of the bond and was thus superior to the assignment [to a secured lending bank].

5

*Triborough Bridge,* 297 N.Y. at 35-36 (emphasis in original).

Consequently, New York courts have upheld the surety's standing to assert its inchoate right of subrogation *before* performing under its bond.[5] For example, in *Nobel Insurance Co. v. City of N.Y.*, the court recognized that requiring the surety to perform in order to assert its right of subrogation "would arguably place sureties in an untenable position." 2006 WL 2848121, at *16 (S.D.N.Y. 2006). The court explained that, as here, if performance was required prior to the surety asserting its rights, the surety would "have to immediately [perform] without necessarily having the opportunity to investigate the propriety of the . . . claims." *Id.* As in *Nobel*, the Sureties should not have had to surrender their right of investigation and prematurely perform in order to obligate the MTA to refrain from voluntarily relinquishing nearly $5.5 million. In any event, here the Sureties are not seeking recovery of $5.5 million pursuant to their right of subrogation. Rather, they seek only an offset in that amount against any recovery to which the MTA might otherwise be entitled.

**4.     The Sureties Were Not Required to Provide the MTA with Notice that the MTA Had Terminated Lockheed.**

On June 12, 2009, the MTA formally terminated the IESS contract due to Lockheed's alleged default, advised the Sureties thereof, and demanded that the Sureties complete the IESS Project. As the MTA already had declared Lockheed to be in default, had terminated the IESS

---

[5] In *Menorah Nursing Home, Inc. v. Zukov*, 153 A.D.2d 13, 548 N.Y.S.2d 702 (2d Dep't 1989), the Appellate Division, Second Department, permitted a surety to assert claims as a "contingent subrogee", "which might be considered technically premature." *Id.* at *18. The court explained: "[w]hile it is true that the remedy of subrogation is generally available to a surety only when the claim of the creditor obligee has been paid, the Court of Appeals has already sustained the viability of a contingent third-party claim based on subrogation." *Id.* (internal quotations omitted) (citing *Krause v. Am. Guar. & Liab. Ins. Co.*, 22 N.Y.2d 147, 292 N.Y.S.2d 67 (1968)); *see also City of N.Y. v. Aetna Cas. & Sur. Co.*, 1997 WL 379704, *3 (S.D.N.Y. 1997) (surety permitted to assert claims as contingent subrogee of its principal).

6

Contract, and had notified the Sureties of the alleged default and termination, the assertion that the Sureties then had to reciprocally notify the MTA that Lockheed was in default is absurd.

The cases cited by the MTA do not support the notion that the Sureties should have notified the MTA of a default the MTA declared. In each case, notice by the surety to the owner was provided or required because the owner had not declared the default or was not actually aware of the default (for example, where the default arose from the principal's failure to pay its subcontractors and suppliers), or both.[6] In no case, however, was notice required where, as here, the owner itself declared the default and asserted its own bond claim against the surety. Indeed, the cases are to the contrary. *See, e.g., Nat'l Sur. Corp. v. United States,* 118 F.3d 1542, 1547 (Fed. Cir. 1997) ("When the contractor abandoned performance before completion . . . and the government had knowledge of the default . . . and so informed the surety . . . [the case law] does not impose a further requirement that the surety notify the government that 'the principal has defaulted.'").

The MTA's characterization of *Fireman's Fund Insurance Co. v United States,* 909 F.2d 495 (Fed. Cir. 1990), as standing for the proposition that notice is required from the surety even where the obligee is aware of the default, is wrong. *Fireman's Fund* stands for the unremarkable point that the surety, which is aware that its principal has failed to make payments to its subcontractors, is required to inform the owner of that failure in order to trigger the owner's responsibility to withhold funds from the principal. *Id.* at 499. This of course makes complete sense, as in such a circumstance the owner may not be aware of the principal's failure to pay its

---

[6] For example, in *Insurance Company of the West v. United States*, unlike the instant matter, the surety notified the obligee that it had "been made aware of claims and unpaid bills pertaining to vendors and subcontractors on another bonded project . . . ." 83 Fed. Cl. 535, 536 (2008); *see also Ransom v. United States*, 17 Cl. Ct. 263 (1989), *aff'd,* 900 F.2d 242 (Fed. Cir. 1990) (progress payments disbursed prior to the government's termination of the contract); *Westchester Fire Ins. Co. v. United States*, 52 Fed. Cl. 567 (2002) (same).

