UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LOCKHEED MARTIN TRANSPORTATION
SECURITY SOLUTIONS, AN OPERATING UNIT OF
LOCKHEED MARTIN CORPORATION,                                            No.: 09 CV 4077 (PGG) (GWG)

                    Plaintiff,                                            ECF CASE

    - against -

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN TRANSPORTATION AUTHORITY,

                    Defendants.
------------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,
and SAFECO INSURANCE COMPANY OF AMERICA,                                No. 09 CV 6033 (PGG) (GWG)

                    Plaintiffs,

    - against -

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, NEW
YORK CITY TRANSIT AUTHORITY, and
LOCKHEED MARTIN CORPORATION,

                    Defendants.
------------------------------------------------------------------------X

**THE SURETIES' RESPONSE TO MTA'S SUPPLEMENTAL
STATEMENT OF UNDISPUTED MATERIAL FACTS
<u>IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Pursuant to Rule 56.1 of the Local Civil Rules of this Court, plaintiffs Travelers Casualty and Surety Company of America, Federal Insurance Company, and Safeco Insurance Company of America (together, "the Sureties"), by their attorneys, Wolff & Samson PC, respond to the MTA's Supplemental Statement of Undisputed Material Facts in Opposition to the Sureties' Motion for Partial Summary Judgment as follows:

**WOLFF & SAMSON PC** ▪ 140 Broadway, 46th Floor ▪ New York, New York 10005 ▪ (212) 973-0572

38. Under the terms of the Bond, the Sureties were required "if requested to do so by the [MTA], to fully perform and complete the Project to be performed under the Contract, pursuant to the terms, conditions and covenants thereof, if for any cause the Contractor fails or neglects to so fully perform and complete such Project," and "to commence the work of completion within twenty (20) days after written notice thereof from the [MTA] and to complete such Project within such time as the [MTA] may fix." *See* Ex. S1 (Performance Bond) at p. 2.

*Response:* Disputed. The Sureties were not "required" to perform and complete the Project under the Bond, which incorporates the Contract by reference, unless Lockheed was in material breach under the Contract and the MTA was not in material breach thereof. *See* Sureties' Appendix, Exhibit 1.[1] As set forth in the Sureties' Complaint, the Sureties were, and continue to be, "unable to conclude that Lockheed is in material breach of the Contract, that MTACC, the MTA, and/or the NYCTA are not in material breach of the Contract, or otherwise that the conditions to the Sureties' obligation under the Bond have been satisfied." *See* Sureties' Appendix, Exhibit 4 at ¶ 34.

39. MTA requested that the Sureties perform their obligations under the Bond on June 12, 2009. *See* Ex. S6 (6/12/2009 Letter from Pezik to Sureties).

*Response:* Disputed, for the reasons set forth in S¶ 38,[2] to the extent that the MTA characterizes the Sureties as having an obligation to perform under the Bond.

---

[1] Defined terms shall have the same meaning as in the Sureties' moving papers.
[2] For purposes of consistency with the naming convention established by the MTA, references to paragraphs herein shall be cited as "S¶__".

2

40. Despite MTA's request, pursuant to the terms of the Bond, the Sureties did not commence the work of completion within twenty (20) days of MTA's written notice to do so. *See* Second Lipton Decl. at ¶ 4.

*Response:* Disputed, for the reasons set forth in S¶ 38, to the extent that the MTA characterizes the Sureties as having an obligation to perform under the Bond.

41. Additionally, the Sureties did not notify the MTA that it should not make any additional payments to Lockheed; nor, did the Sureties direct the MTA to make any payments to the Sureties. *See* Second Lipton Decl. at ¶11.

*Response:* Undisputed.

42. The Sureties did not advise the MTA that it would impair the Sureties' interest in the collateral by making payments to Lockheed prior to the MTA's June, 2009 payment to Lockheed. *See* Second Lipton Decl. at ¶ 12.

*Response:* Undisputed.

