UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCKHEED MARTIN TRANSPORTATION SECURITY SOLUTIONS, AN OPERATING UNIT OF LOCKHEED MARTIN CORPORATION,<br><br>     Plaintiff,<br><br>    -against-<br><br>MTA CAPITAL CONSTRUCTION COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>     Defendants. | No. 09 CV 4077 (PGG)(GWG) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA,<br><br>     Plaintiffs,<br><br>    -against-<br><br>METROPOLITAN TRANSPORTATION AUTHORITY, MTA CAPITAL CONSTRUCTION COMPANY, NEW YORK CITY TRANSIT AUTHORITY, and LOCKHEED MARTIN CORPORATION,<br><br>     Defendants. | No. 09 CV 6033 (PGG)(GWG) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
THE SURETIES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
Phone: 212-689-8808

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 2

      The Sureties Opt Not to Fulfill Their Bond Obligations ................................................ 3

      MTA Approves Pay Estimate No. 40 for Work Previously Performed; Pays It ............. 4

      The Bond Language Explicitly Waives the Impairment Claimed by the Sureties ......... 5

ARGUMENT ................................................................................................................................ 6

I.     The MTA Does Not Owe Any Duty to the Sureties. ....................................................... 6

      A. The Sureties Did Not Perform Under the Bond ...................................................... 6

      B. The Sureties Failed to Notify the MTA that They Believed Lockheed was in Default under the Bond ............................................................................................ 8

II.    The Sureties Waived Any Right to Object to the MTA's Release of Payment 40. ........... 10

III.   The Sureties Have Not Demonstrated That They Have or Will Suffer Damage, Loss, or Prejudice as the Result of the MTA's Release of Payment 40 to Lockheed. ..................... 12

IV.   The Cases Cited by the Sureties in Support of the General Proposition of Impairment are Inapposite. ........................................................................................................................ 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

### Cases

Admiralty Const., Inc. by Nat'l Am. Ins. Co. v. Dalton, 156 F.3d 1217 (Fed. Cir. 1998)..............6

Aetna Cas. & Sur. Co. v. United States, 845 F.2d 971 (Fed. Cir. 1988) .........................................6

Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566 (2d Cir. 2005) ........................10, 11

Agronaut Ins. Co. v. United States, 434 F.2d 1362 (Ct. Cl. 1970) ................................................6

Am. Sur. Co. v. Palmer, 240 N.Y. 63 (1925).................................................................................7

City of New York v. Cross Bay Contracting Co., 235 A.D.2d 10,
662 N.Y.S.2d 462 (1st Dep't 1997)...............................................................................................7

Fed. Ins. Co. v. Arthur Anderson & Co., 75 N.Y.2d 366, 553 N.Y.S.2d 291 (1990) .....................7

Fireman's Fund Ins. Co. v. United States, 909 F.2d 495 (Fed. Cir. 1990)......................................9

Globe Indemnity Co. v. Southern Pacific Co., 30 F.2d 580 (2d Cir. 1929) ..................................14

In re Air Crash Disaster Near Warsaw, Pol. on May 9, 1987,
979 F. Supp. 164 (E.D.N.Y. 1997) .................................................................................................1

Ins. Co. of the W. v. United States, 83 Fed. Cl. 535 (2008) ..........................................................8

Johnson City Cent. Sch. Dist. v. Fid. & Deposit Co.,
226 A.D.2d 990, 641 N.Y.S.2d 426 (N.Y. App. Div. 1996) ........................................................12

Nobel Ins. Co. v. City of New York, No. 00-CV-1328 KMK, 2006 WL 2848121
(S.D.N.Y. Sept. 29, 2006).............................................................................................7, 8, 10, 12

Ransom v. United States, 17 Cl. Ct. 263 (1989) aff'd, 900 F.2d 242 (Fed. Cir. 1990) ..................8

S. Pac. Co. v. Globe Indem. Co., 21 F.2d 288 (2d Cir. 1927) .....................................................14

St. John's College, Fordham v. Aetna Indemnity Co., 201 N.Y. 335 (1911)................................14

United Pac. Ins. Co. v. United States, 16 Cl. Ct. 555 (1989).........................................................6

