UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOCKHEED MARTIN TRANSPORTATION
SECURITY SOLUTIONS, AN OPERATING UNIT
OF LOCKHEED MARTIN CORPORATION,

    Plaintiff,        09 CIV 4077 (PGG) (GWG)

  -against-          ECF CASE

MTA CAPITAL CONSTRUCTION COMPANY
and METROPOLITAN TRANSPORTATION
AUTHORITY,

    Defendants.

---

TRAVELERS CASUALTY AND SURETY   09 CIV 6033 (PGG) (GWG)
COMPANY OF AMERICA, FEDERAL
INSURANCE COMPANY, and SAFECO
INSURANCE COMPANY OF AMERICA,

    Plaintiffs,

  -against-

METROPOLITAN TRANSPORTATION
AUTHORITY, MTA CAPITAL CONSTRUCTION
COMPANY, NEW YORK CITY TRANSIT
AUTHORITY and LOCKHEED MARTIN
CORPORATION,

    Defendants.

---

**MOTION IN LIMINE TO BAR ANY EVIDENCE OR TESTIMONY
REGARDING THE UGOS DATABASE**

I.   **INTRODUCTION**

Defendants MTA Capital Construction Company and Metropolitan Transportation Authority (collectively "MTA") seek to move into evidence a UGOS database purportedly maintained by New York City Transit ("NYCT"). MTA offers the UGOS database as Exhibit MTAX1072 on its exhibit list submitted as Exhibit E to the Joint Pretrial Order. However, that database is inadmissible hearsay. Moreover, tens of thousands of records contained in that database have nothing to do with the work performed by Plaintiff Lockheed Martin Corporation ("Lockheed Martin"). Thus, the database contains mostly irrelevant and impertinent material that should not be allowed into evidence. Fed. R. Evid. 402.

The UGOS database is hearsay and MTA has not demonstrated differently with its trial affidavits. In addition, MTA has not identified how it intends to use this database, nor has it attempted to cull those records that may actually be relevant to this action. Assuming the database will be used to support certain statements in the hearsay report of MTA's expert Gary Jentzen (Ex. MTAX1066 at 79-84), comparing access by different contractors to Lockheed Martin's access to perform work, the UGOS database includes information that is not relevant to the issues in this case. The access provided other contractors and their use has no bearing on deciding the issues in this case. MTA should not be permitted to obfuscate the true matters at issue by burying them in a massive database. The prejudice to Lockheed Martin of trying to determine what records MTA may actually refer to at trial from the massive UGOS database far exceeds any relevance the UGOS database – containing tens of thousands of irrelevant records – may have in this case. Fed. R. Evid. 402, 403. Accordingly, MTA should be precluded from introducing any evidence or testimony regarding or from making any statement about the UGOS database.

## II.     BACKGROUND

Lockheed Martin's knowledge and understanding of the UGOS database is limited.  For purposes of this motion, Lockheed Martin refers to the affidavit of Suzanne Michelle, a self-described computer specialist for NYCT, who states that she is the architect of the UGOS database.  According to Ms. Michelle, NYCT uses the UGOS database to "record requests for access to work on NYCT's property and keep track of when access has been granted or denied, as well as the date and circumstances under which the access occurs." (Michelle Aff. ¶ 3, Ex. MTAX1190.)

According to Ms. Michelle, "[i]n order to gain access to NYCT's tracks and tunnels, diversion requests must be submitted to NYCT's Operations Planning group, which apprises the contractor of general access availability. (A "diversion" means that there will be no train running through the work site at the time in question. NYCT uses this term, rather than the more general term "outage" which is sometimes seen in construction settings.)." (*Id.* ¶ 4)  "Through Operations Planning a General Order ("GO") is then issued, providing the details of the planned diversion. By this process, the contractor is able to work in the NYCT system while the trains that normally pass through the area are diverted elsewhere." (*Id.*)

The UGOS database is massive.  According to Ms. Michelle, the UGOS database went live in 1996 – long before Lockheed Martin's performance under the Contract at issue in this case began.  (*Id.* ¶ 8.)  And, as of the date that UGOS data was extracted for production in this case, there had been approximately 49,000 diversion requests and references to almost 39,000 General Orders.  (*Id.*)  The vast majority of these have nothing to do with this case.  Further undermining the reliability, utility, and relevance of the UGOS database is the fact that it is not consistently used by NYCT to record all access information for NYCT work.  As Ms. Michelle attested, not all General Orders are represented in the UGOS database.  Thus for these and the

1

reasons that follow, MTA should be precluded from introducing any evidence or testimony regarding or from making any statement about the UGOS database.

### III. ARGUMENT

#### A. The UGOS Database Is Inadmissible Hearsay

The UGOS database is inadmissible because it is hearsay. MTA attempts to surmount this obstacle through the affidavit of Ms. Michelle, which attempts to lay a foundation to qualify the UGOS database as a business record under Federal Rule of Evidence 803(6). However, the statements made in Ms. Michelle's affidavit fall short of what is required.

Under "Rule 803(6), which is sometimes referred to as the 'business records hearsay exception,' a record of a regularly conducted activity is not excluded by the rule against hearsay" if the proponent can show that:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

*Davis v. City of New York*, 959 F. Supp. 2d 427, 434 (S.D.N.Y. 2013).

