UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

| | |
|---|---|
| LOCKHEED MARTIN TRANSPORTATION SECURITY SOLUTIONS, AN OPERATING UNIT OF LOCKHEED MARTIN CORPORATION, | |
| Plaintiff, | 09 CIV 4077 (PGG) (GWG) |
| -against- | ECF CASE |
| MTA CAPITAL CONSTRUCTION COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY, | |
| Defendants. | |

-----------------------------------------------------------------

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA, | 09 CIV 6033 (PGG) (GWG) |
| Plaintiffs, | |
| -against- | |
| METROPOLITAN TRANSPORTATION AUTHORITY, MTA CAPITAL CONSTRUCTION COMPANY, NEW YORK CITY TRANSIT AUTHORITY and LOCKHEED MARTIN CORPORATION, | |
| Defendants. | |

-----------------------------------------------------------------

**MOTION IN LIMINE TO BAR EVIDENCE OR TESTIMONY REGARDING THEORIES OF LIABILITY NOT PREVIOUSLY IDENTIFIED IN MTA'S DEFAULT NOTICE**

DM1\4891454 3

I.      **INTRODUCTION**

Defendants MTA Capital Construction Company and Metropolitan Transportation Authority (collectively "MTA") defined the scope of this case when it sent Plaintiff Lockheed Martin Corporation ("Lockheed Martin") a Default Notice.  That Default Notice asserted ten specific grounds for default and termination of the Contract and purported to offer Lockheed Martin the opportunity to cure those alleged instances of default.   Settled New York law limits MTA's counterclaims for breach of contract against Lockheed Martin to those specific grounds.  MTA cannot, through litigation, seek to expand its theory of liability.  Put otherwise, MTA cannot allege new grounds – of which Lockheed Martin received no notice or opportunity to cure – in order to justify MTA's declaration of default and termination of the Contract.  Yet, that is precisely what MTA seeks to do.

Having failed to assert any valid grounds for default in its Default Notice, MTA seeks to expand the scope of its claims that Lockheed Martin allegedly materially breached the Contract.  Specifically, MTA argues in its Pretrial Memorandum, as it did on summary judgment, that Lockheed Martin allegedly failed to complete the IESS system and breached the warranties provided for by Section IIIB(7) of the Contract.  Additionally, MTA seeks to expand the scope of its default claims through affidavit, asserting grounds for default that are not found in the four corners of the Default Notice.  This is improper.  MTA should be barred from expanding its claims and presenting any testimony or evidence at trial regarding alleged events of default not set forth in its Default Notice.

II.     **FACTS**

The facts of this case have been extensively briefed.  Only the facts relevant to this Motion in Limine will be briefed here.  After Lockheed Martin commenced this action, MTA

sent Lockheed Martin a Default Notice, claiming that Lockheed Martin had defaulted under the Contract. (*See* Ex. JX 6)

> Section 7.01 of the Contract Terms and Conditions provides that:
>
>> If an Event of Default occurs, the Authority may so notify the Contractor ("Default Notice"), specifying the basis(es) for such default, and advising the Contractor that, unless such default be rectified to the satisfaction of the Authority within seven (7) days from such Default Notice, the Contractor shall be in default; except that, at its sole discretion, the Authority may extend such seven (7) day period for such additional period as the Authority shall deem appropriate without waiver of any of its rights hereunder. The Default Notice shall specify the date the Contractor is to discontinue all Work (the "Termination Date"), and thereupon, unless previously rescinded by the Authority, the Contractor shall discontinue the Work upon the Termination Date.

(Ex. JX 10.4 at 43)

Pursuant to Section 7.01, the Default Notice specifically identified ten categories of alleged material breaches of the Contract by Lockheed Martin, which MTA claimed to constitute instances of default. Within those categories, further events were described. As required by the Contract, the Default Notice also provided Lockheed Martin the opportunity to cure these alleged breaches, stating that "[t]o avoid default, Lockheed Martin must submit a credible plan which will provide assurances to MTACC that each of the issues raised . . . will be resolved on a timely basis." (Ex. JX 6 at 9) The Default Notice, then, set forth what MTA claimed the plan demanded by the Default Notice should address, providing Lockheed Martin with seven days to respond. (*Id.*)

The evidence shows that Lockheed Martin did not materially breach or default under the Contract in any of the manners identified in Default Notice. Thus, MTA's pretrial submissions show that at trial MTA will seek to expand the scope of its claims against Lockheed Martin to include other alleged events of default to justify its declaration of default and termination of the

Contract. Specifically, MTA's Pretrial Memorandum of Law asserts that Lockheed Martin's alleged failure to produce the IESS system and alleged breach of the warranties provided in Section IIIB(7) of the Contract constituted an event of default. (MTA's Pretrial Memo at 29-30.) Of course, such a claim was not asserted in the Default Notice. Performance under the Contract was still ongoing as of the date MTA declared Lockheed Martin to be in default and terminated the Contract. As such, work was ongoing, Substantial Completion had not been declared, and the warranty period had not yet commenced.[1] Thus, MTA should not be permitted to add this claim now, having failed to assert it in the first instance.

