UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCKHEED MARTIN TRANSPORTATION SECURITY SOLUTIONS, AN OPERATING UNIT OF LOCKHEED MARTIN CORPORATION, | No. 09 CV 4077 (PGG)(GWG) |
| Plaintiff, | |
| -against- | |
| MTA CAPITAL CONSTRUCTION COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY, | |
| Defendants. | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA, | No. 09 CV 6033 (PGG)(GWG) |
| Plaintiffs, | |
| -against- | |
| METROPOLITAN TRANSPORTATION AUTHORITY, MTA CAPITAL CONSTRUCTION COMPANY, NEW YORK CITY TRANSIT AUTHORITY, and LOCKHEED MARTIN CORPORATION, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS IN LIMINE

HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
Phone:  212-689-8808

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

    I.    DAVIES'S TESTIMONY AND REPORT ARE INAPPROPRIATE AND
         INADMISSIBLE ................................................................................. 1

         A. Preliminary Statement ....................................................................... 1
         B. Davies Should Be Precluded From Testifying Because His w
            Testimony Does Not Assist the Trier of Fact ........................................ 2

            1.  Expert testimony is only admissible if it will
               "assist the trier of fact." ............................................................. 3

            2.  Lockheed Cannot Use Expert Testimony to Present
               "Legal" Opinions ..................................................................... 5
            3.  Lockheed Cannot Use Expert Testimony to Construct a
               Factual Narrative of the IESS Project .......................................... 7
            4.  Lockheed Cannot Introduce Hearsay Through Its Experts ............. 9
            5.  Lockheed's Experts May Not Speculate as to MTA's
               Motivations and State of Mind ................................................... 10
            6.  Lockheed May Not Use Its Experts to Make Arguments
               and Conclusory Statements ....................................................... 12

         C. Davies Should Not Be Allowed to Testify About Lockheed's
            Hovawart Project. ............................................................................ 13
         D. Davies Should Not Be Allowed to Testify About the Project Schedule .... 14
         E. Davies Should Not Be Allowed to Testify About Testing ....................... 15
         F. Davies Should Not Be Allowed to Testify About Staffing Level ............... 16
         G. Davies Rebuttal to the Reith and Safir Reports are Inappropriate
            and Should be Excluded for the Same Reasons ..................................... 16

    II.   NEBEL'S TESTIMONY AND REPORT ARE INAPPROPRIATE AND
        INADMISSIBLE ................................................................................. 17

    III.  THE SYCOLEMAN PEER REVIEW REPORT IS INADMISSIBLE ............. 18

         A. The "Peer Review" Reports are Inadmissible ...................................... 18
         B. The "Peer Review Materials" are Irrelevant ....................................... 19
         C. The "Peer Review" Draft Reports are Hearsay and Consist
            Almost Solely of Hearsay-within-Hearsay ........................................... 21
         D. The "Peer Review" Draft Reports are Inadmissible Opinion
            Evidence ...................................................................................... 24

    IV.  THE OTHER REPORTS THAT LOCKHEED HAS LISTED
        AS EXHIBITS ARE INADMISSIBLE HEARSAY ................................... 24

i

V.      THE WEBSITES LOCKHEED OFFERS ARE INADMISSIBLE
        HEARSAY ........................................................................................26
VI.     THE MEETING MINUTES SUBMITTED BY LOCKHEED
        SHOULD BE PRECLUDED ...............................................................27
VII.    RFP DIVISION 6A AND 6B ARE NOT PART OF THE CONTRACT ..........30
VIII.   LOCKHEED CANNOT USE ITS NEWLY PRODUCED
        DOCUMENTS TO PROVE ITS DAMAGES CLAIM ......................................30
IX.     STACIE MUSGRAVE MUST BE PRECLUDED FROM
        TESTIFYING AS A DAMAGES WITNESS ..................................................31

CONCLUSION ...........................................................................................32

# <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amerisource Corp. v. RxUSA Int'l Inc.*, No. 02-CV-2514,
2009 WL 235648 (E.D.N.Y. Jan. 30, 2009) ...............................................................28

*Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989)...................................4, 5

*Atl. Specialty Ins. v. AE Outfitters Retail Co.*, No. 07 Civ. 8508,
2013 WL 5289013 (S.D.N.Y. Sept. 20, 2013)...............................................................8

*Breezy Point Cooperative, Inc. v. Cigna Prop. & Cas. Co.*,
868 F. Supp. 33 (E.D.N.Y 1994) ...............................................................6

*Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002)...............................................29, 30

*Colon v. Rent-A-Center, Inc.*, 276 A.D.2d 58, 716 N.Y.S.2d 7 (1st Dep't 2000) ..........................6

*Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588 (S.D.N.Y. 2013).....................................22

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ....................................2, 3

*Djangmah v. Falcione*, No. 08 Civ. 4027, 2013 WL 6388364 (S.D.N.Y. Dec. 5, 2013)..............24

*Evans v. Port Auth. of N.Y. & N.J.*, 192 F. Supp. 2d 247 (S.D.N.Y. 2002).................................. 23

*Fleishman v. Cont'l Cas. Co.*, No. 09 C 00414,
2011 WL 5866264 (N.D. Ill. Nov. 22, 2011), *aff'd*, 698 F.3d 598 (7th Cir. 2012)....................27

*Gentile v. Cnty. of Suffolk*, 129 F.R.D. 435 (E.D.N.Y. 1990)
*aff'd*, 926 F.2d 142 (2d Cir. 1991)...............................................................21

*Hamad v. Cook*, No. 13 Civ. 3222, 2014 WL 3507340 (S.D.N.Y. June 30, 2014)......................22

*Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005)...........7, 10, 12

*In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164 (S.D.N.Y. 2009)...............................7, 11

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..................................8, 12

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ....................................................2

*Lambrinos v. Exxon Mobil Corp.*, No. 1:00-CV-1734,
2006 WL 2238977 (N.D.N.Y. Aug. 4, 2006) ..............................................................20

*Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169 (S.D.N.Y. 2012) ...............6

*LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242,
2002 WL 1585551 (S.D.N.Y. July 16, 2002) ......................................................5, 9, 12

*Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003),
*aff'd*, 99 F. App'x 274 (2d Cir. 2004) .....................................................................10

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ...................................9

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) ...................................................8, 9

*Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720 (S.D.N.Y. 2011) .......................................7

*Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505 (2d Cir. 1977) ................................................3, 6

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) ....................................................................29

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV. 3901,
1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) .......................................................... 6, 10

*Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*, 621 F. Supp. 198 (S.D.N.Y. 1985) ....................28

*NAACP v. A.A. Arms Inc.*, 99 CV 3999, 2003 WL 21135563 (E.D.N.Y. May 5, 2003) ...............26

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ..........................................................2, 3

*Novak v. Tucows, Inc.*, No. 06-CV-1909,
2007 WL 922306 (E.D.N.Y. Mar. 26, 2007), *aff'd* 330 F. App'x 204 (2d Cir. 2009) ............26, 27

*Old Chief v. United States*, 519 U.S. 172 (1997) .........................................................................28

*Phoenix Associates III v. Stone*, 60 F.3d 95 (2d Cir. 1995) ..........................................................23

*Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420 (2d Cir. 1998) .............18

*Rizkallah v. Forward Air, Inc.*, No. 02 Civ. 2448 (PGG),
2009 WL 3029309 (S.D.N.Y. Sept. 22, 2009) ....................................................... 23

*Rodriguez v. Modern Handling Equip. of N.J., Inc.*, 604 F. Supp. 2d 612 (S.D.N.Y. 2009) ........22

*Schatzki v. Weiser Capital Mgmt., LLC*, No. 10 Civ. 4685,
2013 WL 6284417 (S.D.N.Y. Dec. 4, 2013) ..........................................................6

iv

*Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824,
2013 WL 5693846 (S.D.N.Y. Oct. 9, 2013) ................................................................ 6

*Snyder v. Wells Fargo Bank, N.A.*, 11 Civ. 4496,
2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012) ............................................................8, 10

*Steele v. McMahon*, No. CIV S-05-1874, 2007 WL 2758026 (E.D. Cal. Sept. 21, 2007) ...........27

