UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCKHEED MARTIN TRANSPORTATION SECURITY SOLUTIONS, AN OPERATING UNIT OF LOCKHEED MARTIN CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>MTA CAPITAL CONSTRUCTION COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>Defendants. | No. 09 CV 4077 (PGG)(GWG) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA,<br><br>Plaintiffs,<br><br>-against-<br><br>METROPOLITAN TRANSPORTATION AUTHORITY, MTA CAPITAL CONSTRUCTION COMPANY, NEW YORK CITY TRANSIT AUTHORITY, and LOCKHEED MARTIN CORPORATION,<br><br>Defendants. | No. 09 CV 6033 (PGG)(GWG) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO BAR EVIDENCE OR TESTIMONY REGARDING THEORIES OF LIABILITY NOT PREVIOUSLY IDENTIFIED IN MTA'S DEFAULT NOTICE**

HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
Phone: 212-689-8808

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ................................................................................................................3

    A.  Lockheed's In Limine Motion is More Appropriate for Post-Trial Argument ....................3

    B.  Lockheed's Violation of the Contract's Warranty Provisions and the Assertions in the 10 Paragraphs Fall Well Within the Default Notice ........................................................4

        1.  MTA Has Not Presented a New "Theory of Liability" ....................................4

        2.  The 10 Paragraphs Fall Within the Default Notice ...........................................5

        3.  The Default Notice By its Terms Was Not an Exclusive List of Lockheed's Performance Failures. ..........................................................................................6

    C.  Notice is Not Even Required Under the Contract ................................................................7

    D.  Lockheed's Cases Do Not Support Its Contention that It Was Denied Notice ....................8

    E.  Lockheed's Substantive Defense to MTA's Contention that it Violated the Warranty Provisions is Without Merit ...............................................................................12

III. CONCLUSION ............................................................................................................14

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Angel Learning, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*,
No. 1:08-cv-1259, 2010 WL 3211057 (S.D. Ind. Aug. 13, 2010) ................................................. 9

*Bernhardt Lumber Co. v. Metzloff*, 113 Misc. 288,
184 N.Y.S. 289 (Sup. Ct. Erie Trial Term 1920) ........................................................................ 10

*Claugus v. Roosevelt Island Hous. Mgmt. Corp.*, No. 96 CIV 8155,
1999 WL 258275 (S.D.N.Y. Apr. 29, 1999) ................................................................................. 8

*Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918 (2d Cir. 1977) ..................... 8

*Data Sys. v. Philips Bus. Sys., Inc.*, 78 Civ. 6015,
1986 WL 733 (S.D.N.Y. Jan. 6, 1986) ........................................................................................ 10

*Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*,
24 Misc. 3d 1222(A), 2009 WL 2163483 (Sup. Ct. Onondaga Cnty. July 17, 2009) ................. 10

*ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383 (S.D.N.Y. 1999) ............... 12

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513 (2d Cir. 1989) ......... 9

*Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085 (2d Cir. 1992) .............................................. 9

*Gulf Ins. Co. v. Fidelity & Deposit Co.*, 16 Misc. 3d 1116(A),
2007 WL 2162885 (Sup. Ct. N.Y. Cnty. July 20, 2007) ............................................................... 9

*Leventhal v. New Valley Corp.*, No. 91 Civ. 4238,
1992 WL 15989 (S.D.N.Y. Jan. 17, 1992) .................................................................................. 10

*Littlejohn v. Shaw*, 159 N.Y. 188 (1899) ..................................................................................... 10

*Luce v. United States*, 469 U.S. 38 (1984) .................................................................................... 3

*Med. Dev. Mgmt., Inc. v. New You Publ'g, LLC*, No. 11 Civ. 8438,
2012 WL 4459909 (S.D.N.Y. Sept. 25, 2012) .............................................................................. 8

*Morris v. Lee*, Nos. 08 CV 6673, 08 CV 6724, 2011 WL 721663 (S.D.N.Y. Feb. 24, 2011) ........ 9

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
861 F. Supp. 2d 344 (S.D.N.Y. 2012) ........................................................................................... 8

...

