UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCKHEED MARTIN TRANSPORTATION SECURITY SOLUTIONS, AN OPERATING UNIT OF LOCKHEED MARTIN CORPORATION,<br><br> Plaintiff,<br><br>-against-<br><br>MTA CAPITAL CONSTRUCTION COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>Defendants. | No. 09 CV 4077 (PGG)(GWG) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA,<br><br> Plaintiffs,<br><br>-against-<br><br>METROPOLITAN TRANSPORTATION AUTHORITY, MTA CAPITAL CONSTRUCTION COMPANY, NEW YORK CITY TRANSIT AUTHORITY, and LOCKHEED MARTIN CORPORATION,<br><br>Defendants. | No. 09 CV 6033 (PGG)(GWG) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO BAR EVIDENCE OR TESTIMONY REGARDING MTA DAMAGES**

HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
Phone: 212-689-8808

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ..................................................................................................................2

     A. Lockheed's In Limine Motion is More Appropriate for Post-Trial Argument ...................2

     B. MTA's Damages Claim Is in Accord with the Contract........................................................3

     C. MTA's Damages Claim Is in Accord with New York Law. ...............................................4

III.   CONCLUSION .................................................................................................................7

# **TABLE OF AUTHORITIES**

## **Cases**

*AM-Haul Carting, Inc. v. Contractors Cas. & Sur. Co.*,
33 F. Supp. 2d 235 (S.D.N.Y. 1998)..................................................................................6

*Brushton-Moira Centr. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*,
91 N.Y.2d 256, 669 N.Y.S.2d 520 (1998) .........................................................................5

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999) .................................4

*George A. Fuller Co. v. Kensington-Johnson Corp.*, 234 A.D.2d 265,
650 N.Y.S.2d 779 (2d Dep't 1996)....................................................................................6

*Luce v. United States*, 469 U.S. 38 (1984)....................................................................................2

*Mazzariello v. Davin*, 252 A.D.2d 884, 886, 676 N.Y.S.2d 354 (3d Dep't 1998) ..........................6

*Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492 (S.D.N.Y. 2013)...............................4

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003).........................................4, 5

*Sarnelli v. Curzio*, 104 A.D.2d 552, 53, 479 N.Y.S.2d 257 (2d Dep't 1984).................................6

*Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 320 N.Y.S.2d 225 (1971) .......................................5

*United States v. Chan*, 184 F. Supp. 2d 337 (S.D.N.Y. 2002).......................................................2

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34 (2d Cir. 2004)............................6

*Wolff & Munier v. Whiting-Turner Contracting Co.*, 946 F.2d 1003 (2d Cir. 1991) .....................6

I. **INTRODUCTION**

In this in limine motion, Lockheed appears to argue that MTA is not entitled to recover the $59 million it has already lost in bringing the system left by Lockheed to an initial operating capability following Lockheed's default. Lockheed seems to suggest that MTA is limited to the value of the work that was not completed as of the time of termination and contends that the value of the work is measured by unspent funds remaining under Lockheed's Contract, *i.e.*, $37 million. Although it is not entirely clear what Lockheed is arguing, it appears to be suggesting that, since the $37 million represented the value of the remaining work, and that MTA has already received that, MTA has no damages. Stated another way, MTA is entitled only to its own unspent Contract funds as of the date of termination, and cannot recover what it expended post-default over and above that balance (*i.e.*, the $59 million). (*See* Lockheed Motion in Limine to Bar Evidence or Testimony Regarding Claimed MTA Damages ("The Motion") at pp. 1-2.)

Lockheed's Motion is absurd; it completely ignores the Contract and misconstrues the law. Under Article 7.02 (b) of the Contract's Terms and Conditions, Lockheed is liable for the entire amount expended by MTA to complete the work. (JX10.4 at p. 44). MTA has incurred to date $59 million over and above the remaining Contract balance to bring the work to a partial state of completion, although with substantial missing functionality. Trial Affidavit of Joseph Christen ("Christen Aff."), at ¶ 22. (MTAX1177). Based on the opinion of MTA's software engineering expert, Howard C. Reith, the cost of bringing the IESS system to a full state of contractual compliance would take an additional $117 million. Christen Aff. at ¶ 19; Trial Affidavit of Howard Reith ("Reith Aff.") at ¶¶ 16-17 (MTAX1197). MTA is entitled to these sums pursuant to the terms of the Contract, which Lockheed has completely ignored.

1

Further, as set forth below, Lockheed has overlooked New York law governing the measure of damages for breach of a construction contract. The rule in New York is well settled that the injured party – here, the Project owner – is entitled to the actual cost of completing the work, including post-default expenses and, to the extent that there are items where the costs have not yet been incurred, then owner is entitled to be compensated based on estimates. That is precisely how MTA has calculated its damages here – via a meticulously documented and explained accounting of the post-default expenses it has incurred to achieve a partial completion; and an exhaustive analysis by its expert as to the remaining work that needs to be done to satisfy the original contract terms.

