UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCKHEED MARTIN TRANSPORTATION SECURITY SOLUTIONS, AN OPERATING UNIT OF LOCKHEED MARTIN CORPORATION,<br><br>      Plaintiff,<br><br>      -against-<br><br>MTA CAPITAL CONSTRUCTION COMPANY and METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>      Defendants. | No. 09 CV 4077 (PGG)(GWG) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, FEDERAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA,<br><br>      Plaintiffs,<br><br>      -against-<br><br>METROPOLITAN TRANSPORTATION AUTHORITY, MTA CAPITAL CONSTRUCTION COMPANY, NEW YORK CITY TRANSIT AUTHORITY, and LOCKHEED MARTIN CORPORATION,<br><br>      Defendants. | No. 09 CV 6033 (PGG)(GWG) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE MTA'S UGOS DATABASE**

HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, NY 10016
Phone: 212-689-8808

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ...........................................................................................1

II. ARGUMENT ..................................................................................................2

    A.  The UGOS Database Is Relevant .......................................................2

    B.  The UGOS Database is Not Inadmissible under FRE Rule 403 ............................5

    C.  The UGOS Database Is A Business Record And Thus A
        Hearsay Exception ..............................................................................8

III. CONCLUSION ..............................................................................................11

# **TABLE OF AUTHORITIES**

## **Cases**

*Feesers, Inc. v. Michael Foods, Inc.*, No. 1 CV-04-0576,
2008 WL 4890030 (M.D. Pa. Nov. 12, 2008) ................................................................................6

*Old Chief v. United States*, 519 U.S. 172 (1997) ........................................................................ 4

*Phoenix Assocs. III v. Stone,* 60 F.3d 95 (2d Cir. 1995) ..........................................................9, 10

*United States v. Baccollo,* 725 F.2d 170 (2d Cir. 1983) .................................................................6

*United Sates v. Birney,* 686 F.2d 102 (2d Cir. 1982) ..................................................................4, 8

*United States v. Citron,* 783 F.2d 307 (2d Cir. 1986) ....................................................................7

*United States v. Lewis*, 594 F.3d 1270 (10th Cir. 2010) ............................................................6, 7

*United States v. O'Connor,* 237 F.2d 466 (2d Cir. 1956) ...............................................................7

*United States v. Reyes,* 157 F.3d 949 (2d Cir. 1998) .................................................................. 10

## **Rules**

Fed. R. Evid. 401 ......................................................................................................................1, 4
Fed. R. Evid. 403 ................................................................................................................1, 5, 6, 8
Fed. R. Evid. 803(6) ............................................................................................................ 2, 8, 9, 10

I.  **INTRODUCTION**

Lockheed filed a Motion in Limine asking that the Court exclude MTAX1072, which is a database known as the Uniform General Orders System, or "UGOS." The UGOS database is made and kept in the regular course of business by MTA New York City Transit ("NYCT") and "is used to record requests for access to work on NYCT's property and keep track of when access has been granted or denied, as well as the date and circumstances under which access occurs." (*See* MTAX 1190, Trial Affidavit of Suzanne Michelle, dated July 9, 2014, ("Michelle Aff.") at ¶¶3, 10). The database is used to coordinate access to NYCT work sites among NYCT's contractors, who must obtain a "General Order" from NYCT to divert trains (which run on a 24/7 basis) from areas where work is planned. Michelle Aff., dated July 9, 2014, at ¶¶4-8 (MTAX1190). The UGOS database produced by MTA included information relating to tens of thousands of contractor diversion requests and corresponding information relating to those requests, including Service Plans and General Orders ("GO's") issued, among other information. Michelle Aff., dated July 9, 2014, at ¶ 8 (MTAX 1190). From this data, one can determine whether Lockheed received "diversions" at rates consistent with what other contractors experienced; and whether Lockheed had a tendency to cancel its diversion requests and approved GO's at a greater rate compared to other contractors. See, PMA Consultants Expert Report on Analysis of Project Delay (Revised), dated February 3, 2012 ("PMA Report") at 79-85 (MTAX1066.)