7

subcontractors and suppliers and, concomitantly, that it should be withholding payment from the principal.  Moreover, *Fireman's Fund* "was intended to address the specific facts before the court rather than to proclaim a rule of universal application . . . ."  *Transamerica Premier Ins. Co. v. United States*, 32 Fed. Cl. 308, 315 (1994) (rejecting the government's argument under *Fireman's Fund* that, under all circumstances, "no duty is owed the surety by the Government save where the Government has been informed by the surety of the contractor's actual default"); *National Sur. Corp.*, 118 F.3d at 1547 ("The holding in *Fireman's Fund* did not change the rules of subrogation, but simply dealt with the rights and obligations of the parties on the conditions of that case.").  *Fireman's Fund* does not provide that notice is required where, as here, the owner already declared a default and asserted a performance bond claim against the surety.

B.     **THE LANGUAGE OF THE MTA'S FORM OF PERFORMANCE BOND DOES NOT CONSTITUTE A WAIVER OF THE SURETIES' OBJECTION TO THE MTA'S VOLUNTARY POST-TERMINATION PAYMENTS.**

The MTA's argument that the language of the Bond waived the Sureties' right to object to the post-termination payment to Lockheed is contrary to the case law.[7]  In *Nobel*, the court construed language that was largely identical to that in the bond here, and concluded that the language was unambiguous and did not constitute a waiver of the surety's right to relief from improper payments made by the obligee to the principal.  *Nobel*, 2006 WL 2848121, at *9-11.  Moreover, the MTA's reliance upon *Aniero Concrete Co. v. New York City Construction Authority,* 1998 WL 148324 (S.D.N.Y. 1998), *aff'd,* 404 F.3d 566 (2005), is misplaced.  While the *Aniero* court interpreted the same bond form, it did so under an entirely different set of circumstances.  As the *Nobel* court explained, "the facts of [*Aniero*] involved "premature

---

[7] The MTA's feigned surprise as to the Sureties' arguments is not credible.  The MTA has been on notice of the Sureties' overpayment and mitigation of damages affirmative defenses for well over four years.  *See* Sureties' Reply to the MTA's Counterclaim, Sureties' Appendix, Exhibit 4.

8

payment because the construction project[] w[as] ongoing and . . . [the] contract had [not] been terminated." *Nobel*, 2006 WL 2848121, at *12 n.12. In this matter, as in *Nobel*, the MTA made payment after it took the unilateral affirmative steps of terminating the bonded contract and asserting a claim against the Sureties' performance bond.

Even if the MTA's post-termination payment to Lockheed can be considered to be a "payment before the time required", the MTA's argument still fails. The bond language that the Sureties' "bond shall in no way be impaired or affected by any extension of time, modification, addition or change in . . . said Contract . . . or by any payment thereunder before the time required therein . . ." is common language intended to avoid application of the old common-law doctrine of *strictissimi juris,* where any such modifications without the surety's consent would discharge the surety completely from further obligation under its bond. *Hall & Co., Inc. v. Continental Cas. Co.,* 34 A.D.2d 1028, 1029, 310 N.Y.S.2d 950, 952 (3d Dep't 1970), *aff'd,* 30 N.Y.2d 519, 330 N.Y.S.2d 64 (1972) ("a surety is discharged by any alteration of the contract to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury.").

While the bond says that the Sureties' obligation is not discharged by payment before the prescribed time, it also says that the obligation shall in no way be "affected". Here, the MTA seeks to "affect" the Sureties' obligation by increasing it, by virtue of the payment made to Lockheed after it terminated the contract for default. The MTA's bond form does not permit it to do so. As explained in *Corporation of the President of Church of Jesus Christ of Latter-Day Saints v. Hartford Accident & Indemnity Co.,* 95 P.2d 736, 741 (Utah 1939), construing a similar provision as avoiding application of the doctrine of *strictissimi juris*:

> The provision does not mean that if the surety is damaged or injured by the departure or alteration, it cannot defend pro tanto for

9

> the damage or prejudice suffered by such alteration. A provision that the surety shall not be released in any way from liability cannot be converted into a defense by the owner against a claim for damage which the alteration or change in the work done under the contract may have caused the surety over and above the liability it would have had to pay if the change had not been made.