43. To date, the Sureties have not performed under the Bond. *See* Second Lipton Decl. at ¶ 7.

*Response:* Disputed, for the reasons set forth in S¶ 38, to the extent the MTA characterizes the Sureties as having an obligation to perform under the Bond.

44. The Sureties have at all times maintained that they have no obligations to the MTA under the Bond. *See* Second Lipton Decl. at ¶ 8.

*Response:* Disputed, for the reasons set forth in S¶ 38. The Sureties have stated consistently that the MTA failed to establish that the Sureties have an obligation to perform under the Bond.

45. The only action taken by the Sureties in response to the MTA's request that the Sureties commence the work of completion was to allegedly investigate the Sureties' obligations under the Bond. *See* Second Lipton Decl. ¶ 9; *see also* Ex. S3 (Letter from Corriveau to Pezik (undated)).

*Response:* Disputed. The Sureties object to the use of the terms "only" and "allegedly". As set forth in S¶ 38, the Sureties remain unable to conclude that they have an obligation to perform under the Bond.

46. The Sureties' counsel stated that, "Since receipt of the MTA's bond claim, the Sureties have been preparing for litigation involving the subject matter of the claim." *See* Ex. S15 (Friedman Decl. in Support of Sureties' Privilege Motion) at ¶ 15.

*Response:* Undisputed.

47. The Sureties have not performed any work on the Project, provided funding to the MTA for completion of the work or advised the MTA that they would reimburse the MTA for costs incurred by the MTA which are in excess of the Contract price in performing the remaining work on the Project. *See* Second Lipton Decl. at ¶ 10.

*Response:* Undisputed.

48. Lockheed invoiced the MTA, on or about June 1, 2009, for work performed between April 18, 2009 and May 22, 2009. *See* Ex. S10 (Estimate No. 40) at p.2.

*Response:* Undisputed.

49. This invoice, Pay Estimate No. 40, sought payment in the amount of $5,468,907.83. *Id*.

*Response:* Undisputed.

50. MTA approved Pay Estimate No. 40 no later than June 5, 2009, prior to terminating Lockheed. *Id*.

*Response:*  Undisputed.

51. MTA's Contract with Lockheed provides that payment is due within thirty (30) days of the MTA's approval of a pay estimate. *See* Ex. J10.4 (Contract Terms and Conditions) at Arts. 3.04(b), 3.05(a).

*Response:*  Undisputed.

52. MTA issued Payment 40 to Lockheed within thirty (30) days of June 5, 2009. *See* Pirraglia Tr. at 83:11-25.

*Response:*  Undisputed.

53. Intentionally omitted.

*Response:* N/A.

54. The Answer and Counterclaims filed by the MTA against Lockheed on May 26, 2009 did not set forth a dollar figure for the MTA's damages. *See* Ex. J2 (MTA Answer and Counterclaims to Lockheed's Complaint) at p. 21, "Prayer for Relief".

*Response:*  Undisputed.

55. The Contract does not require that the MTA withhold an approved payment upon termination of Lockheed for default. *See* Ex. J10.4 at Art. 7.03(b).

*Response:* Disputed, and presents primarily a statement of law, not fact. As explained in the Sureties' motion papers, for numerous reasons if the MTA's termination of Lockheed for supposed default was proper, then the MTA had the legal right and obligation to withhold Payment 40 irrespective of whether payment previously had been approved. *See* Ex. J10.4.

56. At no time did the Sureties notify the MTA that it should not make any additional payments to Lockheed; nor, did the Sureties direct the MTA to make any payments to the Sureties. *See* Second Lipton Decl. at ¶ 11.

*Response:* Undisputed.

57. The Sureties did not advise the MTA prior to its June, 2009 payment to Lockheed that MTA would impair the Sureties' interest in the collateral by making payments to Lockheed. *See* Second Lipton Decl. at ¶ 12.

*Response:* Undisputed.

58. Under the terms of the Bond the obligations of the Sureties are not affected by any transfer of money due or to become due: "the obligation of said Suret[ies] and [their] bond shall be in no way impaired or affected by . . . any payment thereunder before the time required therein, or by any waiver of any provision thereof . . . or other transfer thereof or of the Project to be performed or any monies due or to become due thereunder." *See* Ex. S1 (Performance Bond) at p. 2.