United States v. Copacabana, 17 F.R.D. 297 (S.D.N.Y. 1955) .....................................................1

United Sur. & Indem. Co. v. United States, 87 Fed. Cl. 580 (Fed. Cl. 2009)
aff'd, 403 F. App'x 508 (Fed. Cir. 2010).......................................................................................9

Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567 (Fed. Cl. 2002) ................................9

## Rules and Statutes

Fed. R. Civ. P. 56(d) ..................................................................................................1

Restatements (Third) of Suretyship & Guar. § 1 (1996) ........................................13

Restatements (Third) of Suretyship & Guar. § 27(1) ..........................................7, 8

Restatements (Third) of Suretyship & Guar. § 42 ...................................................8

## PRELIMINARY STATEMENT

The Sureties move for partial summary judgment[1] dismissing the MTA's Counterclaim against the Sureties to the extent of $5,468,907.83, representing the amount of the MTA's payment to Lockheed in connection with Estimate No. 40 ("Payment 40"), and/or awarding the Sureties a credit in said amount against any recovery to which the MTA is determined to be entitled under its Counterclaim.[2] In support of their motion, the Sureties argue that, despite the fact that they are in breach of their obligations under the Bond, the Sureties have been damaged in the amount of Payment 40 because the Sureties are a "*potential* subrogee" of the MTA with *potential* equitable subrogation rights in the Contract balance, which the MTA allegedly impaired. The Sureties' argument that they are entitled to partial summary judgment on this issue is not supported by the law in New York and is without merit.

First, the Sureties ignore the factual reality that they *did not* perform under the Bond. As non-performing sureties ultimately *denying* the MTA's claim, the Sureties were not, and are not, owed any duty by the MTA. Moreover, the Sureties fail to account for the fact that while "investigating" the claim, they did not take any action to protect their alleged interest in the Contract balance. There is no question that the Sureties did not notify the MTA that they

---

[1]   Although Rule 56(d) permits a court to determine "the extent to which the amount of damages or other relief is not in controversy," "if practicable", this is not what the Sureties seek. Fed.R.Civ.P. 56(d). The Sureties' motion does not establish that the amount of damages sustained, but rather, asks the court to determine that the amount determined to be due to the MTA from the Sureties, if any, be reduced by the amount of Payment 40. Courts regularly decline to engage in a piecemeal determination of the amount of damages sustained where trial will necessitate a thorough consideration of all damage issues regardless of the outcome of the motion. Cf. United States v. Copacabana, 17 F.R.D. 297 (S.D.N.Y. 1955) (declining to enter a pre-trial order under Fed.R.Civ.P. 56(d) because such order was impracticable); In re Air Crash Disaster Near Warsaw, Poland on May 9, 1987, 979 F. Supp. 164, 167-68 (E.D.N.Y. 1997) (declining to decide a motion seeking a determination that damages exceed $75,000). Since, in the instant case, the court will have to address the issue of damages and any credits claimed by the parties at trial, regardless of the outcome of the Sureties' motion, it is not practicable to decide a single credit to the Sureties via partial summary judgment.

[2]   All capitalized terms shall have the same meaning assigned to them by the Sureties in their moving papers unless otherwise specified herein. Additionally, as agreed by the parties, references to "Ex. J_" shall refer to the Joint Exhibit Appendix. For consistency, MTA refers to all exhibits specific to the Sureties' motion and the MTA's response thereto as "Ex. S_". Exhibits added by MTA in response to the Sureties' motion commence at Ex. S14.

believed their rights to be in jeopardy or direct the MTA to withhold future payments to Lockheed and/or pay any amounts becoming due under the Contract to the Sureties. Even upon learning of 40 Payment, the Sureties did not direct Lockheed to deposit the funds with the Sureties to protect its "potential collateral," as they may have done under their Indemnity Agreements with Lockheed.

Further, according to the Sureties, they are satisfied that Lockheed will stand by its indemnification obligations such that the Sureties will not incur any loss. As such, the Sureties have not, and cannot, demonstrate that they were or will be prejudiced by Payment 40. The Sureties' claim is, without dispute, based upon nothing more than speculation.