Ms. Michelle's affidavit fails at the first factor. There is no evidence that records maintained in the UGOS database were made at or near the time by or from information transmitted by someone with knowledge. Specifically, Ms. Michelle attests that

> 3. I have been an employee of NYCT since 1994. I am the architect of the UGOS database which NYCT uses to record requests for access to work on NYCT's property and keep track of when access has been granted or denied, as well as the date and circumstances under which the access occurs. NYCT uses this database to coordinate its employees' and contractors' access to transit work sites. This UGOS database has been in use since January 1996. At NYCT we access the UGOS database through a commonly available software application called Oracle.
>
> 4. In order to gain access to NYCT's tracks and tunnels, diversion requests must be submitted to NYCT's Operations Planning group, which apprises the contractor of general access availability. (A "diversion" means that there will be no train running through the work site at the time in question. NYCT uses this term, rather than the more general term "outage" which is sometimes seen in construction settings.) Based on our indication of general availability, the contractor informs NYCT of specifically when and where access is sought.  Through Operations Planning a General Order ("GO") is then issued, providing the details of the planned diversion. By this process, the contractor is able to work in the NYCT system while the trains that normally pass through the area are diverted elsewhere.

(Michelle Aff. ¶¶ 3-4.)

The missing link in Ms. Michelle's affidavit is any statements about when the information from the diversion request made to NYCT's Operations Planning Group and the information in the General Order are "recorded" in UGOS.  Absent any evidence that these are done at or close in time to when they are made or issued, the UGOS database cannot be admitted pursuant to the business records exception to the rule against hearsay.  Moreover, Ms. Michelle does not identify who transmits or records that information into the UGOS database, making it impossible to determine if that person has the requisite knowledge of the information being recorded.

Ms. Michelle's affidavit also fails at the third and fifth factors:  that recording information in the UGOS database is a regular practice of NYCT and that the source or method of preparation of the records in the UGOS database are trustworthy.  As Ms. Michelle's affidavit

3

concedes, although the diversion process is "universally applied," not all General Orders are included in the database. (*Id.* ¶¶ 5, 8.) For example, Ms. Michelle states that General Orders related to emergency plans are not in the UGOS database. (*Id.* ¶ 8.) Notably, she does not state what other examples of General Orders may not have been recorded in the UGOS database, nor does she indicate whether all diversion requests are recorded in the UGOS database. Thus, it is apparent that the recordation of data into the UGOS database is not consistently performed and that the database is incomplete and, therefore, not a trustworthy or complete source of information regarding diversion requests or General Orders. Moreover, as stated above, Ms. Michelle's affidavit does not reflect who communicates or records the information contained in the UGOS database making it impossible to assess the trustworthiness of those individuals. Accordingly, MTA has failed to lay the proper foundation for the admission of the UGOS database as a business record and it should be precluded from evidence as inadmissible hearsay.

    **B.**  **The UGOS Database Should Be Precluded Because It Primarily Consists Of Irrelevant And Impertinent Information Having No Bearing On This Case**

    The UGOS database should further be precluded from evidence because it is loaded with irrelevant and impertinent information regarding diversion requests and General Orders issued in connection with matters other than the work performed by Lockheed Martin under the Contract. As Ms. Michelle's affidavit explains, the UGOS database has been in operation since 1996. (Michelle Aff. ¶ 8.) As of the date data was extracted from the UGOS database for production in this case, there had been approximately 49,000 diversion requests and almost 39,000 General orders (although they may not all be reflected in the UGOS database). (*Id.*)

    The inclusion of so much irrelevant information – tens of thousands of diversion requests and General Orders that have nothing to do with the work performed by Lockheed Martin – should not be permitted. What might have happened on other projects is not relevant to this

4

Project's events. The numerous projects other than the IESS Project are simply not relevant to this lawsuit.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. Additionally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence of diversion requests and General Orders unrelated to the work performed by Lockheed Martin will have no consequence in determining this action. MTA has made no effort to pare down what is and is not relevant in the UGOS database. To the contrary, rather than identify the specific diversion requests and General Orders relevant to this case, MTA seeks to move the entire UGOS database into evidence. The sheer size of that database makes it impossible for Lockheed Martin to determine what, if anything, from that database MTA intends to refer to at trial. Thus, the inclusion of the UGOS database on MTA's exhibit list constitutes the proverbial trial by ambush. The prejudice to Lockheed Martin of trying to determine what records MTA may actually refer to at trial from the massive UGOS database, therefore, far exceeds any relevance the UGOS database – which mostly contains irrelevant material and information – may have in this case. Accordingly, MTA should be precluded from introducing any evidence or testimony regarding and from making any reference to the UGOS database at trial.[1]

---

[1] The UGOS database also is not admissible as "summary evidence" under Federal Rule of Evidence 1006. For summary evidence to be admitted, the documents underlying the summary must themselves be admissible and made available to the adverse party. *Tamarin v. Adam*

5

## IV. CONCLUSION

For each of the foregoing reasons, MTA should be precluded from introducing any evidence or testimony regarding and from making any reference to the UGOS database (Ex. MTAX1072) at trial.

Dated: New York, New York
August 4, 2014

Respectfully submitted,

**DUANE MORRIS LLP**
*Attorneys for Plaintiff and
Co-counsel for Sureties*

By: /s/ *Nicole Woolard*
Nicole Woolard, Esq. (NW 1010)
Michael Chartan, Esq. (MC 4609)
Matthew A. Taylor, Esq. (MT 2914)
Sandra A. Jeskie, Esq. (Pro Hac Admission)
Jeffrey S. Pollack, Esq. (Pro Hac Admission)
Michael Hogan, Esq. (MH 3397)
1540 Broadway
New York, New York 10036
(212) 692-1016

---

*Caterers*, 13 F.3d 51, 53 (2d Cir. 1993) (citing Fed. R. Evid. 1006). Here, no effort has been made by MTA to show that the documents underlying the UGOS database would be admissible. Indeed, the documents have not even produced. Thus, the UGOS database cannot be admitted as a summary under Rule 1006.