In addition, the affidavits of Ronald Pezik (Ex. MTAX1194) and Kenneth Shields (Ex. MTAX1201) include statements about purported events of default that were not asserted by MTA in the Default Notice. These statements include the following: paragraphs 39 and 80 of Mr. Pezik's affidavit and paragraphs 55-56, 64, 66-67, 87-88, and 92 of Mr. Shields' affidavit. By way of example, paragraph 80 of the Pezik affidavit and paragraph 92 of the Shields affidavit claim that Lockheed Martin was in default because it was purportedly not progressing work in the Under River Tunnels (or URTs), identifying the REDACTED REDACTED REDACTED. However, a review of the Default Notice's provisions regarding MTA's claim that Lockheed Martin allegedly failed to continuously and diligently prosecute the work (Ex. JX 6 at 6-7) shows that no issues were

---

[1] In its Pretrial Memorandum of Law, MTA disputes that breach of warranty is not asserted in its Default Notice. (MTA Pretrial Memo at 31.) This is demonstrably false. Nowhere does the Default Notice state that Lockheed Martin breached any warranty provision in the Contract. MTA's Pretrial Memorandum of Law implicitly concedes this by stating only that its Default Notice "identified, in 11 detailed pages, the deficiencies in Lockheed's performance and the nature of its product failures." (*Id.*) Notably, despite raising the issue, MTA fails to identify a single warranty provision specifically identified in the Default Notice because, as is obvious from the face of that document, the Default Notice references none.

raised in the Notice of Default regarding those tunnels. Thus, MTA is seeking to vastly expand the scope of its claims through litigation beyond what it asserted in the Default Notice.

It is fundamentally unfair and improper as a matter of law for MTA to assert these post-hoc, litigation driven theories of liability and purported events of default against Lockheed Martin. Even if any of these theories of liability were viable, which they are not, Lockheed Martin was provided no opportunity to cure these alleged events of default, as was its right under the Contract. Thus, for these and the reasons that follow, MTA should be barred from presenting any evidence or testimony regarding these or any other theories of liability not set forth in the Default Notice.

### III.   ARGUMENT

Under New York law, "[i]t is well settled that where a party to a contract terminates the contract and presents a specific reason for the termination, that party is estopped from raising a different reason upon the commencement of an action." *Leventhal v. New Valley Corp.,* No. 91 Civ. 4238, 1992 U.S. Dist. LEXIS 456, at *10 (S.D.N.Y. Jan. 16, 1992); *see also Littlejohn v. Shaw*, 159 N.Y. 188, 191 (1899) ("By thus formally stating their objections, they must be held to have waived all other objections. The principle is plain, and needs no argument in support of it, that if a particular objection is taken to the performance and the party is silent as to all others, they are deemed to be waived."); *Bernhardt Lumber Co. v. Metzloff*, 184 N.Y.S. 289, 293 (Sup. Ct. Erie Cnty. 1920) ("when a party to a contract refuses to fulfill, based upon particular objections formally and deliberately stated, all other objections are deemed waived."); *Data Sys. of New Jersey v. Philips Bus. Sys., Inc.*, No. 78 Civ. 6015-CSH, 1986 U.S. Dist. LEXIS 30816, at *10, 19-20 (S.D.N.Y. Jan. 6, 1986) (accepting plaintiff's argument that "where a party to a contract terminates the contract and presents a specific reason for the termination, that party is estopped from raising a different reason upon the commencement of an action.").

In *Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*, 24 Misc. 3d 1222 (A), 897 N.Y.S.2d 669 (Sup. Ct. Onondaga Cnty. 2009), the defendant declared default and terminated its construction loan agreement with the plaintiff on two specific grounds: (1) that plaintiff created a "deficiency" in the budget under the agreement and (2) that plaintiff failed to make required interest payments under the agreement. At trial, defendant presented, for the first time, a third reason for default: that the project, involving the construction of an extension to a shopping mall was a failed project because there were no new tenants. In rejecting defendant's newly proffered grounds for default, the court held that "[i]n New York, a party must comply strictly with the contract provisions requiring that it provide notice of breach and/or deficiency and an opportunity to cure prior to the issuance of a valid notice of termination or default." *Id.*; *see also Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518, (2d Cir. 1989) ("Under New York law where the contract specifies conditions precedent to the right of cancellation, the conditions must be complied with.); *Morris v. Lee*, No. 08 CV 6673 (LAP), 2011 U.S. Dist. LEXIS 18532 (S.D.N.Y. Feb. 24, 2011) (same); *Gulf Ins. Co. v. Fidelity & Deposit Co. of Md.*, 847 N.Y.S.2d 896 (Sup. Ct. 2007) (same). In *Destiny*, the defendant, like MTA, chose "to base its Notice of Deficiency and ultimately its Default Notice on two very specified bases. First, that there is a 'Deficiency', and second that the May interest was not paid." *Destiny USA Holdings*, 897 N.Y.S.2d at 669. The Court further found that "[a]t no time was it alleged," by the defendant, "in either the Notice of Deficiency or the Default Notice that there was a lack of tenants or a failure to adequately complete the project or have a successful project as a cornerstone for the notices." Thus, the defendant's claim for breach of contract premised upon plaintiff's failure to find tenants or adequately complete the project was rejected because "[o]nce a party declares a default on one ground under New York Law, it may not

5

subsequently defend the declaration of default on a different ground." *Id.* The same result should be reached here.