*Targonski v. City of Oak Ridge*, 921 F. Supp. 2d 820 (E.D. Tenn. 2013) ....................................29

*Taylor v. Evans*, No. 94 Civ. 8425, 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997)....................10, 12

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)............................................................5, 7

*United States v. Christ*, 513 F.3d 762 (7th Cir. 2008) ...................................................................28

*United States v. Cruz*, 894 F.2d 41 (2d Cir. 1990)........................................................................28

*United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992) ...................................................................4, 7

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994).........................................................................5

*United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983) ....................................................................29

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ...................................................................3, 9

*Villafane Electic Corp. v. Reliance Ins. Co.*, No. 02 Civ. 2682,
2004 WL 385041 (S.D.N.Y. Mar. 2, 2004) ....................................................................6

## Rules and Statutes

Fed. R. Evid. 401 ........................................................................................................... passim

Fed. R. Evid. 401(a) ...............................................................................................................20

Fed. R. Evid. 402 ........................................................................................................... passim

Fed. R. Evid. 403 ...........................................................................................8, 25, 26, 28, 29

Fed. R. Evid. 701 ...............................................................................................18, 19, 24

Fed. R. Evid. 702 ........................................................................................................... passim

Fed. R. Evid. 703 .......................................................................................................................9

Fed. R. Evid. 702(a) ...................................................................................................................3

Fed. R. Evid. 801 ...............................................................................................21, 26, 27

Fed. R. Evid. 802 ................................................................................................. passim

Fed. R. Evid. 803(6) ................................................................................................ 23, 24

Fed. R. Evid. 803(8) ............................................................................................ 25, 28, 29

Fed. R. Evid. 805 ............................................................................................ 19, 21, 25, 28

## INTRODUCTION

Defendants MTA Capital Construction Company ("MTACC") and Metropolitan Transportation Authority (collectively, "MTA"), hereby submit this Memorandum of Law in support of their Motions in Limine seeking an order precluding Plaintiff Lockheed Martin Corporation ("Lockheed") from offering into evidence or otherwise referring at trial to documents and communications concerning: (1) the testimony and report of Lockheed's expert witness Frank Davies; (2) the testimony and report of Lockheed's expert witness, Roger Nebel; (3) the SYColeman Peer Review Materials, including all "Draft Reports; (4) various hearsay reports that Lockheed has listed as exhibits, as described herein; (5) all websites that Lockheed has listed as exhibits, as described herein; (6) the meeting minutes submitted by Lockheed as exhibits; (7) RFP's Volume VI, incorrectly identified by Lockheed as a Contract document; (8) a document produced by Lockheed on May 22, 2014 purporting to prove it installed $24 million of pre-paid inventory which MTA has asserted for the past 5 years that Lockheed never accounted for; and (9) the preclusion of the testimony of Lockheed damages wiriness Stacy Musgrave.

As established below, the documents and testimony which MTA seek to preclude are either impermissible as expert testimony, are irrelevant, have little or no probative value, constitute hearsay, and/or were not timely disclosed, thereby prejudicing the MTA's case.

## ARGUMENT

### I.   DAVIES'S TESTIMONY AND REPORT ARE INAPPROPRIATE AND INADMISSIBLE

#### A.  Preliminary Statement

The report and testimony offered by Frank Davies is entirely inappropriate and not even within the realm of what an expert report and testimony should look like.  Instead of providing analysis that only an expert can provide, Davies regurgitates facts from Project documents and

deposition transcripts and reconstitutes them into a story of where he thinks MTA went wrong. Davies's "analysis" draws on no expertise.  Instead it is nothing more than Lockheed's attempt to retell its lay version of the story of the IESS Project via the assembly of various snippets of information from the record, such as emails, correspondence and testimony.  The version of events offered by Davies is also rife with hearsay, yet the hearsay is improperly presented as truth, as if it may be rendered admissible through the device of having an "expert" include it in a narrative.

The Davies report and corresponding testimony in no way assists the trier of fact, and it provides no analysis that a reasonably educated person could not do on his or her own.  This cannot be allowed.

### B.  Davies Should Be Precluded From Testifying Because His Testimony Does Not Assist the Trier of Fact.

There are three tests an expert witness must pass before being allowed to testify: (1) the expert must be "qualified as an expert"; (2) the expert's opinion must be based on reliable data and methodology; and (3) the expert's testimony as to a particular matter must "assist the trier of fact."  *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (citing Fed. R. Evid. 702).

The Supreme Court's opinion in *Daubert v. Merrill Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) focused on the second element, relevance and reliability. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (discussing *Daubert*); *see also Nimely*, 414 F.3d at 396 ("*Daubert* enumerated a list of factors that, while not constituting a 'definitive checklist or test,' a district court might consider in evaluating whether a proffered expert opinion has the required indicia of scientific reliability: whether a theory or technique had been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation.").

Although the methodology used by Lockheed's experts, and the reliability of their "analysis," does not, in Defendants' view, withstand a challenge under *Daubert*, this motion is not based on *Daubert*, as the parties agreed that they would reserve *Daubert* motions until after expert testimony had been presented to the Court.  *See* Letter from Michael Chartan to Judge Gardephe, dated October 24, 2013 (ECF Document # 165).  Nor does this memorandum of law address the first prong of the three-part test for admissibility (qualifications), which Defendants also reserve until trial.  Instead, this motion focuses exclusively on the third prong– whether Mr. Davies's testimony will assist the trier of fact.

**1.   Expert testimony is only admissible if it will "assist the trier of fact."**

Expert testimony is admissible under Fed. R. Evid. 702 only where the court finds it will "help the trier of fact to determine a fact in issue."  Fed. R. Evid. 702(a); *see also Nimely*, 414 F.3d at 397.  "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own."  *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008).

The Second Circuit has "consistently held" that "expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it,' by definition does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach,' and thus 'attempts to substitute the expert's judgment for the jury's.'  *Nimely*, 414 F.3d at 397 (citations omitted).  Therefore, expert testimony that is merely a factual argument is inadmissible.  *See, e.g.*, *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 508 (2d Cir. 1977), holding it error for the district court to have allowed an expert witness to "give his opinion as to the legal obligations of the parties under the contract".  In that case, the expert's "objectionable testimony did not concern only the

3

customary practices of a trade or business.  Rather, he gave his opinion as to the legal standards which he believed to be derived from the contract and which should have governed [defendant's] conduct.  He testified not so much as to common practice as to what was necessary 'to fulfill the covenant' (of the contract)."  *Id.* at 509.

Additionally, expert testimony about "lay matters which a jury is capable of understanding and deciding without the expert's help" is inadmissible.  *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *see also United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) (expert testimony must be related to "esoteric aspects reasonably perceived as beyond the ken of the jury").

A huge portion of Davies's report and testimony falls within this category.  For example, Davies concludes that it is his opinion that "MTACC's failure to include all agency legacy equipment in the IESS/C3 projects was one of the agencies' complaints on the Project and added to the agencies' contention that the IESS/C3 did not match their needs."  (Davies ¶ 245.)  It does not take an expert to review various documents and conclude that somebody is complaining about something.

In another example, the entire section of Davies's testimony entitled "MTACC Failed to Act As the Single Unifying Entity for the IESS/C3 Project" (beginning on page 68 of Davies's declaration) is simply a collection of factual snippets that Davies strings together without any expert analysis.  In any case, it is hard to imagine what type of expert would be required to determine whether a project owner acted as a "single unifying entity" for a project (or perhaps more importantly, why that is a requirement of the owner in the first place).  The sub-headings within that section of the declaration are further evidence of the lack of expert analysis (or the need for expert analysis):  "MTACC Failed to Ensure That The RFP Represented The Needs of

The Agencies" (Davies p. 68); "MTACC Failed to Act as a Single Authority to Obtain Agreement From the Agencies" (Davies p. 70); "MTA Acknowledged That the IESS Project Lacked Centralized MTA Leadership" (Davies p. 70); "NYCT Coordination/Performance Problems Demonstrate MTACC's Lack of Recognized Authority and Lack of Agency Commitment" (Davies p. 71); "MTACC Instructed Lockheed Martin Not to Have Direct Communications With the Agencies" (Davies p. 75); "MTACC Failed to Develop a Program Management Plan" (Davies p. 76).   Davies simply draws lay conclusions based on allegations drawn from snippets from the record, much of which is hearsay.   To be sure, Defendants dispute the conclusions as well as the factual assertions, but the point here is that Davies just argues inferences based on record snippets in a manner that calls upon no particular expertise.   It is as if Lockheed's counsel drew up the facts as they see it and asked an "expert" to sign off on it.   This is not a proper use of an expert and does not help the trier of fact.