*Primetime 24 Joint Venture v. DirectTV, Inc.*, No. 99 CIV 3307,
2000 WL 426396 (S.D.N.Y. Apr. 20, 2000) ................................................................. 10, 11

*Rachmani Corp. v. 9 E. 96th St. Apartment Corp.*,
211 A.D.2d 262, 629 N.Y.S.2d 382 (1st Dep't 1995) .......................................................... 12

*Schroders, Inc. v. Hogan Sys., Inc.*, 137 Misc. 2d 738,
522 N.Y.S.2d 404 (Sup. Ct. N.Y. Cnty. 1987) ................................................................... 12

*United States v. Chan*, 184 F. Supp. 2d 337 (S.D.N.Y. 2002) ................................................. 3

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12-CV-9412,
2014 WL 3368670 (S.D.N.Y. July 9, 2014) ........................................................................ 9

I.  **INTRODUCTION**

In this in limine motion ("the Motion") Lockheed moves to bar evidence and testimony regarding what it contends are new "theories of liability" that were "not previously identified in MTA's Default Notice." Lockheed further moves to bar 10 paragraphs from the Trial Affidavits of Ronald Pezik and Kenneth Shields also on the grounds that the Lockheed was not sufficiently apprised of these assertions in the Default Notice. According to Lockheed, if the "theory of liability" or other bases of Default were not adequately stated in the Default Notice as they contend, then they were deprived of the opportunity to cure and, hence, MTA cannot press in litigation this "new theory" or the facts referenced in the 10 paragraphs it complains of.

Lockheed is incorrect in all of its assumptions, both legally and factually. First, the MTA's Default Notice fully apprised Lockheed of the deficiencies in its work, including the failure to deliver a contractually-compliant IESS System. Lockheed was given the opportunity to cure this non-performance, but Lockheed took the position that it was "complete" with the work in question and that its work was contractually compliant. There is no new "theory of liability" here. Since Lockheed failed to design, develop, and deliver a contractually-complaint IESS System (among other material failures), Lockheed beached the Contact, plain and simple. That is precisely what Lockheed was advised of in the Default Notice, which enumerated examples of material breaches, including prominently, Lockheed's IESS system failures, which rose to the level of "Events of Default" under Article 7.01 of the Contract (JX 10.04). In presenting to this Court on summary judgment, and again in pretrial papers, that Lockheed's failure to deliver a contractually compliant IESS system violated the warranty provisions of the Contract, MTA does nothing more than cite to fundamental contractual provisions that required Lockheed to deliver an IESS system that met the contractual requirements. This is not a notice

issue. Lockheed offers no authority for its apparent proposition that the precise legal grounds for each of its breaches be explicitly set forth in the Notice of Default/Opportunity to Cure letter. Lockheed was made well aware of the underlying performance issues which precipitated its default and which underlay its breach of the warranty provisions of the Contract, but it refused to rectify its failures when it submitted its "Cure" response.  There is no "notice" issue here.

Nor can Lockheed be relieved of having to defend itself by cherry picking through the affidavits of MTA's Consultant Construction Manager and Engineer (Mr. Shields) or its Project Manager (Mr. Pezik) to try and find specific statements of deficient performance that were not highlight in the Default Notice.  As discussed below, the items raised in the 10 paragraphs indeed fall within the ambit of the Default Notice.  Nevertheless, The MTA was not obligated to identify every single instance of poor performance in the Default Notice.  Indeed, the Default Notice, by its own express terms, states that it was *not* providing an exclusive listing of every specific instance of Lockheed's poor performance.