Lockheed's motion is misguided and should be denied.

## II.  ARGUMENT

### A. Lockheed's In Limine Motion is More Appropriate for Post-Trial Argument

Lockheed raises issues in this motion in limine that are more appropriate for summary judgment or in pre- or post-trial memoranda. "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The court in *Chan* went on to hold that, "Evidence should be excluded on a motion *in limine only* when the evidence is *clearly inadmissible on all potential grounds*." *Id.* (Emphasis added). Lockheed's motion, dressed up as an evidentiary motion, is really a motion to preclude MTA's damages claim based on its (entirely incorrect) view of how damages for this breach of contract claim should be measured.

Besides tendering misguided legal arguments, Lockheed also makes a series of unsupported factual assertions that have no place in a motion in limine. Thus, for example

2

Lockheed alleges that damages sought by MTA are "due to its own continued mismanagement" (Motion at 3); that MTA abandoned the IESS project in favor of a different project (Motion at 2-3); and that "the work was not commensurate" with what was called for by the contract (Motion at 2). These are all disputed (indeed, baseless) factual assertions appropriate for resolution at trial, not via an in limine motion.

Lockheed also suggests that the amounts claimed by MTA are not justified. (Motion at 3). MTA will prove all of the sums it has expended to date, and estimates of the sums necessary to complete the work at trial. The appropriate way for Lockheed to challenge MTA's claims is to present evidence at trial that would prove these expenses were not justified or unreasonable. Lockheed, in fact, proffered no expert evidence during discovery, or in their defense case-in-chief on what those costs should have been, if they are too high. In any case, these are not appropriate issues for resolution via an in limine motion.

As such, Lockheed has not presented a proper motion in limine.

B. **MTA's Damages Claim Is in Accord with the Contract**

Lockheed's Motion completely ignores that the Contract it signed onto makes explicit provisions as to how damages are to be measured in the event of the contractor's default. Article 7.03 is entitled "Remedies in the Event of Default." (JX10.4 at 43). Article 7.03(b) governs damages, and provides:

> If a Default occurs, Contractor shall be liable for all damages resulting or from the Default, including the difference between the Total Contract Price and the amount actually expended by the Authority to complete the Work … The Contractor shall also remain liable for any other liabilities and claims related to the Contract.

3

(JX10.4 at 44). The language of the Contract could not be any clearer. The precise damages incurred by MTA and claimed in this litigation to which Lockheed objects are authorized by the parties' Contract.

### C. MTA's Damages Claim Is in Accord with New York Law.

To attack MTA's damages, Lockheed relies on language governing the measure of damages in cases involving contracts for the issuance of stocks and warrants. In so doing, Lockheed fails to give any consideration as to the type of contract that is at issue in this litigation. "Calculating the appropriate amount of damages is a two-step process: (1) 'determining the proper rule for calculating damages on . . . a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 500 (S.D.N.Y. 2013), *quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "[C]ourts look to approved awards in similar cases as guideposts in fashioning appropriate damage awards." *Norcia,* 980 F. Supp. 2d at 500-501 (citations omitted).

The cases cited by Lockheed concern entirely different types of contracts than the one at issue here and are therefore completely inapposite. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003) concerned a claim by plaintiff investment firm against a company shareholder for stock warrants it was entitled to receive in consideration for financial advisory services rendered to the shareholder. Defendant failed to deliver the warrants when due, breaching the terms of their agreement. Plaintiff claimed that it was not limited to the value of the warrants as of the date of the breach, alleging it would have held the warrants to a point in time well after the breach actually occurred. The impact of that position, of course, is that plaintiff would be entitled to receive greater damages since the market value of the warrants

4

increased after the breach. The Second Circuit rejected plaintiff's position. Holding that warrants are similar to stock options, the Court cited to the New York rule that in a breach of contract action involving stock options, damages are measured as of the date of the breach. *Oscar Gruss*, 337 F. Supp. at 197. The Court further noted that the rule is the same as "when the breach of contract is non-delivery of shares of stock." *Id.*, quoting *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145, 320 N.Y.S.2d 225, 232 (1971). *Simon*, the other stock compensation case cited by Lockheed, holds that a cause of action for the failure to deliver stock should not be converted into a right to carry a "market 'call' or 'warrant'" in order to allow the plaintiff the "highest interim or trial-time value." *Simon*, 28 N.Y.2d at 146, 320 N.Y.S.2d at 232.