Lockheed argues that the UGOS database (i) is not relevant under Fed. R. Evid. 401; is otherwise inadmissible under Fed. R. Evid. 403; and (ii) is hearsay. Its motion should be denied. The UGOS database, and summary charts derived from the database which appear in one of MTA's expert reports, are indeed relevant to Lockheed's contentions in this litigation; there is

1

nothing prejudicial, confusing, misleading, delay-causing, wasteful or cumulative about the database; and it constitutes a "business record" and is therefore admissible as an exception to the hearsay rule under Fed. R. Evid. 803(6).

## II.   ARGUMENT

### A.   The UGOS Database Is Relevant

To understand the relevance of the UGOS database to Lockheed's claims in this litigation, a brief outline of the contractual provisions governing a contractor's access to track areas is in order.

The contract between MTA and Lockheed ("Contract") provides express limitations on the contractor's access to MTA property to perform work, including, in particular, access to railroad tracks. For example, the Contract notified Lockheed that "[t]he Railroad is in use and will be in continuous operation during the performance of the Work hereunder" (Contract Spec. §1D1.4.1 (a)) (JX12.03); that it is anticipated that work will be performed "without interruption of or change in the regular schedule of operations of trains on the Railroad" (*id.*); and that the Contractor "shall reasonably expect due to factors inherent in operating railroads . . . that it may at times not be allowed onto the site and/or will be delayed in such access during the period of performance of the Contract." Special Conditions ("SC") 17(A) (JX10.05).

To obtain access to NYCT railroad track areas, the Contractor was instructed to obtain written permission from NYCT by requesting a "diversion of train service" on a prescribed "Service Diversion Request" form.  Such requests were to be made 6-weeks in advance.  If approved, NYCT would issue a "General Order" or "GO" which would "restrict the use of a track in various ways or [] change the normal operation of the Railroad." Contract Spec.

§1.4.5(a) (JX12.03). NYCT (as well as the other operating agencies) reserved the right to cancel any services, including GO's, without incurring any liability. SC 17(A)(5) (JX10.05).

Lockheed was further advised via the Contract, that compensation for delay or cancellation of supplied services (e.g., General Orders) is limited to the added cost due to the idle time of electricians and/or laborers on site at the time of delay or cancellation. Sums due from MTA for such delays or cancellation were capped at $1 million, and the Contract was explicit that, beyond that provision, the contractor was otherwise entitled to no "impact costs for service-related delays or claims for failure to provide access to the work site . . ." Special Conditions 17(A)(1), 17(A)(4) and 17(A)(7) (JX10.05).

Lockheed has taken the position in this litigation that MTA breached the Contract by "unnecessarily or unreasonably delaying completion of the Project by failing to schedule and provide access to the URTs and ERTs to Lockheed Martin." Amended Complaint, ¶136. Lockheed's scheduling expert, Douglas Peterson of Lovett Silverman Construction Consultants, continuing Lockheed's theme, reiterated in his Trial Declaration ( as in his prior expert report) that MTA failed to secure adequate access to the NYCT subway tunnels in order for Lockheed to perform its work. (*See, e.g.*, Peterson Declaration at ¶¶ 48, 50, 13). As such, Lockheed appears to claim, notwithstanding the above-referenced contractual provisions explicitly precluding claims based on the alleged denial of access to track areas, that it is nonetheless entitled to maintain a breach of contract claim stemming from an alleged denial of track access. To the extent that such a claim can be made, which MTA disputes, it could only be predicated on some notion of reasonableness. As to any such claim, the UGOS database that Lockheed seeks to exclude provides a basis by which the Court may determine what would be considered reasonable access, particularly in light of the Contract's clear notification that access would be

limited, that the contractor would have to request diversions well in advance, and that requests could be denied.