The Utah court continued that, even if there was a breach by the owner with regard to premature payments, "the surety would not be totally released, but could defend only to the extent that its liability had been increased by such breach." *Id.* This is precisely what the Sureties seek by this motion.

The MTA's plea that the Court should interpret the bond strictly in favor of the MTA is similarly wrong.[8] The rule of *contra proferentem* applies only where there is an ambiguity; it does not apply where no ambiguity exists. *David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*, 2013 WL 1277882, at *12 n.4 (E.D.N.Y. 2013) (*citing Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001)). The *Nobel* court addressed the same language that the MTA invokes and concluded "the bond's terms are not ambiguous." *Nobel,* 2006 WL 2848121, at *11. As such, the bond "should be given its plain, ordinary and proper meaning." *Dupack v. Nationwide Leisure Corp.*, 73 A.D.2d 903, 905, 424 N.Y.S.2d 436, 439 (1st Dep't 1980). The plain and ordinary meaning of the relevant portion of the bond is that (a) that portion of the bond is not applicable to the MTA's post-termination payment, as explained in the Sureties' original motion papers, and (b) even if the MTA's post-termination payment could be considered to be a "premature payment", that premature payment does not and cannot "affect", *i.e.,* expand, the Sureties' obligation under the bond.

---

[8] The MTA's suggested approach is known as the doctrine of *contra proferentem*. *See, e.g., McCarthy v. Am. Int'l Group, Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) ("unambiguous terms are to be given their plain and ordinary meaning, and ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract").

Even if the pertinent portion of the bond is ambiguous, the doctrine of *contra proferentem* would require that the Court interpret the bond against the MTA, as it is the MTA's bond form.  *151 West Assocs. v. Printsiples Fabric Corp.,* 61 N.Y.2d 732, 734, 472 N.Y.S.2d 909, 910 (1984) ("It has long been the rule that ambiguities in a contractual instrument will be resolved *contra proferentem,* against the party who prepared or presented it").

### C. LOCKHEED'S INDEMNITY OBLIGATIONS TO THE SURETIES ARE IRRELEVANT TO THE COURT'S DETERMINATION OF THIS MOTION.

Perhaps the most curious argument posited by the MTA is that the Court should deny the Sureties' motion because Lockheed executed indemnification agreements in favor of the Sureties.  The Sureties are unaware of any case, and the MTA has cited no case, which supports the novel proposition that the existence of a separate indemnification agreement between a principal and surety, which occurs in virtually each instance where a surety provides bonding, somehow vitiates an obligee's duty to mitigate damages or otherwise protect the contract balance.  While of course the Sureties expect that Lockheed will indemnify and hold them harmless in the event of an adverse judgment, the existence of the indemnity agreements between Lockheed and the Sureties does not give the MTA free license to squander the remaining contract balance, expand the Sureties' obligations under their bond, and leave the Sureties to attempt to pursue their remedies against Lockheed under the indemnity agreements.  To the contrary, the existence of the indemnity agreements is simply another red herring, as sureties also possess a common-law right of indemnity from their principals, *Lori-Kay Golf, Inc. v. Lassner,* 61 N.Y.2d 722, 472 N.Y.S.2d 612 (1984), and yet the law is clear that an obligee cannot impair a surety's subrogation rights, cannot impair a surety's security, and must mitigate damages.

## **CONCLUSION**

Nothing in the MTA's opposition raises any material factual issues or refutes the MTA's failure to mitigate damages and its impairment of the security available to complete the IESS Project. As such, for the reasons set forth in the Sureties' original motion papers and herein, the Sureties' motion for partial summary judgment should be granted dismissing the Counterclaim against them to the extent of $5,468,907.83 and/or awarding them a credit in the sum of $5,468,907.83 against any recovery to which the MTA might otherwise be entitled under its Counterclaim, if any.

Dated: October 9, 2013

          Respectfully submitted,

          **WOLFF & SAMSON PC**
          Attorneys for Plaintiffs

          By: .      /s Adam P. Friedman      .
                 Adam P. Friedman

          140 Broadway, 46th Floor
          New York, New York  10005
          (212) 973-0572