*Response:* The MTA's characterization of the quoted language is disputed and incorrect. The language of the Bond speaks for itself. The legal import of the quoted language is discussed at length in the Sureties' memoranda.

59. The Sureties and Lockheed reached an agreement to cooperate following Lockheed's termination. *See* Ex. S15 (Friedman Decl. in Support of Sureties' Privilege Motion) at ¶ 14.

*Response:* Disputed. The Sureties object to the phrase "agreement to cooperate" as vague and ambiguous. The Sureties and Lockheed entered into a "Joint Defense Agreement, to

6

memorialize, *inter alia*, that they were acting in furtherance of a common interest with respect to the MTA's bond claim." *See* Sureties' Appendix, Exhibit 15 at ¶ 14.

60.     Lockheed and the Sureties put in place indemnity agreements prior to the execution of the Bonds (the "Indemnity Agreements"), protecting the Sureties from any actual liability in the event of Lockheed's default. *See* Ex. S17 (Indemnity Agreements).

*Response:* The MTA's characterization of the effect of the indemnity agreements is disputed and incorrect. The fact that Lockheed executed indemnity agreements in favor of the Sureties prior to execution of the subject bond is undisputed. The terms and conditions of the indemnity agreements speak for themselves, *see* Sureties' Appendix, Exhibit 15 at n.1, and their lack of any legal import to this motion is discussed in the Sureties' Reply Memorandum of Law.

61.     While the Sureties initially filed claims to enforce their rights under Indemnity Agreements which Lockheed executed in consideration of the Sureties' execution of the Bond, the Sureties dismissed those claims once Lockheed confirmed their obligations to the Sureties to the Sureties' satisfaction. *See* S15 (Friedman Decl. in Support of Sureties' Privilege Motion) at ¶¶12-13; *see also* S17 (Indemnity Agreements).

*Response:* Undisputed.

62.     In his declaration supporting the Sureties' privilege motion, Adam Friedman stated, "On July 1, 2009, just prior to the Sureties' filing of their Complaint, my office received a letter from counsel for Lockheed. This letter withdrew the position stated in Lockheed's counsel's letter of June 15, 2009, contesting the Sureties' indemnity rights in the event the Sureties completed the Contract in response to the MTA's claim." *See* Ex. S15 at ¶ 12.

*Response:* Undisputed.

63. In his declaration supporting the Sureties' privilege motion, Adam Friedman stated, "After the three co-sureties considered counsel's letter, they reached the conclusion that it substantially satisfied their concerns regarding Lockheed's intent to satisfy a future indemnity obligation, and the Sureties agreed in principle to withdraw the claims asserted in their Complaint against Lockheed, without prejudice." *Id*. At ¶ 13.

*Response:* Undisputed; however, the MTA omits the footnote accompanying this language, which reads:

> It is unclear why the MTA believes that the dismissal of these claims without prejudice is noteworthy. Of course, the Sureties would want to retain the right to pursue litigation against Lockheed at some future date in the event Lockheed reneged on its representation that it would honor its indemnity obligation in the event the Sureties performed.

*See* Sureties Appendix, Exhibit 15 at n.1.

64. In his declaration supporting the Sureties' privilege motion, Adam Friedman stated, "The Sureties and Lockheed also embarked upon the preparation of a formal Joint Defense Agreement, to memorialize, inter alia, that they were acting in furtherance of a common interest with respect to the MTA's bond claim." *Id*. at ¶ 14.

*Response:* Undisputed.

Dated: October 9, 2013

**WOLFF & SAMSON PC**
Attorneys for Plaintiffs
*Travelers Casualty and Surety Company of America, Federal Insurance Company, and Safeco Insurance Company of America*

By:     /s Adam P. Friedman     .
            Adam P. Friedman

140 Broadway, 46th Floor
New York, New York 10005
(212) 973-0572

8