Second, under the terms of the Bond, the Sureties waived any right to object to *any* transfer of "any monies due or to become due" on the Project. While the Sureties dispute this position, their argument is not supported by the facts. Under the terms of the Contract, the MTA was permitted to make Payment 40 to Lockheed. Further, the Sureties' authority on this issue is readily distinguishable.

As explained more fully below, for the foregoing reasons the Sureties are not entitled to partial summary judgment dismissing the MTA's Counterclaim and/or crediting the Sureties to the extent of the MTA's Payment 40.

## STATEMENT OF FACTS[3]

The facts asserted by the Sureties are largely undisputed. To that end, and for the sake of efficiency, the MTA will set forth herein only those additional material facts presented by it in response to the Sureties' statement of undisputed facts and will otherwise rely upon and incorporate its responses thereto.

---

[3] A detailed factual history of this litigation is set forth in the motion for summary judgment filed by the MTA against Lockheed Martin.

## The Sureties Opt Not to Fulfill Their Bond Obligations

Under the terms of the Bond, the Sureties were required *"if requested to do so by the [MTA]*, to fully perform and complete the Project to be performed under the Contract, pursuant to the terms, conditions and covenants thereof, if for any cause the Contractor fails or neglects to so fully perform and complete such Project," and "to commence the work of completion within twenty (20) days after written notice thereof from the [MTA] and to complete such Project within such time as the [MTA] may fix." See 56.1 ¶ 38; see also Ex. S1 (Performance Bond) at p. 2. MTA requested that the Sureties perform their obligations under the Bond on June 12, 2009. See 56.1 ¶ 39; see also Ex. S2 (7/12/09 Letter from Pezik to Sureties). Despite MTA's request, the Sureties did not commence the work of completion within twenty (20) days of MTA's written notice to do so. See 56.1 ¶ 40; see also Second Lipton Decl. at ¶ 4.

On July 2, 2009, the Sureties notified MTA, by letter from their outside counsel, that:

> the Sureties have been unable to conclude that Lockheed is, in fact, in material breach of the subject Contract such that it could properly be terminated for default under the terms and conditions of that Contract. Therefore, the Sureties have been unable to conclude that the conditions triggering any obligation under the Bond have been met.

See 56.1 ¶ 14; see also Ex. S16. This letter, the cover letter to the Sureties' declaratory judgment Complaint in this action, was an explicit declaration by the Sureties of their intent not to fulfill their obligations under the Bond. See id.

To date, the Sureties have not performed under the Bond. See 56.1 ¶ 43; see also Second Lipton Decl. at ¶ 7. The Sureties have at all times maintained that they have no obligations to the MTA under the Bond. See 56.1 ¶ 44; see also Second Lipton Decl. at ¶ 8. The only action taken by the Sureties in response to the MTA's request that the Sureties commence the work of completion was to investigate the Sureties' obligations under the Bond and prepare for litigation.

See 56.1 ¶ 45; see also Second Lipton Decl. at ¶ 9; Ex. S15 (Friedman Decl. in Support of Sureties' Priv. Motion) at ¶¶ 5-10, 15. The Sureties have not performed any work on the Project, provided funding to the MTA for completion of the work or advised the MTA that they would reimburse the MTA for costs incurred by the MTA which are excess of the Contract price in performing the remaining work on the Project. See 56.1 ¶ 47; see also Second Lipton Decl. at ¶ 10.

**MTA Approves Payment 40 for Work Previously Performed; Pays It**

Lockheed invoiced the MTA, on or about June 1, 2009, for work performed between April 18, 2009 and May 22, 2009. See 56.1 ¶ 48; see also Ex. S10 (Estimate No. 40) at p. 2. This invoice, Estimate No. 40, sought payment in the amount of $5,468,907.83. See 56.1 ¶ 49; see also Ex. S10. MTA approved Payment 40 on June 5, 2009, prior to terminating Lockheed. See 56.1 ¶ 50; see also Ex. S10. MTA's Contract with Lockheed provides that payment is due within thirty (30) days of the MTA's receipt of an executed preliminary estimate and back-up documentation from Lockheed. See 56.1 ¶ 51; see also Ex. J10.4 at Articles 3.04(b), 3.05(a). In the ordinary course of business, MTA issued Payment 40 to Lockheed within thirty (30) days of June 5, 2009.[4] See 56.1 ¶ 52; see also Pirraglia Tr. at 83:11-25.