In this case, MTA delivered a detailed Default Notice.[2] It is unknown what, if any, new or different theories of default MTA may seek to present at trial in addition to what is now included in their witness affidavits and other pretrial filings. For example, MTA's Pretrial Memorandum of Law now espouses entirely new theories of liability that are not found anywhere in MTA's Default Notice, i.e. breach of warranty. Because this new theory of liability is not set forth in the Default Notice, Lockheed Martin was not provided with the contractually required notice or opportunity to cure. In addition, the Pezik and Shields affidavits include purported reasons for the default and termination not stated in the Default Notice. Accordingly, as in *Destiny* and the other cases cited above, the Court should bar MTA from presenting any evidence or testimony regarding these new claims. *Id.*; *Leventhal,* 1992 U.S. Dist. LEXIS 456 at *10; *Littlejohn*, 159 N.Y. at 191; *Bernhardt Lumber Co.*, 184 N.Y.S. at 293; *Data Sys. of New Jersey*, 1986 U.S. Dist. LEXIS 30816 at *10, 19-20.[3]

---

[2] MTA claims in its Pretrial Memorandum of Law that the Contract Terms and Conditions provide that the "MTA 'may' (but is not required to) give the Contractor written Notice of Default and seven days' opportunity to cure." (MTA Pretrial Memo at 11.) This contractual provision merely recognizes that the MTA need not declare default and may elect to continue performance under the Contract. Additionally, even if this contract provision could be read to mean that MTA may declare a default and terminate the Contract without notice to Lockheed Martin, the fact remains that MTA elected to send Lockheed Martin a Default Notice and in doing so defined the scope of Lockheed Martin's alleged default and, as such, is precluded from expanding the scope of its alleged claims against Lockheed Martin.

[3] At least one court has held that a party is only prohibited from raising new grounds for default in litigation if it would be unfair to the other party; for example, "if the other [party] may have been able to cure any deficiencies in its performance had the 'real' grounds for non-performance been asserted or if the other party relied in some way on the reasons given at the time of non-performance." *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99 Civ. 3307, 2000 U.S. Dist. LEXIS 5022, at *34 (S.D.N.Y. Apr. 6, 2000) (internal citation omitted). In *Primetime 24 Joint Venture v. DirecTV, Inc.*, the party declaring default – DirecTV – was permitted to amend its counterclaims to add new grounds for default, not previously asserted, where DirecTV expressly

## IV. CONCLUSION

For each of the foregoing reasons, MTA should be barred from presenting any evidence or testimony regarding theories of liability not set forth in its Default Notice, including but not limited to the following: Lockheed Martin's alleged failure to complete the IESS system, Lockheed Martin's alleged breach of the warranties provided for by Section IIIB(7) of the Contract, and the newly asserted alleged grounds for default asserted in paragraphs 39 and 80 of Mr. Pezik's affidavit and paragraphs 55-56, 64, 66-67, 87-88, and 92 of Mr. Shields' affidavit.

Dated: New York, New York
August 4, 2014

Respectfully submitted,

**DUANE MORRIS LLP**
*Attorneys for Plaintiff and*
*Co-counsel for Sureties*

By: /s/ *Nicole Woolard*
Nicole Woolard, Esq. (NW 1010)
Michael Chartan, Esq. (MC 4609)
Matthew A. Taylor, Esq. (MT 2914)
Sandra A. Jeskie, Esq. (Pro Hac Admission)
Jeffrey S. Pollack, Esq. (Pro Hac Admission)
Michael Hogan, Esq. (MH 3397)
1540 Broadway
New York, New York 10036
(212) 692-1016

---

reserved the right to assert additional grounds for default and there was no indication of adverse reliance by the allegedly defaulting party. *Id.* at *34-35. No such facts exist in this case. MTA's Default Notice asserted very specific and detailed grounds for default; it did not reserve the right to assert other grounds for default. Additionally, there is no basis for MTA to claim that Lockheed Martin did not adversely rely on the grounds asserted. Lockheed Martin took the grounds identified in the Default Notice seriously and delivered a very detailed Cure Response and Completion Plan. (*See* Exhs. JX 7.1, 7.2.) Lockheed Martin will be prejudiced, as stated above, by being deprived of its contractual right and opportunity to address and, if warranted, cure any alleged event of default. Thus, under any legal theory, MTA's claims in this case must be limited to the ten specific alleged grounds for default identified in its May 26, 2009 Default Notice.