## 2.   Lockheed Cannot Use Expert Testimony to Present "Legal" Opinions.

"As a general rule an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  "[E]xpert testimony is not permitted if it will 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.' . . .  In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see also Andrews*, 882 F.2d at 709 (forensic engineer should not have been  permitted to testify that railroad was negligent); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002).

It is improper for an expert to opine as to "the legal obligations of the parties under [a] contract," or the legal significance of facts adduced at trial.  *Marx & Co.*, 550 F.2d at 508-10; *Schatzki v. Weiser Capital Mgmt., LLC,* No. 10 Civ. 4685, 2013 WL 6284417, at *2 (S.D.N.Y. Dec. 4, 2013) (expert's opinion as to meaning and proper interpretation of legal obligations precluded);  *Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 178 (S.D.N.Y. 2012) (whether closing conditions were satisfied, or whether party had option to terminate agreement, present issues of fact and contract interpretation to be decided by jury based on testimony of the fact witnesses, not by experts); *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2013 WL 5693846, at *3 (S.D.N.Y. Oct. 9, 2013) (expert may not testify as to reasonableness of plaintiff's conduct); *Villafane Electic Corp. v. Reliance Ins. Co.*, No. 02 Civ. 2682, 2004 WL 385041,  at *3 (S.D.N.Y. Mar. 2, 2004) (construction expert not permitted to give legal conclusions or to testify as to the meaning of contractual provisions);  *Breezy Point Cooperative, Inc. v. Cigna Prop. & Cas. Co.*, 868 F. Supp. 33, 36 (E.D.N.Y 1994) (expert not allowed to testify that delay by plaintiff  was unreasonable, or that  plaintiff could assert no reasonable excuse for its delay); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,  No. 95 CIV. 3901, 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (expert should not testify as to "the meaning of the contract terms at issue");  *see also Colon v. Rent-A-Center, Inc*., 276 A.D.2d 58, 61, 716 N.Y.S.2d 7, 10 (1st Dep't 2000) (expert witnesses should not be called to offer opinion as to legal obligations of parties under contract; that is an issue to be determined by trial court).

Davies spends many pages opining on the legal obligations of MTA and Lockheed based on his reading of the Contract.  For example, he writes that, "It is my opinion that on the IESS project, because MTA's project engineer never directed or approved Lockheed Martin to develop custom software or modify the COTS software products, MTA chose not to utilize Division 25."

(Davies ¶ 160); *see also* Davies declaration page 107 ("The Contract's Definition of Beneficial Use Was Applicable to a Construction Project, Not Technology").  These are legal conclusions, not testimony relating to Davies's presumed area of expertise – "physical security technology integration projects" to make.  This is simply not allowed – it is the province of the trier of fact, not the expert witness, to draw such legal conclusions.

Davies's expert report is filled with legal conclusions.  For example, on page 14, he writes that "[b]ased on our experience, the contract definitions of 'Beneficial Use Certification' and 'Substantial Completion' were confusing and varied from the industry terms used on technology projects."  On page 15 he concluded that "additional software support was outside the Lockheed Martin warranty."   On page 16, he concludes this section by stating that "MTACC's refusal to issue a Beneficial Use Certification because of the above-listed items was improper."  "[T]estimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice."  *Bilzerian*, 926 F.2d at 1295.

### 3. Lockheed Cannot Use Expert Testimony to Construct a Factual Narrative of the IESS Project.

"[E]xpert testimony cannot be used solely to bolster the credibility of . . . fact-witnesses by mirroring their version of events."  *Cruz*, 981 F.2d at 664.

A party cannot use expert testimony to construct "a factual narrative based upon record evidence," there by 'rehashing' otherwise admissible evidence about which he has no personal knowledge.  *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 192 (S.D.N.Y. 2009) (expert not permitted to merely "regurgitate" evidence from documents, regulatory filings, and deposition testimony);  *Marvel Worldwide, Inc. v. Kirby*,  777 F. Supp. 2d 720, 729 (S.D.N.Y.

2011), *aff'd*,  726 F.3d 119, 136 (2d Cir. 2013) (rejecting expert reports that were "merely factual narratives based on their review of secondary sources and interviews that attempt to reconstruct events about which [expert] has [no] first-hand, ['I was there'] knowledge);  *Atl. Specialty Ins. v. AE Outfitters Retail Co.*,  No. 07 Civ. 8508, 2013 WL 5289013, at * 7 (S.D.N.Y. Sept. 20, 2013); *Sharkey*, 2013 WL 5693846, at *1; *Snyder v. Wells Fargo Bank, N.A.*, 11 Civ. 4496, 2012 WL 4876938, at *4 (S.D.N.Y. Oct. 15, 2012) (finding inadmissible testimony of expert who "states conclusions without any reference to his purported expertise such as that Wachovia's General Assets Presentation ('GAP') 'missed the mark,' 'failed Snyder's request to hedge,' and was 'inappropriate,' and states as fact that Snyder 'rejected' the GAP"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 550 (S.D.N.Y. 2004) (excluding expert testimony under Fed. R. Evid. 403 where "[n]umerous portions of the opinions offered by these experts merely recite facts, or endorse opinions, expressed in the deposition of Dr. Misbin.  Assuming that Dr. Misbin's testimony is ruled admissible at trial, the challenged opinions are excluded under Rules 702 and 403, as cumulative and certain to waste time").

"The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events. And the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

Lockheed inappropriately uses Davies to construct a factual narrative, which is inadmissible.  For example, the entire sections of his report called "IESS/C3 Project Background" (pages 8-16) and "Lockheed Martin's Technical Proposal" (pages 16-27) are just summaries of various other documents and deposition testimony.  Davies continued to do this throughout his testimony as well – in fact, there are far too many instances of this to list them all,

so only a few examples will be given here.  One example is the section of Davies's declaration entitled "MTA's Independent Engineering Consultant Repeatedly Warned That MTACC Was Unable to Effectively Manage the Agencies and the IESS Project" is simply a summary of various reports and emails that Davies has spun into a narrative.  (Davies ¶¶ 301-313.)  In fact, in the section called "MTA's Funding Problems," Davies begins by saying that "[d]ocuments and testimony reflect several instances where funding for the IESS project and other capital projects was not committed or was expected to be insufficient."  (Davies ¶ 461.)  Not only is this section of Davies's testimony declaration completely devoid of any actual analysis, it has no connection at all to Davies's claimed "expertise" in "physical security technology projects.

### 4.   Lockheed Cannot Introduce Hearsay Through Its Experts

"Under Rule 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if 'experts in the field reasonably rely on such evidence in forming their opinions.' . . . The expert may not, however, simply transmit that hearsay to the jury. . . . Instead, the expert must form his own opinions by 'applying his extensive experience and a reliable methodology' to the inadmissible materials. Otherwise, the expert is simply 'repeating hearsay evidence without applying any expertise whatsoever,' a practice that allows [a party] 'to circumvent the rules prohibiting hearsay.'" *Mejia*, 545 F.3d at 197 (citations omitted); *see also Marvel*, 726 F.3d at 136 (A "party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.") "The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events."  *Id.  See also Malletier v. Dooney & Bourke, Inc*., 525 F. Supp. 2d 558, 677 (S.D.N.Y. 2007) (facts should be proved "by admissible evidence and not expert assertion"); *LinkCo, Inc.*, 2002 WL 1585551, at *1-2 (where expert's report was based on

review of documents, computer files and deposition transcripts, "testimony by fact witnesses familiar with those documents would 'be far more appropriate'" and rendered expert witness's secondhand knowledge unnecessary for jury's edification); *Media Sport & Arts*, 1999 WL 946354, at *3 (expert's testimony, based not on personal knowledge, but instead on review of documents and depositions, "may not take the place of that of the individuals who actually negotiated the deal"); *Taylor v. Evans*, No. 94 Civ. 8425, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (rejecting portions of expert report consisting of "a narrative of the case which a lay juror is equally capable of constructing").