Finally, though Lockheed was given ample notice of the bases for its default, the MTA was under no obligation to provide Lockheed with a Notice and Opportunity to Cure to begin with.  Pursuant to the Contract, issuance of the Notice was at the option of the MTA and there is nothing in the Contract that precludes MTA from defaulting Lockheed for any valid reason merely because the reason falls outside of the four corners of the Notice.  The case law cited by Lockheed is not to the contrary.

Lockheed's motion in limine is without legal or factual basis and should be denied.

## II. ARGUMENT

### A. Lockheed's In Limine Motion is More Appropriate for Post-Trial Argument

Lockheed seeks to raise, in the guise of a motion in limine, issues more appropriately raised at summary judgment or in pre- or post-trial memoranda. "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The court in *Chan* went on to hold that, "Evidence should be excluded on a motion *in limine only* when the evidence is *clearly inadmissible on all potential grounds*." *Id.* (Emphasis added). Lockheed's motion fails to meet this standard. The thrust of its motion concerns its legal contention that it cannot stand trial for breach of the Contract's warranty provisions because it was not given an opportunity to cure that. That contention does not raise evidentiary issues. In fact, Lockheed's contention in this regard was briefed in its opposition to MTA's motion for partial summary judgment, and addressed by MTA in its reply papers.[1]

The small amount of evidence Lockheed does seek to exclude is undoubtedly admissible and speaks directly to well-pled allegations in MTA's counterclaims and those of the Default Notice itself. MTA also notes that Lockheed fails to identify a single evidentiary rule in the Motion supporting the exclusion of these ten paragraphs from the trial record. It is also no

---

[1] *See* Lockheed Memorandum in Opposition to Motion for Summary Judgment (Docket No. 153) at 22-23, and MTA's Reply Memorandum (Docket No. 151) at 3-5. MTA reiterated its position regarding Lockheed's breach of the Contract's warranty provisions in its Trial Memorandum at pp. 10-11 and 29-30, and also reiterated its opposition to Lockheed's notice argument at pages 31-32. We note here a typographical error in our Trial Memorandum, which incorrectly referred the Court to Sections II(A) and (II)(B) of the Agreement for the warranty provisions. The correct citation is to sections III(A) and III(B) of the agreement (JX10.02). The specific warranty provisions delineated at pages 10-11 of our Trial Memorandum are found at sections III(A)(3)(a), (b) and (c), and III(B)(1),(5) and (6). MTA also cited to section III(B)(7) in its trial memorandum, which provides that the warranties apply to the contractor as well as its subcontractors and suppliers. (JX10.02).

3

surprise that not one of the decisions cited by Lockheed is a decision on an in limine motion, since the Motion does not truly concern evidentiary issues.

    **B. Lockheed's Violation of the Contract's Warranty Provisions and the Assertions in the 10 Paragraphs Fall Well Within the Default Notice**

        1.  <u>MTA Has Not Presented a New "Theory of Liability"</u>

Nothing in MTA's trial evidence is news to Lockheed. MTA does not now seek to advance any "theories of liability" that it has not previously asserted against Lockheed. Thus, Lockheed's claim that MTA is now raising anew that it "failed to complete the IESS system," (Motion, p. 1) is curious. The Default Notice cited to contractual specifications that required that Lockheed identify all System requirements, test those requirements, and correct all variances that may arise from those tests. (Ex. JX 6 at 6, citing Specification §§ 1AB12, 1AB12.2.5, 1AB12.2.6.) MTA could not have been any clearer in advising Lockheed where it was falling short:

> Lockheed is not devoting the resources necessary to deliver the 100% functionality the Contract requires. Lockheed can only establish that it has provided a 100% functional system by demonstrating that the software and related equipment pass all of the required tests; but Lockheed is not taking the measures necessary to satisfy these testable requirements. Lockheed must also establish a method for demonstrating the functional non-testable requirements, but Lockheed is not taking the measures to establish these requirements either.