Both *Oscar Gruss* and *Simon* make clear that the courts have fashioned rules for the measure of damages based on the specific type of breach of contract case in question. The factors that animate the measure of damages in cases involving a failure to delivery stocks or warrants (*e.g.*, not allowing plaintiff's to enhance its damages by taking advantage of the stock market) have no application to a case where a contractor on a construction job defaults on its obligations. In such a case, New York Courts have fashioned a different rule that makes whole the injured party in the unique context of a construction contract.[1]

Thus, Lockheed looks to the wrong cases for the measurement of damages, overlooking the well-established body of law governing the measure of damages to be awarded project

---

[1] The only other case cited by Lockheed, *Brushton-Moira Centr. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 262, 669 N.Y.S.2d 520, 522 (1998), is not to the contrary. In that case, the plaintiff school district sought to recover the cost of repairing or replacing defective panels installed by defendant, who had completed the work. The Court held that damages should be determined based on the cost of repair replacement as of the date of the breach (with interest). *Id*. *Brushton-Moira* concerns a discrete cost replacement or repair item on a completed contract, and not completion costs on a construction project, where the rule is well-settled that the injured party is entitled to the post-default cost of completing the work – a sum which, by its nature, is not readily ascertainable as of the date of the breach.

owners for the default on a construction contract. Under New York Law, the proper measure of damages where a contractor defaults on a construction contract "is the difference between the contract price and the cost of completing the work left undone" which, in practice, is more "appropriately stated to be the difference between the amount remaining due and owing under the original agreement and the actual cost of completing the work required by the Contract." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 68-69 (2d Cir. 2004), *quoting Sarnelli v. Curzio*, 104 A.D.2d 552, 53, 479 N.Y.S.2d 257, 258 (2d Dep't 1984); *see also Mazzariello v. Davin*, 252 A.D.2d 884, 886, 676 N.Y.S.2d 354, 356 (3d Dep't 1998) ("[i]t is well settled that the proper measure of damages in cases involving the breach of a construction contract is 'the difference between the amount due on the contract and the amount necessary to properly complete the job or to replace the defective construction, whichever is appropriate.'") (citation omitted).

In determining the cost of completion, it is the actual cost incurred "from the date of the default forward" that governs. *Braspetro*, 369 F.3d at 68. Estimates as to expenses not yet incurred are appropriate evidence of damages, subject to correction if the actual costs ultimately turn out to differ, *AM-Haul Carting, Inc. v. Contractors Cas. & Sur. Co.*, 33 F. Supp. 2d 235, 247 (S.D.N.Y. 1998), but otherwise, the injured party is entitled to recover its actual costs incurred to the extent that the actual cost of completion is available. *Id.*, *citing George A. Fuller Co. v. Kensington-Johnson Corp.*, 234 A.D.2d 265, 267, 650 N.Y.S.2d 779, 781 (2d Dep't 1996); *see also Braspetro*, 364 F.2d at 69 ("District Court was correct in awarding Obligees their actual costs incurred in completing the Contracts . . . ); *Wolff & Munier v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1001 (2d Cir. 1991) (holding that it was error for district court

to award damages based on estimation; amount of completion costs incurred is the appropriate measure).

Accordingly, all of Lockheed's assumptions in its Motion are incorrect. Thus Lockheed opens with a statement that "the relevant question is what would MTA have incurred had Lockheed Martin been permitted to perform the remainder of the Contract." (Motion at 1.) That has nothing to do with how damages are measured for the breach of the contract at issue in this litigation. Lockheed also complains that "MTA seeks to recover and to introduce into evidence and testimony regarding what it actually expended since declaring Lockheed Martin to be in default and terminating the Contract . . ." (Motion at 2). Yet, this is precisely what MTA is entitled to do under the Contract and under New York Law. Lockheed also states that "MTA should be barred from presenting any evidence or testimony regarding costs incurred or expenditures made after the date it declared Lockheed to be in default" (Motion at 3), but again, that is precisely what MTA is entitled to do.

There is no legal or contractual basis for Lockheed's motion in limine concerning MTA's claim for damages or the evidence MTA submits in support its claim.

### III. CONCLUSION

Lockheed's Motion is an inappropriate motion in limine that fails to raise legitimate evidentiary issues in need of resolution prior to trial. The Motion is also without factual or legal; basis. Accordingly, MTA respectfully requests that the Court deny the Motion in its entirety.

Dated: New York, New York
August 15, 2014

                                                  HOGUET NEWMAN REGAL & KENNEY, LLP

By: _____
     Ira J. Lipton (IL-4835)
     Helene R. Hechtkopf (HH-7402)
     Marc Melzer (MM-0677)
     Edwin Fragoso (EF-5501)
     10 East 40th Street
     New York, NY 10016
     Phone:  212-689-8808