A review of the UGOS data contained within the UGOS database for the years 2007 – 2009 (the years that Lockheed submitted requests to New York City Transit ("NYCT") to perform work on the Project) shows that Lockheed obtained similar or in some cases better access than other contractors performing work for NYCT, and that the access provided to Lockheed by NYCT was often not utilized by Lockheed. In fact, the UGOS data indicates that Lockheed cancelled many of its own its own access requests and did so at a greater rate of frequency than other contractors. Specifically, during the period in which Lockheed was seeking access to the tracks (2007-2009), the UGOS shows that Lockheed's diversion requests were cancelled by MTA (or others) at roughly the same rate as that other contractors experienced (17.2% of the time for Lockheed compared to 17.7% of the time for other contractors); that Lockheed cancelled its own diversion requests at a greater rate than others (10.3% compared to 7.6%); that Lockheed cancelled its own NYCT-approved service plans at a rate of almost 2.5 times greater than that of other contractors (24.9% of the time for Lockheed versus 9.5% of the time for other contractors); and that Lockheed's NYCT-approved service plans were cancelled by MTA (or others) less frequently than what other contractors experienced (7.8% of the time for Lockheed compared to 9.3% of the time for others). PMA Report at 79-85 (MTAX1066).

The test of relevance is a flexible one, requiring only that the proffered evidence make the existence of a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401; *United States v. Birney*, 686 F.2d 102 (2d Cir. 1982); *Old Chief v. United States*, 519 U.S. 172 (1997).  The information derived from the UGOS database is plainly relevant.  It tends to undermines Lockheed's apparent contention that it was somehow unreasonably denied access to

work in the track areas. To the contrary, the UGOS database demonstrates that Lockheed was provided comparable access to other contractors during the time period at issue, and that Lockheed failed to take advantage of the access it was given, cancelling its opportunities at a significantly greater rate than others.

It seems clear, then, that the purpose of Lockheed's Motion is not the removal of irrelevant material, but a transparent effort to limit the evidence this Court hears on its access claims to its own unsubstantiated allegations. The Motion to exclude UGOS is nothing more than Lockheed's attempt to avoid having a light shine on one of its core allegations.

### B. The UGOS Database is Not Inadmissible under FRE Rule 403

Lockheed further argues that the Court should exclude the UGOS database under Fed. R. Evid. 403 because its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Motion at 5. To support this argument, Lockheed makes several unfounded or misguided points.

First, Lockheed argues that MTA "has made no effort to pare down what is and is not relevant in the UGOS database. To the contrary, rather than identify the specific diversion requests and General Orders relevant to this case, MTA seeks to move the entire UGOS database into evidence." Motion at p. 5. As stated above, Lockheed's record of diversion requests, GOs issued, and cancellations compared to the record of all other contractors seeking access during the same time period is highly relevant in that it undermines Lockheed's apparent contention that it was denied reasonable access to the track areas. If, as MTA contends, the information derived from the database is indeed relevant, then for Lockheed to persist in insisting that the database itself is somehow too large or contains irrelevant data reflects a lack of understanding as to how

5

a database is used. The database is the very thing from which the information set forth in the PMA report is derived. "Paring it down" would result in a different database than the one PMA used. Of course, if Lockheed were to stipulate that the data presented by PMA from the UGOS database is correct, then it could argue that the database is no longer necessary. Until such time, however, the UGOS database is the tool that PMA analyzed and drew the information for its report, and the summaries presented therein, which blows the proverbial whistle on Lockheed's complaint about track access.[1]

Relatedly, Lockheed argues that "[t]he sheer size of that database makes it impossible for Lockheed Martin to determine what, if anything, from that database MTA intends to refer to at trial." Motion at p. 5. Lockheed goes further and asserts that "MTA's exhibit list constitutes the proverbial trial by ambush." Motion at p. 5. Yet, in the very same Motion, Lockheed asserts that it "assum[es] the database will be used to support certain statements in the hearsay report of MTA's expert Gary Jentzen (MTAX1066 at 79-84), comparing access by different contractors to Lockheed Martin's access to perform work . . ." Motion at p. 0. Although the expert report of Mr. Jentzen in not hearsay (*see* MTA's Memorandum in Opposition to Lockheed's Motion In Limine Regarding MTA's Expert Reports), Lockheed's assumption is otherwise correct. The database is being used as the predicate for Mr. Jentzen's analysis which includes a summary presentation of facts from the UGOS database. The database is not being submitted as an exhibit for some other purpose. There is no trial by ambush here.[2]

---

[1] Even if the Court were to determine that some data in UGOS is irrelevant, there would be no prejudice, waste of time, or undue burden to the parties or the Court in keeping the database intact. *See Feesers, Inc. v. Michael Foods, Inc.*, No. 1 CV-04-0576, 2008 WL 4890030, at *1-2 (M.D. Pa. Nov. 12, 2008) (holding that there is no reason to redact a database disc to eliminate material that had previously been deemed irrelevant under Fed. R. Evid. 403).