At no time after the MTA advised the Sureties that the MTA believed Lockheed to be in default of its obligations under the Contract, did the Sureties notify the MTA that it should not make any additional payments to Lockheed; nor, did the Sureties direct the MTA to make any payments to the Sureties. See 56.1 ¶ 56; see also Second Lipton Decl. at ¶ 11. And, the Sureties did not advise the MTA that any further payments to Lockheed would impair the Sureties' interest in any "potential" collateral. See 56.1 ¶ 57; see also Second Lipton Decl. at ¶ 12.

---

[4] MTA's Contract with Lockheed provides that payment is due within thirty (30) days of the MTA's receipt of an executed preliminary estimate and back-up documentation from Lockheed. See Ex. J10.4 at Articles 3.04(b), 3.05(a).

### The Bond Language Explicitly Waives the Impairment Claimed by the Sureties

Under the terms of the Bond, the obligations of the Sureties are not affected by *any* transfer of money due or to become due:

> the obligation of said Suret[ies] and [their] bond shall be in no way impaired or affected by any . . . change in or to the . . . Contract or . . . by any payment thereunder before the time required therein, or by any waiver of any provision thereof . . . or other transfer thereof or of the Project to be performed **or any monies due or to become due** thereunder; and said Suret[ies] do[] hereby waive notice of any and all of such . . . payments . . . and transfers

See 56.1 ¶ 58; see also Ex. S1 at p. 2 (emphasis added).

Additionally, it is evident from the Sureties' statements and conduct that the Sureties were not, in fact, impaired by the MTA's payment of Payment 40. See 56.1 ¶ 59. While the Sureties initially filed claims to enforce their rights under indemnity agreements which Lockheed executed in consideration of the Sureties' execution of the Bond (the "Indemnity Agreements"), the Sureties dismissed those claims once Lockheed confirmed their obligations to the Sureties to the Sureties' satisfaction. See 56.1 ¶ 61; see also Ex. S15 Friedman Decl. in Support of Sureties' Privilege Motion) at ¶¶ 12-13, see also Ex. S17 (Indemnity Agreements). "The Sureties and Lockheed also embarked upon the preparation of a formal Joint Defense Agreement, to memorialize, inter alia, that they were acting in furtherance of a common interest with respect to the MTA's bond claim." See 56.1 ¶ 64; see also Ex. S15 Friedman Decl. in Support of Sureties' Privilege Motion) at ¶ 14. This agreement is in addition to the indemnity agreements between Lockheed and the Sureties that were put in place prior to the execution of the Bonds, protecting the Sureties from any actual liability in the event of Lockheed's default. See 56.1 ¶ 60; see also Ex. S17 (Indemnity Agreements).

## ARGUMENT

I. **The MTA Does Not Owe Any Duty to the Sureties.**

The Sureties' claim that they "have an interest in the contract balance, as potential subrogees of the owner (the MTA), should they be required to pay or otherwise perform under their Bond." See Sureties' Br. at p.6. However, the Sureties are not owed any duty by the MTA because the Sureties did not perform under the Bond. Moreover, the MTA did not have a duty to protect any alleged "potential interest" of the sureties in the Contract balance because the Sureties did not notify the MTA that *they* believed Lockheed was in default.

**A. The Sureties Did Not Perform Under the Bond.**

While a performance bond is regarded as a "triparty" relationship between an obligee, an obligor and a surety, the mere existence of this relationship does not afford the surety with any rights as against the obligee. The right of subrogation "is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." United Ins. Co. v. United States, 16 Cl. Ct. 555, 557 (1989) (quoting Agronaut Ins. Co. v. United States, 434 F.2d 1362 (Ct. Cl. 1970). Thus, for a performance bond surety "to maintain a claim for equitable subrogation", the "surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond." See Admiralty Const., Inc. by Nat'l Am. Ins. Co. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998); see also Aetna Cas. & Sur. Co. v. United States, 845 F.2d 971, 975 (Fed. Cir. 1988). A performance bond surety's subrogation rights arise *only* by virtue of performance rather than wrongdoing by the obligee. Id.