The purpose of much of Davies's report and testimony seems to be to shoehorn inadmissible hearsay into the trial record. Davies's entire report and testimony rely on hearsay. For example, a huge portion of Davies's testimony is spent summarizing an inadmissible report by an outside company, SyColeman (see Davies ¶¶ 225 – 313). As discussed in Section II, below, this report is inadmissible. Davies actual "analysis" is nonexistent in this section; it is simply a summary of an inadmissible document.

Davies cannot be used as an end-run around the hearsay rules.

### 5. Lockheed's Experts May Not Speculate as to MTA's Motivations and State of Mind.

An expert may not speculate as to the motivations and state of mind of the parties. *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ("Carney's views as to the credibility of defendants' witnesses and defendants' "real" motivations are simply not relevant."); *Snyder*, 2012 WL 4876938, at *4 ("It is well established that '[e]xpert testimony is not relevant if the expert is offering a personal evaluation of the testimony and credibility of others or the motivations of the parties.'"); *Highland Capital Mgmt.*,

379 F. Supp. 2d at  469; *accord*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp.2 d ay 192 (expert does not have ability to read minds).

Davies spends much of his declaration speculating about what MTA "must have" or "should have" known, and MTA's alleged motivations.  For example, in his expert report, Davies writes, "These differing viewpoints and misconceptions of the industry accepted COTS term was persistent throughout numerous depositions and e-mail correspondence that we reviewed as part of our engagement.  Such viewpoints and misconceptions of COTS and middleware resulted in the differing views of MTACC and MTA agencies in how the system was to be deployed, the importance of their participation, and definition of business rules, as well as the use of workarounds to address MTACC project variances."  (Report p. 21.)  Davies concludes that section by saying, "[b]ased on these observations, we believe that MTACC, as a whole, did not understand what they requested, contracted for, and were building towards with regard to the COTS requirement."  (Report p. 21.)  This speculation as to MTA's motivations and understanding of the terms of the Contract is inappropriate, and not properly the subject of expert testimony.  *See also* Report pp. 50-51 ("COTS Limitations Should Not Have Been a Surprise to MTACC," concluding that, "MTACC was provided with a copy of this trade study and therefore, understood the limitations of the COTS product but never directed Lockheed Martin to write custom code modify [sic] the COTS product."); Davies ¶ 531 ("Based on my experience, the RFP reflected confusion on the part of MTACC because its emphasis was on the physical construction aspects of the project."); Davies ¶ 532 ("MTACC failed to recognize that the IESS project was a technology project").

Similarly, Davies concludes that MTACC has "organizational flaws" (based on unrelated statements in the hearsay reports of the New York State Comptroller, the Citizen's Budget

Commission and a "government assessment report from the MTA Office of the Inspector General"), and that these "organizational flaws" (which he never defines) were a "well known issue but MTACC failed to correct identified organizational flaws."  (Report p. 49.)

### 6.  Lockheed May Not Use Its Experts to Make Arguments and Conclusory Statements.

Nor may expert testimony be used simply "to buttress plaintiffs' theory of the case" – that is the function of counsel's argument.  *In re Rezulin Prods. Liab. Litig.*,  309 F. Supp. 2d at 551; *accord*, *Highland Capital Mgmt.*, 379 F. Supp. 2d at 469 (expert may not supplant role of counsel in making argument at trial); *LinkCo, Inc.*, 2002 WL 1585551, at *2 (expert report inadmissible because it "contains arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language"); *Taylor*, 1997 WL 154010, at *1 (excluding expert report that was "equivalent of an attorney's closing argument").

Davies's report and testimony are filled with conclusory statements that are entirely inappropriate.  For example, in the section of his testimony titled "MTACC Treated the IESS/C3 Project as a Construction Project as Opposed to a Technology Project," Davies cites to a document that he read that stated that, "the IESS 'project has been treated like a "bricks and mortar" project when it is really an IT systems, security and infrastructure project'."  He then concludes in the next paragraph:  "In my opinion, MTA treated the IESS project like a construction project, rather than a security technology project that relied on an IT infrastructure." (Davies ¶¶ 392-393.)  This is the very definition of conclusory and his "conclusion" contains no independent analysis or thought – it is simply a recitation of another person's statement that he adopts as his own.

Davies's report and testimony are filled with such examples.  *See, e.g.*, ¶¶ 401-405 (concluding that "the MTACC lacked staff with experience, let alone significant expertise, in IT

and security projects" based on statements in MTA CIO Wael Hibri's deposition); ¶¶407-408 (stating that Bill Krampf advised Davies that he asked for MTA to introduce him to "an enterprise level counterpart" but this never happened, and that other Lockheed employees Davies spoke with had similar complaints, but providing no independent analysis by Davies).

Davies makes legal arguments that are inappropriate for an expert witness.  *See, eg.*, Davies ¶ 534 ("In my opinion, the IESS contract description of Beneficial Use Certification is more representative of Substantial Completion in other technology projects because MTACC appears to have demanded that every portion of the work be complete to achieve Beneficial Use."); Davies ¶ 540 ("Based on industry usage of the term 'Beneficial Use' and the Contract definition of Beneficial Use Certification, it is my opinion that MTACC's refusal to issue a Beneficial Use Certification because of the above-listed items was improper and should have been worked off in a punch list."); Davies ¶ 160 ("It is my opinion that on the IESS project, because MTA's project engineer never directed or approved Lockheed Martin to develop custom software or modify the COTS software products, MTA chose not to utilize Division 25.").

### C.  Davies Should Not Be Allowed to Testify About Lockheed's Hovawart Project.

In his deposition, Davies testified that he "did not review the Hovawart project.  I would assume given that it's a three letter agency within the federal government that those things would be protected by privilege and under protection with both Lenel and Lockheed Marin."  (Davies Tr. 228:4-14.)  This lack of knowledge about the Hovawart project did not keep Davies from testifying about it, however.  *See, e.g.*, Davies ¶ 94 ("Lockheed Martin's proposal reflected its extensive project experience that included previously integrating Intergraph and Lenel . . . and successfully deploying the installed solution for the U.S. National Security Agency (NSA) Hovawart Project. . . Such experience demonstrated that Lockheed Martin had an understanding

and familiarity integrating these two product lines and what was achievable"); Davies ¶ 122 ("Lenel was also a natural choice for Lockheed Martin because it had experience with Lenel on a recent Lenel/Intergraph installation for the United States NSA Hovawart Project . . ."). Given Mr. Davies's testimony that he had no knowledge of, and did no investigation of, the Hovawart project, he should be precluded from testifying about it.

**D.  Davies Should Not Be Allowed to Testify About the Project Schedule.**

Davies testified that, "All the scheduling references and so forth we relied on the expertise of Lovett Silverman." (Davies Tr. 159:8-10). He testified that he did not know how long it would have taken Lockheed to complete the work remaining at various locations. (Davies Tr. 159:2-10.) He did not know whether Lovitt Silverman built into its analysis time to obtain and install, test, etc. the work that was necessary to put in the new Intergraph release, for example. (Davies Tr. 159:11-18.) In fact, he testified that "While I read the Lovitt Silverman report, I do not know whether or not they prepared that level of detail." (Davies Tr. 159:11-18.) This lack of personal knowledge, however, did not stop Davies from offering testimony about it. *See, e.g.*, Davies ¶ 24 ("MTA refused to accept schedule changes resulting from access restrictions, scope creep, and change orders."); Davies ¶¶ 379-385 (stating that "MTA's RFP had an unrealistic completion goal for a project of this scope and magnitude"); Davies ¶¶ 450 – 454 (stating that MTA's change orders caused delays to the Project schedule); and Chart 3 in Appendix D ("CDR Impact and Final Schedule").

Davies lack of personal knowledge on the scheduling done on the IESS Project should preclude him from testifying about it.