(JX 6 at 5-6.) MTA further notified Lockheed that, "[t]he Work Lockheed is failing to prosecute includes: developing the software and performing the integration work necessary to create a system that satisfies all of the Contract's requirements, including resolution of outstanding FAT and SIST failures; . . . ." (JX 6 at 7); and to avoid default, Lockheed was required to submit a "plan to satisfy all requirements with 100% pass rate on all testing and a plan to demonstrate all functional non-testable requirements." JX 6 at 9.)

4

Lockheed failed to respond to the substance of this identified example of its many failings in its cure response, choosing instead to posture that it was complete with FAT and complete with SIST at two of the MTA agencies and to falsely claim that, "LM continues to conduct testing per the approved TEMP" and then quibble with the disposition of severity 3 and 4 issues, ignoring that it had failed to remedy severity 1 and severity 2 variances at both the FAT and SIST phases of testing. (JX 7.1 at 27) [2]

Given the foregoing, Lockheed's argument that it was not given notice of the bases for MTA's claim that it was in breach of its contractual obligations is incorrect and absurd. The very conduct and poor performance which underlay MTA's position that Lockheed breached the warranty provisions was crisply laid out in the Default Notice and disregarded by Lockheed.

2. <u>The 10 Paragraphs Fall Within the Default Notice</u>.

The ten paragraphs that Lockheed identifies between the Pezik and Shields affidavits likewise present no new "theories of liability" or statements of Lockheed's failings that were not well-known to Lockheed at the time of its termination and were well within the ambit of the Default Notice. In the paragraphs that Lockheed seeks to preclude, Mr. Pezik speaks to Lockheed's poor quality drawings (¶39) and its failure to progress AWO 1 communication room work (¶80); while Mr. Shields speaks to poor quality drawings characterized by errors and omissions (¶¶ 55, 64, 66), poor management of the drawing submittal process (¶56), delays in moving into the construction and installation phase due to the unacceptability of Lockheed's drawing (¶67), the failure to progress the work as dictated by Article 2.01 of the Contract (¶87),

---

[2] The last recorded test date in the RTM, for the SIST and FAT re-test phases, was May 21, 2009. Between May 21, 2009, and June 12, 2009, the date of default, the project test records reveal that no SIST or FAT-retest testing activity occurred at all. Similarly, the StarTeam variance database reveals that no variances were closed after October 7, 2008 (eight months prior to default) and no problem reports (Lockheed's unilateral method of tracking certain types of system problems requiring additional work) were closed after March 4, 2009 (more than three months prior to default). Hughes ¶¶ 92-93.

5

inadequate staffing (¶¶87-88), and not progressing available NYCT communication room and installation work in NYCT's tunnels. (¶92). The Default Notice was comprehensive, and cited Lockheed for the very things Mr. Pezik and Mr. Shields refer to in the paragraphs Lockheed seeks to preclude, including:

- gaps, errors and omissions in its design (JX 6 at 2 );
- drawings that were inaccurate, incomplete and that contained errors and omissions (JX 6 at 2);
- the inability to advance the work to the construction phase due to unacceptable designs and drawings (JX6 at 2);
- the failure to properly manage the work, including design work (JX 6 at 3);
- the failure to diligently prosecute the work in accordance with Article 2.01 of the Contract (JX 6 at 6-7);
- the failure to perform millions of dollars of work, including work related to NYCT communication rooms (JX 6 at 7, 9);
- the failure to perform installation work in NYCT station complexes (JX 6 at 7);
- the failure to properly staff the job and devote the resources to get the work done (JX 6 at 9.)

Lockheed does not explain, nor could it, how it is the ten paragraphs in question present examples of poor performance and deficiencies that it would have cured but did not do so because it was insufficiently notified.

The 10 Paragraphs are plainly relevant to Lockheed's poor performance on the Project. Not only do they support MTA's claim that Lockheed delayed the Project and breached its design obligations and duty to diligently prosecute the work, but these paragraphs are also relevant to MTA's defense against Lockheed's false charges that its work was delayed or impeded by MTA. Its motion regarding these paragraphs should be denied.