[2] Contrary to what Lockheed suggests in its footnote, MTA provided Lockheed with both the UGOS database and summary evidence based on the material in the database. In this regard, the courts have held that summary charts are admissible where all of the evidence contained in the charts is supported by evidence already admitted. *United States v. Baccollo,* 725 F.2d 170, 173 (2d Cir. 1983); *see also United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir.

Along the same lines, Lockheed asserts that its "knowledge and understanding of the UGOS database is limited." Motion at p. 1. As set forth in the accompanying Declaration of Ira Lipton, to the extent Lockheed's knowledge and understanding is limited (a point we do not concede), it is due entirely to Lockheed's failure to make the effort to understand the database or conduct any discovery. The UGOS database was produced to Lockheed on September 30, 2011. Summaries of the data were presented by MTA's scheduling and delay experts, PMA Consulting, on February 3, 2012. Counsel for Lockheed objected to the use of the database two months later, on April 5, 2012. What followed, between April and August, 2012, was a series of letters and emails between counsel, as well as telephone conferences, where MTA identified the database administrator (Ms. Michelle), presented to Lockheed instructions on how to use the database, and even presented the precise steps PMA followed to derive the information it presented in its February 3, 2012 report. MTA suggested that if Lockheed wanted further information, it could issues interrogatories or seek depositions. Lockheed never sought any discovery on UGOS, and it took PMA's deposition (Gary Jentzen) on January 31 and February 2, 2013. Lipton Decl. at ¶¶ 3-18. There is no reason for Lockheed to be lacking knowledge on UGOS or the manner in which it is being used by MTA in this litigation, and this is indeed a far cry from "trial by ambush."

---

2010) ("[t]he purpose of requiring the party offering a summary to make the underlying documents available to the opposing party is to enable the opposing party to check the accuracy of the summary"). As required, the UGOS summary charts provided by MTA "fairly represent and summarize the evidence upon which they are based." *United States v. Citron,* 783 F.2d 307, 316 (2d Cir. 1986) (quoting *United States v. O'Connor,* 237 F.2d 466, 475 (2d Cir. 1956)).

Lockheed also appears confused as to the nature of MTA's exhibits. In providing summary evidence, MTA is required to provide underlying documentation. MTA has done this by providing the UGOS database from which the summary charts were generated. Lockheed has never requested any further underlying documentation, and, to the extent that it exists, such documentation would be cumulative since the identical information from any such documents would be found in the UGOS database. *See Lewis*, 594 F.3d at 1282 (to the extent that the underlying documentation exists in two forms, as a database and individual documents, there is no reason to give the opposing party both forms, since a "database may make it easier for the opposing party to perform that check.")

Finally, whatever "unfair prejudice" or any other complaint Lockheed may toss out under Fed. R. Evid. 403, the Court in any case, "must set about the task of weighing probative value against unfair prejudice" and only exclude evidence when "probative value is *substantially* outweighed by unfair prejudice." *Birney,* 686 F.2d at 106 (emphasis added).

Here, MTA argues that the evidence is of significant probative value and that it far outweighs any prejudice to Lockheed, which is slight or non-existent altogether. The UGOS database provides an objective basis upon which MTA can demonstrate that Lockheed was not treated any differently than any other contractor working within the MTA system, and that Lockheed's claims of unreasonable denial of access are without merit. At the same time, Lockheed misunderstands the nature of the database and how it is being used by repeatedly claiming that it is "massive." UGOS is being introduced by MTA for the simple purpose of establishing a basis for the highly relevant summaries presented its expert witness. There is no prejudice to Lockheed in MTA's doing so.

## C. **The UGOS Database Is A Business Record And Thus A Hearsay Exception**

Contrary to Lockheed's assertions, MTA, through the testimony of Suzanne Michelle, the custodian of the UGOS database, has properly laid a foundation establishing the UGOS database as a business record under Fed. R. Evid. 803(6).