"New York courts have repeatedly recognized that subrogation rights accrue only upon the payment of outstanding claims."[5] Nobel Ins. Co. v. City of New York, No. 00-CV-1328 KMK, 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) (citing City of New York v. Cross Bay, 235 A.D.2d 10, 662 N.Y.S.2d 462 (1st Dep't 1997) ("Because [the surety] had not paid all outstanding claims, any subrogation rights that may otherwise arise have not matured here."); Fed. Ins. Co. v. Arthur Anderson & Co., 75 N.Y.2d 366, 553 N.Y.S.2d 291 (1990) (explaining that subrogation rights "accrue upon payment of the loss"); Am. Sur. Co. v. Palmer, 240 N.Y. 63 (1925) ("It is not liability to pay, but an actual payment to the creditor which confers the right of subrogation."); Restatement (3d) of Suretyship & Guar. § 27(1) ("Upon total satisfaction of the underlying obligation, the secondary obligor is subrogated to all rights of the obligee with respect to the underlying obligation . . . .")). Having failed to perform or pay based on MTA's claims against the Bond, the Sureties have no subrogation rights as against the MTA here.

The Sureties allege that they "have an interest in the contract balance, as [a] *potential* subrogee of the owner (the MTA), should they be required to pay or otherwise perform under their Bond." See Sureties Br. at p. 8. However, no New York case recognizes that a surety has any rights based upon its status as a "potential subrogee." By failing to fulfill their obligations under the Bond, the Sureties have failed to give rise to any cognizable claim for impairment.

Even the Restatement, which the Sureties reference in support of their motion, makes clear that the surety must perform for the obligee to be liable for impairment to the surety: "B [contractor] defaults on the construction project, and S [surety] completes construction." Id. at 9

---

[5] MTA acknowledges that many of the cases relied upon by it are from outside of the Second Circuit, with many coming from the Court of Federal Claims. As the court identified in Nobel, however, there is no case applying New York law that is directly on point and these decisions "are consistent with the principals of equitable subrogation applicable to this case" and, therefore, instructive. Nobel, 2006 WL 2848121 at *6 (recognizing that the Federal Circuit has relied on decisions of the Court of Federal Claims in evaluating a city's obligation to a surety under state law). In addition, New York courts recognize that the right of subrogation generally arises upon payment, but in no event, prior to a surety's having provided notice to the obligee that it believes there has been a default and, thus, that its rights are in jeopardy. See id.

(quoting Restatement (Third) of Suretyship & Guar. § 42, illustration 3). Similarly, Comment A to the relevant section of the Restatement specifies that this issue of collateral arises only "[w]hen the secondary obligor [the surety] is subrogated to the rights of the obligee with respect to the underlying obligation." Id. at 8-9 (quoting Restatement (Third) of Suretyship & Guar. § 42, comment a). As set forth above, a surety's rights of subrogated do not arise until it performs under the bond, and, here, the Sureties failed to do so.

The Sureties have failed to present a single case that recognizes a surety's subrogation rights absent performance. Indeed, in each case presented, the sureties actually performed under the bond at issue. Moreover, in Nobel, while the court determined that the "City" was "bound by equitable subrogation principles to act as a stakeholder of the payments alleged due to the contractor," it held that the "City" was so bound "by virtue of its notice to the City." Nobel, 2006 WL 2848121 at *6.

### B. The Sureties Failed to Notify the MTA that They Believed Lockheed Was in Default under the Bond.

Under the doctrine of equitable subrogation, a *performing* surety can recover: (1) contract funds held as retainage; and (2) contract funds disbursed to the contractor only *after* the surety notifies the obligee that the contractor is in default. See Ins. Co. of the W. v. United States, 83 Fed.Cl. 535, 538 (2008). Notice *from the surety* is a prerequisite to such rights. See Ransom v. United States, 17 Cl.Ct. 263, 272 (1989) ("[B]efore any obligation arises to withhold or divert funds, the Government must be notified that the suret[y] believe[s] the contractor is in default and cannot complete the contract."), aff'd, 900 F.2d 242 (Fed.Cir.1990). On May 26, 2009, MTA alerted the Sureties to Lockheed's likely default, as set forth in MTA's Default Notice to Lockheed. See Ex. J6 at p. 10. From that point on, the Sureties were fully informed of

the situation and were in the best position to notify MTA of Lockheed's impending default under the terms of the Bond.