### E.  Davies Should Not Be Allowed to Testify About Testing.

During his deposition, Mr. Davies said, "I defer to the extensive work that LTD did in the area of testing and rely on their analysis and report."  (Davies Tr. 139:2-4; *see also* Davies Tr. 138:15-17; 170:13-22).   When asked what documentation he looked at to determine that "Lockheed Martin was on the path to successful completion for the work that could be progressed," he said that he relied on "LTD's testing record."  (Davies Tr. 151:20-152:123.)  He said that he "relied upon LTD's expertise in testing to produce those documents" relating to testing.   (Davies Tr. 213:10-20.)   When asked whether Lockheed was complete with its configuration work for SIST testing before termination, he said "[t]hat would be something that I defer to LTD's testing report on."  (Davies Tr. 219:24-220:5.)

Davies lack of personal knowledge about the testing program on the IESS Project did not stop him from offering testimony about it.  *See, e.g.*, Davies ¶ 539 ("In my experience, it is not the function of testing to validate Beneficial Use unless prescribed as so in the contract."); Davies ¶ 603 ("During testing, MTACC failed 40 requirements because HP OpenView alarms did not show up in the same alarm window as other system alarms" and citing only to Mr. DeStefano's declaration).  Davies lack of knowledge about the testing program on the IESS Project, and his inability to testify about it during his deposition, should preclude him from testifying about it at trial.  He should also be precluded from offering up his conclusion that "Lockheed Martin was on the path to successful completion" (Davies testimony section XV, starting on page 102), since he is unable to testify about whether the testing program was successful or what needed to be done to complete the testing on the Project.

**F.  Davies Should Not Be Allowed to Testify About Staffing Levels.**

Davies testified, "I am not a staffing expert.  I did not opine on staffing as it requires levels."  Therefore, Davies should be precluded from testifying about MTA's staffing levels and whether or not they were appropriate.  *See, e.g.*, Davies ¶ 22 ("MTA's staffing for the IESS Project was deficient."); Davies ¶¶ 394-424 (section entitled "MTA's Staffing for the IESS Project was Deficient); Davies ¶¶ 425-434 (section entitled "MTACC Relied on Outside Consultants That Had No Authority, Causing Confusion and Conflict" and beginning with the statement "In my experience, the decision to use outside consultants is typically based on a short-term need where a company lacks necessary expertise to complete a project but desires not to hire and fire directly employed full-time resources."); ¶ 480 ("lacking appropriate staffing with skill sets commensurate to a technology project, MTACC heavily relied on external consultants to manage the IESS/C3 project instead of committed employees with the authority and accountability to keep the project on track").

**G.  Davies Rebuttal to the Reith and Safir Reports are Inappropriate and Should be Excluded for the Same Reasons**

For the reasons discussed above, Davies's rebuttal to the Reith Report is inappropriate.  It contains inappropriate legal conclusions (*see, e.g.*, Davies ¶ 644 ("MTA agreed to a 100% COTS solution when it accepted Lockheed Martin's proposal"); ¶ 650 (the "RFP did not address maintenance after the warranty period"); ¶¶ 651-655 ("Reith Ignored the Requirement for COTS, As Well As MTA's Preference for a COTS Only Solution") and Davies ¶¶ 751-779 ("Safir Added Requirement Which Were Not Part of the Contract")); and relies on irrelevant and inappropriate documents (*see, e.g.*, Davies ¶¶ 662-667 ("Reith Failed to Consider the Analysis of the Independent Peer Review Team That Identified Numerous Critical Problems in the RFP"; Davies ¶¶ 668-671 ("Reith Ignored Evidence That the Agencies Were Reluctant Participants");

16

Davies ¶¶ 725-728 ("Safir Failed to Consider the Analysis of the Independent Peer Review Team That Identified Numerous Critical Problems in the RFP Developed by MTACC").

## II.   NEBEL'S TESTIMONY AND REPORT ARE INAPPROPRIATE AND INADMISSIBLE

Like Davies, Lockheed uses Roger Nebel's expert report and testimony to present a legal conclusion – that Division 25 of the Contract did not apply and therefore Lockheed was not obligated to fulfill all of the requirements of the parties' Contract if it could not do so exclusively with the existing COTS products it selected for the Project.  *See, e.g.*, Nebel ¶ 6 ("The solution proposed by Lockheed Martin in its Technical Proposal involved no software development.  This solution was clearly accepted by MTA in the resulting contract."); ¶ 36 ("In my opinion, Reith fails to read or understand the plain language of the MTA's Request for Proposal ('RFP'), Lockheed Martin's proposal, the resulting Contract between Lockheed Martin and the MTA, and the clear and unambiguous behavior of the parties."); ¶ 38 ("The plain language of the RFP, Lockheed Martin's Proposal; the resultant contract, and the behavior of the parties during the contract cannot be misunderstood or somehow construed after the fact to invent a requirement for custom software development, as Reith would suggest."); ¶ 51 ("The contract required that Lockheed Martin not develop software or modify COTS unless specifically directed by the MTA Engineer.  The MTA Engineer never directed Lockheed Martin to develop software or to modify COTS."); ¶ 53 ("Reith's analysis fails on the basis of the faulty assumption that the IESS project was a software development project.  All of his other opinions and cost estimates rest entirely on this assumption.").  In fact, a quick perusal of the headings of Nebel's report and declaration make it clear that his entire opinion is a contractual argument, and contains absolutely no expert analysis.

As discussed in greater detail above, a party cannot use an expert to present a legal conclusion.  *See, e.g.*, *Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420, 423 (2d Cir. 1998) ("It is for the court, as a question of law, to make the determination of whether or not a contract is ambiguous.").  Therefore, Nebel's entire report and testimony should be precluded.

### III.  THE SYCOLEMAN PEER REVIEW REPORT IS INADMISSIBLE HEARSAY

#### A.  The "Peer Review" Reports are Inadmissible[1]

Lockheed has identified 34 documents[2] as intended trial exhibits that are draft reports and related materials from the so-called "peer review" group – SYColeman, ManTech International, Raul V Bravo + Associates, and Integrated Strategic Resources, LLC – that apparently performed a review of the IESS project in 2007.  Of these 34 documents, eight are draft reports (no final report was ever issued), six are subcontract or Scope of Work documents, ten are agendas and meeting minute for the so-called "peer review" group, and ten are copies and draft versions of MTA's or MTACC's response to the draft reports.

All 34 of these documents are inadmissible pursuant to Federal Rules of Evidence 401 and 402 as they are plainly irrelevant to the matters before the Court.  They purportedly reflect the views of third-parties about the early stages of the project, but provide the Court with no

---

[1] While strenuously maintaining that the Draft Reports are inadmissible pursuant to Rules 401, 402, 701, 702, and 802, MTA notes that these documents are far more neutral than Lockheed makes them out to be, by virtue of Lockheed cherry-picking statements that may identify issues as being the fault of the MTA.  The Draft Reports are rife with condemnations of Lockheed's performance on the Project, including its "inaccurate and incomplete" project schedules (LMX114, p. 2); its incomplete software development documents, transition plans, testing, and sustainment plans (despite Lockheed's assertions to the contrary) (LMX114, pp. 7-8); and its failure to address agency comments following preliminary design review (at which stage Lockheed left the Software Design Document, among others, with many fields reading only "To be supplied at CDR") (LMX114, pp. 8-9, 11-12).  Despite Lockheed's many flaws identified in the Draft Reports, MTA did not seek to rely upon these documents, because they are obviously inadmissible as hearsay.

[2] The documents in question are LMX114, 117, 316, 318-321, 324, 326, 331, 333, 334, 336, 338, 339, 344-346, 348-350, 353, 355, 357, 360, 361, 369, 384, 389-392, 400, 1768 (hereinafter, the "Peer Review Materials").

relevant or meaningful information about the issues to be presented at trial.  Further, the eight draft reports ("Draft Reports")[3] and portions of the ten documents described as meeting agendas and minutes ("Agendas/Minutes")[4] are clearly inadmissible as hearsay and hearsay-within-hearsay, pursuant to Federal Rules of Evidence 802 and 805.  The Draft Reports are also inadmissible pursuant to Rules 701 and 702, as they are either an attempt to introduce improper opinion testimony from lay witnesses (who are not now and have never been witnesses in this litigation) or an attempt to gin up expert testimony without satisfying the requirements of Rule 702.  Either way, their admission would allow Lockheed to present to the Court non-expert, hearsay-driven, irrelevant information, the sole function of which is apparently to bolster the opinions of Lockheed's unqualified expert, Frank Davies (who was not even offered up as an expert on the topics touched upon by these hearsay materials).