3. The Default Notice By its Terms Was Not an Exclusive List of Lockheed's <u>Performance Failures</u>.

It also bears noting that the Default Notice issued by MTA was explicit in notifying Lockheed that the performance issues identified therein as the basis for Default did not constitute a complete, exclusive list of every single way in which Lockheed failed.  Thus, the Default

6

Notice provided that it was "[s]et[ting] forth . . . *some* of the contractual breaches committed by Lockheed" and noted that, "[t]he list . . . does not constitute the entirety of Lockheed's failure, but highlights *some* of the major breaches and deficiencies in Lockheed's work to date, which must be immediately cured."  (JX 6 at 1) (Emphasis added).  Throughout the Default Notice, after stating the broad category of Default, the Notice made clear that MTA was providing examples of Lockheed's breaches.  (JX 6 at 2, 4, 7).  The Notice, by its terms, therefore, does not preclude MTA from raising additional examples of Lockheed's poor performance.

C. **Notice is Not Even Required Under the Contract**

Article 7.02 of the Contract's Terms and Conditions states that, "If an Event of Default occurs, the Authority *may so notify* the Contractor ("Default Notice"), specifying the basis(es) for such default . . ."  (JX 10.04 at 43) (Emphasis added).  Lockheed's glib attempt in the Motion (at p. 6 n.2) to twist the plain meaning of this permissive, rather than mandatory, clause is unavailing and unsupported under New York law.  Lockheed cites no authority for its contention that this clause indicates only that "MTA need not declare default and may elect to continue performance under the Contract."  Motion, p. 6 n.2.  The clause simply does not say that.  The use of the word "may" is used in connection with the MTA's issuance of a notice and an opportunity to cure – not in connection with its decision to declare Lockheed in default (which is a matter obviously within the sole discretion of MTA). Moreover, other provisions in the Contract indicate that MTA is not constrained by the notice and opportunity to cure option.  For example, Article 7.03(a) provides that "*Upon Contractor's Default*, the Authority shall have the right to either complete the Work with its own forces and/or other contractors or to require the Surety to complete the Work under the Performance Bond . . ." (Emphasis added). (JX 10.04 at 43).  Article 7.03(b) provides that, "If a Default *occurs*, Contractor shall be liable for all damages

7

resulting from the Default . . ." (Emphasis added) (JX 10.04 at 44).  Nothing in this language suggests that the MTA cannot deem Lockheed to be in default and exercise all of its rights flowing from that default absent affording Lockheed with a notice and opportunity to cure.

"The court will give the word 'may' its ordinary, non-technical meaning. 'May' does not mean 'must,' and thus the actions specified in the lease are permissive and not mandatory." *Claugus v. Roosevelt Island Hous. Mgmt. Corp.*, No. 96 CIV 8155, 1999 WL 258275, at *11 (S.D.N.Y. Apr. 29, 1999).  *See also Med. Dev. Mgmt., Inc. v. New You Publ'g, LLC*, No. 11 Civ. 8438, 2012 WL 4459909, at *4 (S.D.N.Y. Sept. 25, 2012) ("The use of 'may' instead of 'shall' or 'must' indicates that the clause is permissive, not mandatory.").

There can be no argument with the fact that Lockheed was guaranteed neither notice nor an opportunity to cure under the terms of the Contract, and thus could not possibly have been prejudiced by these supposedly new bases for termination (which, as set forth above, are not in fact new and are entirely subsumed by the Default Notice).