In accordance with Fed. R. Evid. 803(6), the UGOS records of access were made by employees of the Operations Planning department of NYCT, under the supervision of Suzanne Michelle, contemporaneously with the access requests, and from information transmitted by Lockheed and MTA. Michelle Aff., dated July 9, 2014, at ¶¶ 2-4, 6-8 (MTAX1190). Making these records was the regular practice of NYCT for the purpose of recording and tracking

8

contractor access to NYCT property, and the record was kept in the course of a regularly conducted activity of NYCT business. Michelle Aff., dated July 9, 2014, ¶¶ 3-8 (MTAX1190).

Lockheed is wrong in its claim that Ms. Michelle does not identify "who transmits or records that information into the UGOS database, making it impossible to determine if that person has the requisite knowledge of the information being recorded." Ms. Michelle clearly states that the access entries in the UGOS database are planned and created by NYCT's Operation Planning group, under her own supervision, with information transmitted from the contractor, here Lockheed. Michelle Aff., dated July 9, 2014, ¶ 4 (MTAX1190). If Lockheed is interpreting the demands of Fed. R. Evid. 803(6) as requiring Ms. Michelle to list the names of individual employees of the Operations Planning group, they are mistaken. *See Phoenix Assocs. III v. Stone,* 60 F.3d 95 (2d Cir. 1995) (finding that custodian of business record did not have to identify specific employee responsible for preparation of record in order to lay sufficient foundation under business records exception to hearsay rule).

Lockheed further questions the reliability and trustworthiness of the UGOS database based on a statement in Ms. Michelle's Trial Affidavit that there are some General Orders, in particular, those issued under emergency circumstances, which are not included in UGOS. Lockheed does not explain why this fact would make the database unreliable or untrustworthy. In a database reflecting 50,000 service plans, a small number of omissions is surely to be expected. In any case, accompanying this memorandum is a Declaration in Opposition from Ms. Michelle, dated August 14, 2014, ("Michelle Declaration"), wherein she states in greater detail the nature of the items that would not be recorded. As Ms. Michelle attests, the percentage of GO's that do not get recorded is extremely low; and these unrecorded occasions would have no impact at all on the diversion requests and service plans in place for contractors. *See* Michelle

9

Declaration, dated August 14, 2014, ¶¶ 5-6. Accordingly, there is no basis whatsoever for Lockheed's assumption that the small percentage of GO's that are unrecorded, particularly given the unique circumstances pertaining to those occasions, renders the UGOS database unreliable or untrustworthy.[3]

In sum, the business records exception to the hearsay rule favors admission of evidence rather than its exclusion, if the evidence has any probative value at all. Fed. R. Evid. 803(6); *Phoenix Assocs. III,* 60 F.3d at 101. As detailed above, the fact that Lockheed received access to track areas in response to requests at rates no less frequent than other MTA contractors; that it was denied requests or had requests cancelled at rates no greater than other MTA contractors; and that it cancelled its own requests and approved service plans at far higher rates than other MTA contractors, is highly relevant to Lockheed's claim that it was unreasonably denied access to the tracks, impeding its work. In light of this, Lockheed has not raised a valid reason for why the UGOS database and associated summaries should be excluded.

---

[3] Although nothing material is truly missing from UGOS and Lockheed points too irregularities, it bears noting that the mere fact that a business record is missing entries or contains irregularities is not a sufficient basis to conclude that the business record is not trustworthy under Fed. R. Evid. 803(6). *See United States v. Reyes,* 157 F.3d 949, 953 (2d Cir. 1998).

### III.     CONCLUSION

By reason of the foregoing, MTA respectfully requests that the Court deny Lockheed's motion to preclude the UGOS database (MTAX1072) and its associated summary charts set forth in the PMA Report of February 3, 2012.

Dated:      August 15, 2014
            New York, New York

                                        HOGUET NEWMAN REGAL & KENNEY, LLP

                                    By: _____
                                        Ira J. Lipton (IL-4835)
                                        Helene R. Hechtkopf (HH-7402)
                                        Marc Melzer (MM-0677)
                                        Edwin Fragoso (EF-5501)
                                        10 East 40th Street
                                        New York, NY 10016
                                        Phone: 212-689-8808