Absent notice *from the surety*, the obligee owes no duty to the surety. United Sur. & Indem. Co. v. United States, 87 Fed. Cl. 580, 591 (Fed. Cl. 2009) aff'd, 403 F. App'x 508 (Fed. Cir. 2010) (citations omitted). This holds true even where a surety is actually performing under the contract at issue. In Fireman's Fund Ins. Co. v. United States, the United States Court of Appeals for the Federal Circuit held that because the surety knows best when it may become a party to the bonded contract, *"only notice by the surety triggers the government's equitable duty."* 909 F.2d 495, 499 (Fed.Cir.1990) (emphasis added). The Government's independent knowledge of contractor default is irrelevant. See id.

These principles apply in all public works contracts. "By definition and agreement the surety protects the government's interest, not the other way around." Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567, 576 (Fed. Cl. 2002) (internal citations omitted). In Westchester Fire Insurance, as in the instant case, the obligee kept the surety aware of the contractor's poor performance and copied the surety on the second cure notice and notice of cause, giving the surety knowledge of the contractor's failures. The court found that the surety, therefore, had as much knowledge as the obligee and ample opportunity to provide the obligee with notice of the contractor's impending default according to the terms of the bond, but it failed to do so. The surety also failed to request that further payments to the contractor be withheld. The court held, in accordance with Fireman's Fund, that the obligee's duties to the surety therefore never triggered. The Sureties find themselves in a similar position with respect to the MTA and Lockheed.

The Sureties also rely on Nobel, quoted above, but fail to recognize that the passage to which they cite, at page 10 of their Brief, explicitly requires the surety to provide "appropriate notice of the general contractor's default," without which the responsibilities of the obligee do not take effect. Nobel, 2006 WL 2848121 at *16. The Nobel court goes on to note that if, "after appropriate notice of default, the government chooses to pay funds to the general contractor that are or become equitably owed to the surety, the government is liable for the actual loss visited upon the surety." Id. Having failed to provide notice as required under the terms of the Bond and the clear dictates of the case law, and having failed to perform in any way, the Sureties never properly triggered the subrogation rights they now claim. The Sureties motion for partial summary judgment should be denied

**II.    The Sureties Waived Any Right to Object to the MTA's Release of Payment 40.**

According to the Sureties, the MTA's payment of $5,468,907.83 to Lockheed, based on Payment 40, constitutes an "overpayment" which reduces the Sureties' obligation to the extent of that overpayment. The Sureties failed to raise this allegedly improper payment with the MTA during the course of their investigation prior to disclaiming their obligations under their bond; they did not raise this issue in their Complaint, and they have not once raised it in the nearly four years since they filed their Complaint and elected not to fulfill their obligations under the bond.

Recent New York case law rejects the underlying bases for the Sureties' proposed motion. In Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566 (2d Cir. 2005), the Second Circuit affirmed Judge Haight's Memorandum Opinion and Order denying the surety's discharge defense based on the owner's alleged overpayments. 404 F.3d at 610. Judge Haight ruled that, "Aetna cannot avail itself of the discharge defense because it waived its right to do so in the performance bond. As the [owner] points out, it is well settled that the discharge defense can be waived by the terms of a particular performance bond." Id. at 609 (citations omitted).

The opinion goes on to quote the performance bond, which "could not be more explicit." Id. The language quoted is identical to language in the performance bond in this case:

> And the Surety, for value received, for itself and its successors and assigns, hereby stipulates and agrees that the obligation of said Surety, and its bond shall be in no way impaired or affected by any extension of time, modification, omission, addition, or change in or of the said Contract or the work to be performed thereunder, or by any payment thereunder before the time required therein, or by any waiver of any provision thereof, or by any assignment, subletting or other transfer thereof or of any part thereof, or of any work to be performed or any monies due or to become due thereunder and said Surety does hereby waive notice of any and all of such extensions, modifications, omissions, additions, changes, payments, waivers, assignments, subcontracts and transfers, and hereby expressly stipulate and agrees that any and all things done and omitted to be done by and in relation to assignees, subcontractors, and other transferees shall have the same effect as to said Surety as though done or omitted to be done by or in relation to said Contractor.