### B.  The "Peer Review Materials" are Irrelevant

At most, the Peer Review Materials discuss – from a third-party, second-hand perspective – a narrow slice of the IESS/C3 project; namely the state of critical design review materials, which, when the group was retained, were already months behind schedule.  Their work spanned approximately 14 months in the early phase of the project.  As a point of reference, Factory Acceptance Testing (FAT), the first stage of formal system testing under Lockheed's Test Evaluation Master Plan, did not begin until July 26, 2007, more than halfway through the peer review group's engagement.  The peer review group concluded its work before SYSTRA, the independent commissioning agent on the project, advised that FAT testing be halted and redesigned as a result of the mounting failures in early 2008.  Assuming, arguendo, that the Peer

---

[3] The Draft Reports are LMX114, 117, 355, 357, 360, 361, 384, and 400.
[4] The Agendas/Minutes are LMX316, 319, 321, 324, 326, 331, 333, 334, 336, and 339.

Review Materials provide any useful information at all, they provide no insight into the state of the project in the 17 months that follow the cover date of their final Draft Report.

Not a single member of the peer review group has testified at deposition or offered proposed testimony for trial in this case, so the Court is afforded no ability to assess the process of how the draft reports were created or how the passage of time between the conclusion of the peer review group's work and the onset of litigation might have affected the peer review group's work or the opinions they expressed. The work is "simply too outdated to be probative," and thus is irrelevant and inadmissible. *Lambrinos v. Exxon Mobil Corp.*, No. 1:00-CV-1734, 2006 WL 2238977, at *7 (N.D.N.Y. Aug. 4, 2006).

Most critically, for the purpose of Rule 401, nothing in the Peer Review Materials "has any tendency to make a fact more or less probative that it would be without the evidence." Fed. R. Evid. 401(a). The contents of the Peer Review Materials are wholly derivative of the opinions of unidentified project personnel (including both MTA and Lockheed employees) and contents of unspecified project documents, and merely repeat what those individuals and documents said, without any determinations of credibility or reliability that might aid the Court. This outdated synthesis of information adds only noise to the substantial volume of actual evidence submitted to the Court in advance of this trial.

It is noteworthy that these reports are only ever referred to by Lockheed's purported expert Frank Davies, and are adopted by him without any critical inquiry or investigation into their provenance – as yet unestablished in the record. Wholly apart from the irrelevance of the Peer Review Materials, Lockheed improperly seeks to slip them into the trial record by having the unqualified Davies bless those parts he believes help Lockheed's case. Not only is this an

inappropriate use of an expert (*see* Section I, above), but the fact that Davies refers to them does nothing to make them admissible.

That the Draft Reports were never finalized also speaks against their admissibility, as the opinions expressed in the report could have been subject to correction or change.  "We do not suggest that finality is a *sine qua non*.  In many instances non-final reports may be extremely useful and reliable so far as they go.  But certainly finality is a consideration favoring admission."  *Gentile v. Cnty. of Suffolk*, 129 F.R.D. 435, 458 (E.D.N.Y. 1990) *aff'd*, 926 F.2d 142 (2d Cir. 1991).  Given the many bases for finding the Draft Reports inadmissible, their lack of finality is certainly another strike against them.  The Peer Review Materials must be excluded pursuant to Rules 401 and 402.

### C.  The "Peer Review" Draft Reports are Hearsay and Consist Almost Solely of Hearsay-within-Hearsay

Lockheed failed to conduct any meaningful discovery on the Peer Review Materials.  As such, there is no testimony in the record about their creation, the development of their contents, the process by which they were drafted, the names of any of the individuals responsible for their drafting, or the considerations at issue in their drafting.[5]  The contents of the Draft Reports have not been attributed to any single author, or even an identifiable group of authors. They are classic unsworn, out-of-court statements, which Lockheed seeks to introduce into evidence as proof of the matters asserted, and are, as such, inadmissible hearsay.  Fed. R. Evid. 801.  Lockheed has not cited to any evidence identifying the authorship of the statements that its expert purports to

---

[5] Lockheed introduced several of the Draft Reports as exhibits at the August 21, 2012 deposition of David Horn, MTA's Independent Engineering Consultant.  While Mr. Horn was responsible for retaining the peer review group of companies, he "didn't make any technical contributions to the report."  Horn Tr. 23:12-13.  Mr. Horn did not recall the names of any of the individuals who worked for the peer review group companies, nor did he know what each of the companies focused on in their work.  Horn Tr. 23:18-25, 25:18-26:9.  Lockheed conducted no other discovery on the reports.

rely upon, leaving the record bereft of any endorsement of those statements, let alone a sworn endorsement, subject to cross examination.

The Draft Reports are based, in their entirety, on hearsay-within-hearsay since they propose to synthesize the views of project personnel in crafting their recommendations. While Appendix C to the Draft Reports (*see, e.g.* LMX 114, at Appendix C) purports to identify those individuals who attended sessions with the peer review group, the comments that follow make no attempt to identify the speaker(s) of particular statements, whether those statements were influenced or promoted by the peer review group (or others), or whether those statements are taken out of context or otherwise mischaracterized. Further, while the Draft Reports identify complaints and concerns expressed by Lockheed, the Draft Reports provide no indication as to which Lockheed personnel were interviewed or otherwise provided input into the Draft Reports.

This Court has held time and again that inadmissible hearsay such as this does not become admissible by virtue of being contained within admissible evidence – and this is not even admissible evidence in the first instance. *See Hamad v. Cook*, No. 13 Civ. 3222, 2014 WL 3507340, at *7-8 (S.D.N.Y. June 30, 2014) (excluding unsworn witness statements as hearsay); *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 606-07 (S.D.N.Y. 2013) ("The Court agrees that an *unidentified* Assistant District Attorney's notes of statements made presumably by O'Rourke concerning statements made by the confidential informant, as well as describing his encounter with Smith, constitute double hearsay. . . .") (emphasis added); *Rodriguez v. Modern Handling Equip. of N.J., Inc.*, 604 F. Supp. 2d 612, 623 (S.D.N.Y. 2009) ("It appears that Nugent's written report . . . is based entirely on the statements of non-parties he interviewed in his investigation . . . , he does not have personal knowledge of the information contained in the report, which is now being offered for its truth. The written portion of the report is therefore

inadmissible.").   Here, the reports themselves are hearsay, leaving the statements contained therein to be inadmissible hearsay-within-hearsay.

The statements contained within the Draft Reports, purportedly from MTA agency and MTACC personnel, are similarly inadmissible and do not satisfy the "party admission" exception to hearsay in Rule 802(d)(2)(A) as the supposed declarants are unknown.  *See Evans v. Port Auth. of N.Y. & N.J.*, 192 F. Supp. 2d 247, 264-65 n.129 (S.D.N.Y. 2002) (citing several cases within and outside the Second Circuit holding that hearsay statements of unnamed declarants are inadmissible).

None of the Peer Review Materials, including the Draft Reports, are saved by the "business records" exception to the hearsay rule, found in Rule 803(6).  The records leaves it utterly unclear whether these records were made at or near the time that the information was transmitted by the – here, unidentified – persons with knowledge.  It is plainly inaccurate to claim that these were records created and kept in the course of a regularly conducted activity of a business, since they were related to a specialized, limited assignment.  Most critically, no custodian or qualified witness has been brought forth to make any supportive claims about the Draft Reports, or other Peer Review Materials, and they lack the indicia of trustworthiness that must be present, as discussed above.  As the Second Circuit held in *Phoenix Associates III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995):

> [T]he proffered record must be supported by a proper foundation, namely, that the document was "'kept in the course of a regularly conducted business activity' and also that it was the 'regular practice of that business activity to make the [record].'" United States v. Freidin, 849 F.2d 716, 719–20 (2d Cir. 1988) (quoting Rule 803(6)). This foundation must be established by the " 'testimony of the custodian or other qualified witness' of the record." Id. at 720 (quoting Rule 803(6)).