### D. **Lockheed's Cases Do Not Support Its Contention that It Was Denied Notice**

Beyond the Contract's lack of a guaranteed opportunity to cure, New York law does not support Lockheed's demand that MTA's optional Default Notice must comprise the full sum and substance of MTA's assertions against Lockheed.  Thus, for example, the law simply does not support Lockheed's assumption that it was entitled to have a full exposition of MTA's legal basis for its determination that Lockheed's performance constituted a material breach, whether of the warranty provisions or otherwise. *See Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d Cir. 1977) ("We decline to construe the notice provision as if it were a common law pleading requirement under which every slip would be fatal"); *see also Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 362 (S.D.N.Y. 2012) (letter

set out four clear and specific reasons for termination; courts have "routinely" found such notices sufficient); *Angel Learning, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 1:08-cv-1259, 2010 WL 3211057, at *9-10 (S.D. Ind. Aug. 13, 2010) (applying New York law, where purchaser provided vendor notice of software's failure to pass verification tests, vendor could not dispute that it received all information necessary to satisfy purpose of notice requirements in warranty provisions).

The decisions that Lockheed cites in support of its contention to the contrary contain significant factual and legal distinctions with the present case, rendering each distinguishable. Three of Lockheed's nine cited cases turn entirely on the failure of the terminating party of follow explicit contractual termination provisions (and this is indicated in Lockheed's parenthetical descriptions for each in the Motion) and are therefore unrelated to the Motion and this case.[3] For example, the contracts in both *Morris* and *Gulf Ins. Co.* required the terminating party to obtain an architect's certificate stating that sufficient cause exists prior to initiating termination procedures. The Contract between MTA and Lockheed does not contain the explicit conditions precedent found in the cases upon which Lockheed relies, instead containing only the permissive Default Notice provision quoted above, with which MTA fully complied.[4]

---

[3] *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir. 1989) ("Under New York law, *where the contract specifies conditions precedent* to the right of cancellation, the conditions must be complied with." (Emphasis added) (internal punctuation omitted); *Morris v. Lee*, Nos. 08 CV 6673, 08 CV 6724, 2011 WL 721663, at *4 (S.D.N.Y. Feb. 24, 2011) (citing *Filmline* for the proposition that, "Under New York law, where a contract provides that a party *must fulfill specific conditions precedent* before it can terminate the agreement, those conditions are enforced as written, and the party must comply with them." (Emphasis added)); *Gulf Ins. Co. v. Fidelity & Deposit Co.*, 16 Misc. 3d 1116(A), 2007 WL 2162885, at *4 (Sup. Ct. N.Y. Cnty. July 20, 2007) ("Since Remco terminated Tri-State *without following the contractual procedures*, the termination was invalid. . . . Where a contract provides that a party must fulfill specific conditions precedent before it can terminate the agreement, those conditions are enforced as written and the party must comply with them." (Emphasis added)).

[4] Even though the Contract in the present case contained no explicit conditions precedent to termination, MTA notes that, "Conditions are not favored under New York law, and in the absence of *unambiguous language*, a condition will not be read into the agreement." *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12-CV-9412, 2014 WL 3368670, at *4 (S.D.N.Y. July 9, 2014) (quoting *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1100 (2d Cir. 1992)).

Five of the citations offered by Lockheed involve situations where the terminating party identified no fault at all on the part of the terminated party in the notice of default, or indicated unrelated grounds for default, and then, after being sued for breach by the terminated party, sought to assert fault-based grounds as bases for termination.[5] That is not the situation in which Lockheed finds itself. MTA's Default Notice provided substantial notice of Lockheed's many failings, and even then clearly stated that those failings identified in the Notice represented only a portion of Lockheed's true deficiencies.

Lockheed's final and most ancient citation – *Littlejohn v. Shaw*, 159 N.Y. 188 (1899) – is similarly unhelpful as it involves a refusal to accept purchased goods, a particular species of contract with its own precedents and concerns, and the defendants had earlier waived their ability to assert plaintiff's failure to satisfy all of the specific conditions precedent to the contract at issue. *Littlejohn*, 159 N.Y. at 191-192.