See Ex. 1, at p. 2. The Aniero opinion also recognizes that, "'[A] surety is not discharged by reason of an unauthorized payment made in good-faith reliance on [the certificate of progress]' even in the absence of an explicit waiver of the discharge defense in the bond." Id. at 610. In any case, here, as in Aniero, such a waiver is explicit in Sureties' bond.

The Sureties' attempt to distinguish Aniero because the payments at issue there were "premature payments…made to the bond principal" does nothing to mitigate the language of the Surety's own bond, which expressly waives the conduct for which the Sureties now seek pro tanto release. Nor does the distinction mitigate the Aniero court's pronouncement that, "[I]t is well settled that the discharge defense can be waived by the terms of a particular performance bond." Aniero, 404 F.3d at 610. The language of the Bond is clear: "the obligation of said Suret[ies] and [their] bond shall be in no way impaired or affected by . . . any payment thereunder before the time required therein, or by any waiver of any provision thereof . . . or other transfer thereof or of the Project to be performed or any monies due or to become due

11

thereunder." Ex. 1 at p. 2. Further, under the Bond, the Sureties "waive notice of any and all of such . . . payments . . . " Id. The Sureties cannot not now, more than four years after Payment 40 was issued, and more than eight years after they entered into the Bond with Lockheed, claim that the Bond's express waive provisions do not apply.

New York courts have held that performance bonds are to be "strictly construed against the surety," adopting a "general rule of liberal construction in favor of the insured." See Johnson City Cent. Sch. Dist. v. Fid. & Deposit Co., 226 A.D.2d 990, 993, 641 N.Y.S.2d 426 (N.Y. App. Div. 1996). The Nobel court considered language similar to the waiver provision at issue here. That court did not apply the strict construction principle stated above, but explicitly distinguished it from the instant case because there the principal sought summary judgment against the surety, and, as such, the court had to construe the evidence in the light most favorable to the surety. Nobel, 2006 WL 2848121 at *11 ("[W]hile courts generally construe ambiguities in surety bonds against a compensated surety, it is unclear such a principle would apply where a party moves for summary judgment *against* a surety.") (second emphasis added). Accordingly, the waiver provision in the Sureties' bond must be read as to negate the basis for the instant motion.

**III. The Sureties Have Not Demonstrated That They Have or Will Suffer Damage, Loss, or Prejudice as the Result of the MTA's Release of Payment 40 to Lockheed.**

Despite their position in this litigation that they were prejudiced by the MTA's payment of Lockheed, the Sureties assert that Lockheed was not in default and, further, that they did not have any obligations under the Bond. If, in fact, Lockheed was not in default, as the Sureties contend, then the Sureties could not be prejudiced by the MTA's release of Payment 40 to Lockheed.

In any event, the Sureties' obligations to the MTA under the Bond are *secondary* to Lockheed's obligations under the Contract to reimburse the MTA in an Event of Default. As

expressed by the Sureties' counsel in its July 2, 2009 letter rejecting the MTA's claim, if Lockheed fulfills its obligations to the MTA to "fully indemnify and save harmless" the MTA "from all cost and damage which it may suffer" by reason of Lockheed's failure to "well and faithfully perform" "the Contract and all modifications, amendments and additions thereto", then the Sureties' obligations under the Bond shall be null and void.

As explained in the Restatement (Third) of Suretyship & Guaranty:

> When an obligee has rights against two obligors but is entitled to only one total recovery, the obligee can usually recover from either obligor and those obligors can subsequently reallocate the cost of performance between themselves in accordance with the rights and duties between them created by their relationship.

Restatement (Third) of Suretyship & Guar. § 1 (1996).

According to the Sureties, Lockheed has confirmed to the Sureties' satisfaction its obligations to the Sureties under the parties' Indemnity Agreements:

- "On July 1, 2009, just prior to the Sureties' filing of their Complaint, my office received a letter from counsel for Lockheed. This letter withdrew the position stated in Lockheed's counsel's letter of June 15, 2009, contesting the Sureties' indemnity rights in the event the Sureties completed the Contract in response to the MTA's claim." See 56.1 ¶ 62; see also Ex. S15 (Friedman Decl. in Support of Sureties' Priv. Motion) at ¶ 12.