*See also Rizkallah v. Forward Air, Inc*., No. 02 Civ. 2448 (PGG), 2009 WL 3029309, at *2 n.4 (S.D.N.Y. Sept. 22, 2009) (excluding report for lack of foundation under Rule 803(6)).

Lockheed has failed to provide any foundation that might establish that these documents were kept in the course of a regularly conducted business activity and that it was the regular practice of the business to make such records – of course, because neither of these statements would be true – and they have failed to offer any testimony from a qualified witness that might support the admissibility of these documents.  Besides carrying no probative value, as discussed above, the Draft Reports are inadmissible as hearsay, and are not saved by any exceptions to the hearsay rule.  Lockheed must not be permitted to introduce them into evidence for the supposed truth of the matters asserted therein.  *See also Djangmah v. Falcione*, No. 08 Civ. 4027, 2013 WL 6388364, at *6 (S.D.N.Y. Dec. 5, 2013) ("Here, Plaintiff cannot lay a foundation sufficient to satisfy the requirements of . . . the business records exception under Rule 803(6) for the simple reason that no witness he intends to call could possibly establish that the records are what they appear to be or that they conform to the requirements of [the] exception.").

### D.  The "Peer Review" Draft Reports are Inadmissible Opinion Evidence

The Draft Reports purport to analyze and make recommendations about the IESS project. Lockheed seeks to offer them into evidence as opinion testimony.  Yet the draft reports are inadmissible as opinion testimony under Rules 701 and 702, and, as discussed above, do not constitute admissible fact evidence.  Since the members of the peer review group remain unidentified, apart from their corporate identities, and none has been called to testify at deposition or offered any evidence for trial, the Draft Reports cannot be accepted as expert reports pursuant to Rule 702.

### IV.  THE OTHER REPORTS AND THAT LOCKHEED HAS LISTED AS EXHIBITS ARE INADMISSIBLE HEARSAY

Lockheed cites several New York State Comptroller's Reports in its exhibit list (LMX 100, 215, 217 and 1653).  None of these is admissible evidence.  Each is purely hearsay (and

contains hearsay within hearsay), as discussed above in the context of the Peer Review Materials. Davies relies on the hearsay conclusions in these reports – and in fact, he offers them to prove the statements within the reports - which he may not do.  Lockheed has not called the author of these reports to testify about their conclusions and how that person or persons reached those conclusions, and what the conclusions are based on, and that person's or persons' biases.  These reports do not fall within any hearsay exception.  They are not properly within the government reports exception to the hearsay rule (Fed. R. Evid. 803(8)) because the Comptroller's office is not "under a legal duty to report" and these are not "factual findings from a legally authorized investigation."  The duties of the New York State Comptroller are laid out in N.Y. Fin. § 8.  There is no duty for the Comptroller to issue reports on the status of the MTA's construction and security projects.

Similarly, the report written by the New York State Inspector General's office that is cited by Davies, LMX 212) must be excluded under Federal Rules of Evidence 402, 403, 802 and 805.  The Inspector General's report does not even mention the IESS Project or MTACC's Security Program, so it is impossible to see what relevance it could possibly have to this Project.

Lockheed's expert witness, Davies, relies on a report written by the Citizen's Budget Commission (LMX 207).  This is clearly inadmissible hearsay and does not fall within any of the hearsay exceptions.  It also is completely irrelevant and prejudicial, and therefore inadmissible under Fed. R. Evid.  402 and 403.  In fact, there is no mention of MTACC's Security Program in this report, let alone a mention of the IESS Project.  Moreover, this report dates from October 2009, after Lockheed was defaulted from the Project.  This report is entirely irrelevant and prejudicial and must be precluded.

LMX 71 purports to be a report entitled "Design Build Practice Report" by Parsons Brickerhoff Quade & Douglas, Inc., dated September 2002.  There is no witness from this company that will be testifying about this report, and it is inconceivable that this report, dated 2002 and purportedly prepared for the New York State Department of Transportation, is relevant in any way to the IESS Project.  Lockheed should be precluded from offering this report into evidence.  The same is true of LMX 98, a page on the U.S. Department of Transportation Federal Highway Administration website.  (In fact, it is unclear how Lockheed intends to use LMX 98, as it was not cited by any of its witnesses in their trial affidavits.)  *See, e.g.*, *NAACP v. A.A. Arms Inc.*, 99 CV 3999, 2003 WL 21135563, at *1 (E.D.N.Y. May 5, 2003) (excluding "the set of best practices for survey and public opinion research from the website of the American Association for Public Opinion Research" on grounds of hearsay and Fed. R. Evid. 403).

## V.  THE WEBSITES LOCKHEED OFFERS ARE INADMISSIBLE HEARSAY

"Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801."  *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007), *aff'd* 330 F. App'x 204 (2d Cir. 2009).  Lockheed has 15 different websites listed on its exhibit list.  Each of these is presumptively hearsay (Federal Rule of Evidence 801), and each is irrelevant (Fed. R. Evid. 402) and prejudicial (Fed. R. Evid. 403) and must be precluded.

LMX 1627 is a Wikipedia entry, which is cited in Lockheed's expert Roger Nebel's testimony.  Wikipedia is inherently unreliable – it can be changed by any person or entity (including Lockheed) at any time.  It is hearsay under Fed. R. Evid. 801 (*Tucows*, 2007 WL 922306) and additionally, its authenticity cannot be proven.  *See, e.g.*, *Fleishman v. Cont'l Cas.*

*Co.*, No. 09 C 00414, 2011 WL 5866264, at *4 (N.D. Ill. Nov. 22, 2011), *aff'd,* 698 F.3d 598 (7th Cir. 2012) ("As useful as Wikipedia is as an information source, a Wikipedia entry is not admissible evidence."); *Steele v. McMahon*, No. CIV S-05-1874, 2007 WL 2758026, at *8 n.5 (E.D. Cal. Sept. 21, 2007) (refusing to take judicial notice of a Wikipedia article because it did not "meet the requirements of Fed. Rule Evid. 201").

Lockheed has several press releases listed on its exhibit list (LMX 116, 156, 216, 1427 and 1618). These are purely hearsay, and as they were not written by someone who will be testifying in this case, and are offered for the truth of their assertions, are inadmissible. *See Tucows*, 2007 WL 922306, at *5.

LMX 1657, cited by Nebel's trial affidavit, is what appears to be a PowerPoint presentation by Jack R. Ferguson for the Carnegie Mellon Software Engineering Institute. Again, this is hearsay under Fed. R. Evid. 801 (*Tucows*, 2007 WL 922306). Jack R. Ferguson is not a witness in this case, and Lockheed should not be allowed to offer this document into evidence.

## VI. THE MEETING MINUTES SUBMITTED BY LOCKHEED SHOULD BE PRECLUDED

In its exhibit list, Lockheed has referenced over 200 meeting minutes of various types amounting to approximately 2,000 pages of material. Nevertheless, in its Declarations and Proposed Findings of Fact, Lockheed cites a total of seven meeting minutes. The combined cited portions of these seven documents amounts to no more than one or two pages (out of an approximate universe of 2,000 pages) of what Lockheed claims to be relevant material.

These meeting minutes should be excluded for three reasons. First, the underlying material that Lockheed appears to be citing, at least from what MTA can glean from the seven meeting minutes that are actually referenced by Lockheed, is inadmissible hearsay. These

meeting minutes describe conversations attributed to MTA, Lockheed, various third parties, and sometimes unknown parties.  The courts may not permit the introduction of hearsay contained within hearsay unless each layer is properly admitted under an exception to Rule 802.  Fed. R. Evid. 805; *United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990); *Amerisource Corp. v. RxUSA Int'l Inc.*, No. 02-CV-2514, 2009 WL 235648 (E.D.N.Y. Jan. 30, 2009); *United States v. Christ*, 513 F.3d 762, 769 (7th Cir. 2008).  Meeting minutes of general meetings may be properly admitted as evidence of what transpired at the meeting, though not as evidence of truth of what was said, under Fed. R. Evid. 803(8), the public records exception to hearsay rule. *Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*, 621 F. Supp. 198 (S.D.N.Y. 1985).