The discussion in *Primetime 24 Joint Venture v. DirectTV, Inc.*, No. 99 CIV 3307, 2000 WL 426396, (S.D.N.Y. Apr. 20, 2000), cited by Lockheed, is actually contrary to Lockheed's position. Lockheed even admits that this case involves a situation where this Court allowed for the addition of previously unspecified bases for termination. The court made clear in *Primetime*

---

[5] *See Leventhal v. New Valley Corp.*, No. 91 Civ. 4238, 1992 WL 15989 at *3 (S.D.N.Y. Jan. 17, 1992) (noting that defendant gave as its sole basis for prematurely terminating the severance agreement at issue the "severe financial problems" and "extremely tight cash position of the Corporation," but "[A]t no point during that [subsequent] conversation did [Defendant] claim that [Plaintiff] had failed to meet any of [Plaintiff]'s obligations under the Severance Agreement."); *Primetime 24 Joint Venture v. DirectTV, Inc.*, No. 99 CIV 3307, 2000 WL 426396, at *1 (S.D.N.Y. Apr. 20, 2000) (granting motion to amend pleadings to allege breach even though the terminating party only identified external conditions – "'recent court rulings and an FCC order' . . . [and] 'due to changes in regulations'" – in its termination letter); *Data Sys. v. Philips Bus. Sys., Inc.*, 78 Civ. 6015, 1986 WL 733, at *7 (S.D.N.Y. Jan. 6, 1986) (finding that the terminating party "neither stated nor in any way hinted or suggested that plaintiff's breaches or contract had anything to do with that commercial decision [to terminate]. On the contrary: PBSI offered plaintiffs words of encouragement and good cheer."); *Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*, 24 Misc. 3d 1222(A), 2009 WL 2163483, at *14 (Sup. Ct. Onondaga Cnty. July 17, 2009) (holding that the defendant's default notice contained "two very specified bases" and that the later-added basis for termination was premature "speculative" and completely unrelated to the bases set forth in its notice); *Bernhardt Lumber Co. v. Metzloff*, 113 Misc. 288, 289, 184 N.Y.S. 289, 290 (Sup. Ct. Erie Trial Term 1920) (finding that the terminating party based its nonperformance of a materials requirements contract solely on the external conditions existing during World War I as being disruptive to their performance, not on any conduct of the terminated party).

*24 Joint Venture* that, "New York's substantive law . . . precludes asserting additional reasons for having terminated . . . a contract only if a party either relied on the reasons for non-performance originally given, or could have cured its performance had the true grounds for repudiation been asserted earlier." *Id.* at 9. MTA has asserted no "additional reasons" for Lockheed's termination – the Default Notice provided ample bases for termination, encompassing the now-complained-of assertions – but even if it had, Lockheed can demonstrate no reliance or detriment based on the supposed absence of the explicit citation of the warranty provisions in the Notice or the content of the ten paragraphs in question. Lockheed's only claim of reliance in the Motion is absurd -- that it took time to prepare its woefully deficient cure response, which failed to adequately cure Lockheed's breaches as set forth in the Default Notice, and that therefore Lockheed missed out on the opportunity in its cure response to deny and argue unsuccessfully that it had not failed in the ways specified in the ten identified paragraphs from Messrs. Pezik's and Shields's trial affidavits. Motion, pp. 6-7, n.3.

Further, the court in *Primetime 24 Joint Venture* noted that the defendant reserved its rights to assert additional grounds for default, even though its initial termination letter included no fault-based grounds. *Primetime 24 Joint Venture*, 2000 WL 426396, at *9. MTA's Default Notice clearly states on its first page that it did not contain an exhaustive list of all of Lockheed's many failings. (See Argument Section C(3), above). Lockheed cannot credibly argue that it relied on four corners of the Default Notice to its detriment, when its myriad failings were well known to all parties for months prior to delivery of the Default Notice, and the Notice itself set forth that it would list only "some" of Lockheed's breaches.