- "After the three co-sureties considered counsel's letter, they reached the conclusion that it substantially satisfied their concerns regarding Lockheed's intent to satisfy a future indemnity obligation, and the Sureties agreed in principle to withdraw the claims asserted in their Complaint against Lockheed, without prejudice." See 56.1 ¶ 63; see also Ex. S15 at ¶ 13.

- "The Sureties and Lockheed also embarked upon the preparation of a formal Joint Defense Agreement, to memorialize, inter alia, that they were acting in furtherance of a common interest with respect to the MTA's bond claim." See 56.1 ¶ 64; see also Ex. S15 at ¶ 14.

Further, under the language of Sureties' Indemnity Agreements with Lockheed, the Sureties can demand that Lockheed deposit funds equivalent to Payment 40 with the Sureties as collateral. Thus, even if the MTA's release of Payment 40 could have prejudiced the Sureties,

13

the Sureties had – and still have – the ability to avoid any "potential" harm simply by enforcing against Lockheed rights available to them under the Indemnity Agreements.

Not only have the Sureties failed to assert grounds upon which this court could find prejudice to the Sureties as the result of the MTA's release of Payment 40, but, given the foregoing facts, equity does not justify dismissing the MTA's claim or awarding a credit to the Sureties in the amount of Payment 40.

## IV. The Cases Cited by the Sureties in Support of the General Proposition of Impairment are Inapposite.

As set forth in the parties' pre-motion letters, the early twentieth century cases presented by the Sureties to support the general theory of surety impairment are inapposite. While St. John's College, Fordham v. Aetna Indemnity Co., 201 N.Y. 335 (1911), and Globe Indemnity Co. v. Southern Pacific Co., 30 F.2d 580 (2d Cir. 1929), when quoted out of context, appear to support the Sureties' position, both are readily distinguishable from the present circumstances. As noted, and acknowledged by the Sureties in their Brief at p. 9, St. John's College is concerned with advanced payments, and therefore unrelated to the Sureties' claims here. Globe also addresses advanced payments because the bonds in that case had been specifically entered into to secure the advanced final payments to the builder. See S. Pac. Co. v. Globe Indemnity Co., 21 F.2d 288, 289-90 (2d Cir. 1927). The court held, in the appeal, that given the specific nature of the bonds, entered into well into the performance of the underlying contract for the purpose of securing the advance of the final payments, any release of moneys apart from the identified advanced payments would have required the consent of the surety. See Globe Indemnity Co., 30 F.2d at 583. The Sureties' recital of broad language from these cases does not render them less distinguishable. These cases also do not change the undisputed facts that the Sureties failed to perform under the bond and cannot claim to have been damaged as a result of Payment 40.

14

## CONCLUSION

As set forth fully above, the Sureties' Motion for Partial Summary Judgment must fail because: the MTA owed no duties to the Sureties as a result of their failure to perform under the bond; the Sureties expressly waived the rights they now seek to enforce in the Bond; and the Sureties have not and cannot demonstrate any injury, or even potential injury, that they have or may suffer as a result of Payment 40. Indeed, the Sureties' failure to perform under the Bond and inability to articulate any existing or prospective damages – as a result of their agreements with and statements regarding Lockheed's indemnification of the Sureties – militate for a complete resolution of the Sureties' Declaratory Judgment action in the MTA's favor.

For the reasons set forth above, MTA respectfully requests that this Court deny the Sureties' Motion for Partial Summary Judgment, setting this matter down for a trial, and such other and further relief as this Court deems just and proper.

Dated:  September 10, 2013
        New York, New York

                                        HOGUET NEWMAN REGAL &
                                        KENNEY, LLP

                                        By: _____
                                             Ira J. Lipton (IL-4835)
                                             Marc Melzer (MM-0677)
                                             Helene Hechtkopf (HH-7402)
                                             Susan Shaw (SS-9243)

                                             10 East 40th Street
                                             New York, NY 10016
                                             Phone: 212-689-8808

15