Furthermore, there is no indication, from MTA's own review of these minutes, nor from Lockheed, that any of the non-cited meeting minutes are in any way relevant to Lockheed's claims or defenses against MTA. *See* Fed. R. Evid. 401.

Finally, even if relevant, these documents should be excluded because any conceivable probative value is substantially outweighed by unfair prejudice to MTA, potential confusion of the issues, undue delay, and waste of time. *See* Fed. R. Evid. 403.  Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility.  That is, evidence may be excluded if its probative value is not worth the problems that its admission may cause, e.g. unfair prejudice, confusion of the issues, undue delay, waste of time, or needless presentation of cumulative evidence.  *Old Chief v. United States*, 519 U.S. 172, 179 (1997), *United States v. Jamil*, 707 F.2d 638, 641-42 (2d Cir. 1983); *Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002).

Lockheed's limited description of these documents in its exhibit list, and still more limited references to them in its Declarations and Proposed Findings of Fact, gives the Court no

reason to conclude that these documents are relevant enough to be admitted in light of the difficulties and delay they would cause. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."); *Targonski v. City of Oak Ridge*, 921 F. Supp. 2d 820 (E.D. Tenn. 2013).

Fed. R. Evid. 403 is an "umbrella rule" spanning the whole of the Federal Rules of Evidence.  *See* Federal Rules of Evidence Manual 251 (Stephen A. Saltzburg et al. eds., 7th ed. 1998) ("[T]he Trial Judge must apply [Rule 403] in tandem with other Federal Rules under which evidence would be admissible.").  Accordingly, it is generally applied to evidence otherwise admissible under Rule 803(8)(C).  "[W]here the probative value of [evidence admissible pursuant to Rule 803(8)(C)] is outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence attendant upon the opponents' efforts to establish untrustworthiness of the report, the court may exclude the report under F.R.E. 403.").  *Coleman*, 306 F.3d at 1343.

In weighing undue delay and waste of time against the low probative value of the exhibits in question, the scales tip in favor of excluding these records.  If these documents are admitted, MTA would have to spend an inordinate amount of time preparing for any possible use by Lockheed of the 2000 pages of material, for fear of being surprised by any one possible sentence within this mass of documents.  Furthermore, MTA would be forced to unnecessarily prolong the trial by introducing evidence to challenge and weaken whatever underlying truth Lockheed seeks to prove from within these voluminous records.  Accordingly, the Court should find meeting minute evidence inadmissible, given the risk of surprise and unfair burden to the MTA, and the further risk of lengthening what will already be an extensive trial.  *Coleman*, 306 F.3d at 1343.

## VII.   RFP VOLUME 6A IS NOT PART OF THE CONTRACT

Lockheed relies extensively on Volume 6A of the RFP in Davies trial declaration (Davies ¶¶ 196, 198-200, 232, 380), even though the Contract document entitled Agreement expressly provides that Volume VI "is not part of the Contract Documents for any purposes." JX 10.02 (Agreement, §§ I.B1, 1B2).   MTA seeks a ruling before trial that these divisions of the RFP are not part of the parties' contract and are therefore irrelevant.

## VIII.   LOCKHEED CANNOT USE ITS NEWLY PRODUCED DOCUMENTS TO PROVE ITS DAMAGES CLAIM

Long after discovery in this case was completed, on May 22, 2014, Lockheed served on MTA a soft copy of a spreadsheet document, with no explanatory information as to precisely what it represented, who created it and when.  (A copy of the letter from Lockheed's counsel enclosing this document is annexed hereto.)  The document was later included on Lockheed's trial exhibit list as LMX1614, and the first disclosure as to what this document purports to be was made by Lockheed in the Trial Affidavit of Gary Porter, which was served on July 10, 2014.

According to Mr. Porter, he created this document at the direction of his Project Manager, Lawrence Wharton, who took over the management of the IESS Project at the time of default in 2009.  The document purportedly relates to the MTA's claim that it pre-paid Lockheed $24 million for material to be installed on the Project but which Lockheed failed to account for.  Mr. Porter apparently contends that this document somehow accounts for the material.

Exhibit LMX1614 should be excluded from evidence, and along with it, the corresponding paragraphs of Mr. Porter's affidavit, *i.e.* ¶¶ 124-134.  The document should have been presented years ago to afford MTA the opportunity to examine Lockheed's witness on this document.   MTA is prejudiced by Lockheed's belated attempt at trying to establish an accounting for the $24 million it received.

# IX.    STACIE MUSGRAVE MUST BE PRECLUDED FROM TESTIFYING AS A DAMAGES WITNESS

During discovery, MTA and Lockheed each agreed to produce a witness on damages for deposition.   This was memorialized in the scheduling orders issued by Magistrate Judge Gorenstein, which provided that Lockheed's damages witness would be Peter Berl.   (*See* Scheduling Order dated February 11, 2013 (ECF #98).)   For the trial, Lockheed has suddenly changed tacks and submitted the declaration of an entirely different witness on damages, Stacie Musgrave, and has not submitted an affidavit from Peter Berl, the agreed-upon damages witness.

More important, Ms. Musgrave, at ¶¶ 59-73 of her July 8, 2014, trial affidavit, tries to lay out a basis for Lockheed's claim for damages that was not disclosed during discovery.   For the reasons set forth by MTA in its motion for summary judgment, we believe this testimony should be precluded.   (*See* Defendant's Memorandum of Law, dated July 15, 2013, at p. 47-48.)   As we argued then, Mr. Berl, who was presented by Lockheed as its witness on damages, was unable to respond to MTA's inquires on Lockheed's damages claim, stating that he was unfamiliar with Lockheed's claim.   (*Id.*; *see also* Declaration of Ira J. Lipton, dated July 15, 2013 at ¶13.)   MTA has been denied the opportunity to examine any MTA witness as to the present basis for its claim for damages.   Lockheed's post-discovery attempt to rectify its non-disclosure of the basis for its claim prejudices the MTA and accordingly, Ms. Musgrave (or any other Lockheed witness on damages) should be precluded.

## <u>CONCLUSION</u>

For all of the foregoing reasons, MTA respectfully requests that this Court grant MTA's

motions in limine, precluding Lockheed from using the evidence discussed above, and for such

other and further relief as this Court deems just and proper.

Dated:          August 4, 2014
                New York, New York


                                    HOGUET  NEWMAN REGAL & KENNEY, LLP


                                    By: _____
                                            Ira J. Lipton (IL-4835)
                                            Helene R. Hechtkopf (HH-7402)
                                            Marc Melzer (MM-0677)
                                            Edwin Fragoso (EF-5501)
                                            10 East 40th Street
                                            New York, NY 10016
                                            Phone:  212-689-8808



NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA

*FIRM and AFFILIATE OFFICES*

MICHAEL CHARTAN
DIRECT DIAL: +1 212 692 1016
PERSONAL FAX: +1 212 253 4271
*E-MAIL:* mlchartan@duanemorris.com

*www.duanemorris.com*

BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

May 22, 2014

**BY HAND**

Ira J. Lipton, Esq.
Houget Newman Regal & Kenney, LLP
10 East 40th Street
New York, NY 10016

     Re:    **Lockheed Martin v. MTA**
               **Index No.: 09 Civ 4077**

Dear Ira:

    Enclosed please find a CD containing installation progress reports prepared during the Project and shortly after termination.  After reviewing our discovery productions, we believe these reports were not produced. We intend to use these reports for trial.  Also I misspoke about the exhibit being prepared for trial.  When I got into the office, Nicole told me it was not ready.

                    Very truly yours,

                    Michael Chartan

cc:   Nicole Woolard, Esq. (via email)

DUANE MORRIS LLP

1540 BROADWAY   NEW YORK, NY 10036-4086
DM1\4695256.1

PHONE: +1 212 692 1000   FAX: +1 212 692 1020