E.  **Lockheed's Substantive Defense to MTA's Contention that it Violated the Warranty Provisions is Without Merit**

Lockheed also appears to predicate its argument in this in limine motion that MTA may not press a claim that Lockheed's breaches constituted a violation of the warranty provisions on its substantive defense that it did not violate these provisions.  (Motion at 2-3).  Specifically, Lockheed argues that the Contract warranties do not apply in this case because the MTA terminated the Contract prior to Substantial Completion.  The law, however, is clear that where a party repudiates its obligations under a contract, the non-breaching party need not await the time when performance might otherwise be due.  *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 394 n.8 (S.D.N.Y. 1999); *Rachmani Corp. v. 9 E. 96th St. Apartment Corp.*, 211 A.D.2d 262, 266-67, 629 N.Y.S.2d 382, 384-85 (1st Dep't 1995); *see also Schroders, Inc. v. Hogan Sys., Inc.*, 137 Misc. 2d 738, 522 N.Y.S.2d 404 (Sup. Ct. N.Y. Cnty. 1987) (Baer, J.) (breach of warranty claim permitted, notwithstanding that plaintiff had not accepted delivery, and warranty period had not begun, due to claim of non-compliant installation).

Lockheed's own cure response made clear that Lockheed had already or intended to violate these warranties, including III(B)(5) and III(B)(6), which specify that the software "will be fully compatible and will interface completely with each other Software program provided hereunder and with the Equipment, such that the Equipment and Software combined, will perform as a fully function System of Systems meeting *all of the requirements of the Contract Documents*," and that, "the Software will interface with other software program as required by the Contract Documents."  (JX 10.02 at 9).  Lockheed declared, in its cure response, that "Factory Acceptance Testing (FAT) is complete," (JX 7.1 at 22), despite numerous unresolved test failings and open variances, many of which identify ways in which the software is not "fully compatible" and "will [not] interface completely with each other Software program" as required

12

by the Contract Documents.  Lockheed further declared that Site Performance and Installation Testing (SPIT) and Site Integration and Systems Testing (SIST) were complete for MTAPD's Central C3 facility and B&T's C3 (JX 7.1 at 25), again despite numerous unresolved test failings and open variances, which impact system functionality and identify ways in which the software and equipment will not fully interface and are not fully contractually-compliant.[6]  And, most glaringly, Lockheed stated in its cure response its position that the MTA's Default Notice was nothing more than "a means to gain advantage in the litigation by declaring default before the Court can act on LM's request that the Court declare the Contract at an end." (JX 7.1 at 34).

Lockheed has not established any basis for precluding the breach of warranty provisions or any evidence at all on the grounds that it was not explicitly set forth in the Default Notice.

---

[6] *See also* Hughes ¶¶ 24, 63-81; Viviano ¶¶ 27-33, 39-41; and Hansen ¶¶ 24-28; detailing the incomplete state of testing at MTAPD and B&T despite Lockheed's declaration that FAT, SPIT and SIST testing were complete for these agencies.  Additionally, Lockheed protested that it would be complete with SIST at the remaining agencies if MTA had not delayed its installation of networks for LIRR, MNR, and NYCT.  However, Intergraph project manager John Breitbeil both testified that Lockheed never reached a stage in testing where the provision of the network, or lack thereof, would impact its ability to proceed.  *See* Breitbeil Tr. 302:3-303:11.

## III. <u>CONCLUSION</u>

Lockheed's Motion is an inappropriate motion in limine that fails to raise legitimate evidentiary issues in need of resolution prior to trial. The Motion is also factually and legally deficient, as set forth above. Accordingly, MTA respectfully requests that the Court deny the Motion in its entirety.

Dated:   New York, New York
         August 15, 2014

                                      HOGUET NEWMAN REGAL & KENNEY, LLP

                                      By: _____
                                          Ira J. Lipton (IL-4835)
                                          Marc A. Melzer (MM-0677)
                                          Helene R. Hechtkopf (HH-7402)
                                          Edwin Fragoso (EF-5501)
                                          10 East 40th Street
                                          New York, NY 10016
                                          Phone: 212-689-8808