NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

MICHAEL CHARTAN
DIRECT DIAL: +1 212 692 1016
PERSONAL FAX: +1 212 253 4271
E-MAIL: mchartan@duanemorris.com

*www.duanemorris.com*

BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

October 2, 2014

**VIA ECF AND FACSIMILE**

Honorable Paul G. Gardephe
Thurgood Marshall United States Courthouse
40 Foley Square, Chambers 2204
New York, New York  10007-1312

> Re:   **Lockheed Martin Corporation, et al. v. MTA, et al.**
>        **Nos. 09 CV 4077 and 09 CV 6033(PGG) (GWG)**

Dear Judge Gardephe:

Our firm is counsel for Plaintiff Lockheed Martin Corporation ('Lockheed Martin") and will be trial counsel for the Surety Plaintiffs during the trial.  We write in response to Mr. Lipton's letter, dated October 1, 2014.  Counsel raises two matters in his letter concerning (i) when Craig Hughes, Roger Nebel and Louis DeStefano will testify and (ii) a request to preclude Michael Gress of Five Star Electric from testifying at trial.

A.   Testimony by Hughes, Nebel and DeStefano

Mr. Hughes will be accommodated and he will testify on October 16, 2014.  On October 20, 2014, Mr. Nebel will testify and Mr. DeStefano will follow on the 20th.  If necessary, Mr. DeStefano will complete his testimony on October 21st.  Therefore, this has been resolved.

B.   Testimony by Gress

When the joint pretrial order and joint amended pretrial orders were filed, Lockheed Martin stated that Steven Smith from Five Star Electric would either provide a declaration or be a live witness.  We had been informed by Five Star's attorney that Mr. Smith would provide the declaration or be the live direct witness.  Subsequently, we were told that Michael Gress would be the Five Star witness.  Mr. Gress, however, was out on extended medical leave and returned

Honorable Paul G. Gardephe
October 2, 2014
Page 2

to work on September 17, 2014.  Today we received Mr. Gress' signed declaration, a copy of which is included with our letter.  We have delivered it to counsel for MTA.

We submit that there is no prejudice to the MTA defendants.  Mr. Gress' declaration is nine pages.  In his declaration, Mr. Gress testifies to a few matters not covered during his deposition, one of which is to authenticate some Five Star business records.  In addition, Mr. Gress discusses a handful of exhibits all of which were included in Lockheed Martin's trial exhibits delivered on July 10, 2014.  Some of these exhibits are not objected to by MTA.  A portion of his declaration is about work Five Star performed for MTA post-termination under completely new agreements even though Five Star was already under contract with Lockheed Martin to perform the work.  His testimony, in part, is based on MTA's own trial exhibits.  MTA is in a better position with Mr. Gress' declaration in hand prior to trial than if there was live direct testimony because they have an opportunity to prepare cross-examination.

I spoke to Mr. Lipton earlier today.  He is reviewing the declaration.  My understanding is that he will inform the Court of his position.  However, we believed it prudent to immediately inform the Court that the declaration had been received.

In closing, we respectfully request that Mr. Gress' testimony by declaration be heard as part of Lockheed Martin's case-in-chief.  Thank you for your attention to this matter.

Respectfully,

Michael Chartan (MC 4609)

MC:ag
cc:      Ira J. Lipton, Esq.,
         Adam P. Friedman, Esq.,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

LOCKHEED MARTIN TRANSPORTATION SECURITY
SOLUTIONS,  AN OPERATING UNIT OF LOCKHEED        No. 09 cv 4077 (PGG)(GWG)
MARTIN CORPORATION,

                          Plaintiff,

                -against-

MTA CAPITAL CONSTRUCTION COMPANY and
METROPOLITAN  TRANSPORTATION  AUTHORITY,

                          Defendants.
-------------------------------------------------------------------- x    No. 09 cv 6033 (PGG)(GWG)

TRAVELERS CASUALTY AND SURETY COMPANY
OF AMERICA, FEDERAL INSURANCE COMPANY,            **DECLARATION OF**
and SAFECO INSURANCE COMPANY OF AMERICA,           **MICHAEL J. GRESS**

                          Plaintiff,

                -against-

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA CAPITAL CONSTRUCTION COMPANY, NEW
YORK CITY TRANSIT AUTHORITY, and LOCKHEED
MARTIN CORPORATION,

                          Defendants.
-------------------------------------------------------------------- x

     I, MICHAEL J. GRESS, pursuant to 28 U.S.C. § 1746(2), declare the following to be true

and correct under the penalty of perjury:

     1.    I am a Project Executive for Five Star Electric Corp. ("Five Star") and a custodian

of Five Star's records as it relates to the Integrated Electronic Security System Project ("IESS"

or "IESS Project"), the project which is the subject of this lawsuit.

     2.    During the course of the IESS Project, I was promoted from Senior Project

Manager to Project Executive.   As both Senior Project Manager and Project Executive, I was

responsible for overseeing Five Star's subcontractor work for Plaintiff Lockheed Martin

Transportation Security Solutions ("TSS"), an Operating Unit of Lockheed Martin Corporation

("Lockheed Martin") on the Integrated Electronic Security System Project ("IESS" or "IESS Project") that Lockheed Martin was performing for the Metropolitan Transit Authority and Metropolitan Transit Authority Capital Construction (together, "MTA").

3.       I respectfully submit this declaration ("Declaration") at the request of Lockheed Martin in connection with its case in chief and in lieu of direct testimony pursuant to this Court's Individual Rules Section 10(C)(iii).  Except as otherwise indicated, this Declaration is based on my personal knowledge of the facts herein.

4.       In this Declaration I will discuss (i) my professional background; (ii) the subcontract between Lockheed Martin and Five Star for work on the IESS Project; (iii) Five Star's weekly reports and reports kept during the IESS Project; and (iv) Five Star's performance on the IESS Project.  After Lockheed Martin was terminated from the IESS Project by MTA, Lockheed Martin requested a final invoice from Five Star.  Five Star delivered the invoice and subsequently filed a lawsuit against Lockheed Martin.  The parties resolved the lawsuit for the sum of $9,999,950.00.  Therefore, in this Declaration I will also discuss the nature of the claims by Five Star and the reasonableness of the settlement amount.  Finally, I will review and analyze certain records regarding MTA's work on the IESS Project following MTA's termination of Lockheed Martin to determine whether MTA paid for work which was included in Five Star's scope of services under its subcontract with Lockheed Martin.

A.       Professional Background

5.       I have over thirty two (32) years of construction management experience at electrical contracting firms in New York City, specializing in large transit and municipal contract work including major projects for MTA, Amtrak and the New York City Transit Authority ("NYCT").  After managing several large projects for Jandous Electric Construction, I joined

Mass Electric Construction Co. as a Senior Project Manager in their Transit/Municipal division in 1989. During my almost fifteen year career at Mass Electric, I managed major projects for the NYCT, Amtrak, The Port Authority of New York and New Jersey and the NYC Department of Environmental Protection.

6.    In, 2004, I joined Five Star as a Senior Project Manager in their Transit Division. As Senior Project Manager and later as Project Executive, I am responsible for the planning, execution and completion of multi-million dollar transit projects. I oversee project management teams and construction and troubleshoot projects encountering difficulties. I have managed major projects for the NYCT, Amtrak and the MTA, including the IESS Project.

B.    The Subcontract between Lockheed Martin and Five Star

7.    Five Star entered into Subcontract No. DR031476 with Lockheed Martin, dated January 20, 2006, ("Subcontract") in the initial amount of $73,000,000.00 and later amended by change orders, or Additional Work Orders ("AWOs") to $110,554,880.61. Ex. Plaintiff's Exhibit ("LMX") 1628.

8.    The Subcontract was in furtherance of Contract C-52038 between Lockheed Martin and MTA, ("Contract") whereby Lockheed Martin would design and implement an IESS system for MTA ("IESS Work") at various MTA locations.

9.    Pursuant to the Subcontract, Five Star was to provide all labor, materials, and tools required to complete the installation of IESS equipment, security and communication equipment, and communications network modifications and upgrades required under the Contract ("Subcontract Work"). Ex. LMX 1628, Exhibit B to Complaint at page 2 of 6)

C.   Five Star's Weekly Reports are Business Records

10.     I am familiar with business records maintained by Five Star in the regular course of its business. I am also familiar with the business records Five Star requires its employees to maintain for certain of Five Star's projects, and the responsibilities employees have to enter information into the records at or about the time of the events during Five Star's projects.

11.     During the regular course of business for the IESS Project, Five Star prepared weekly status reports and impact reports to record the progress and completion of its work ("Five Star Weekly Reports").

12.     Five Star Weekly Reports are records that are made at or near the time by—or from information transmitted by—Five Star employees with knowledge of the information recorded.

13.     Five Star Weekly Reports are records that are prepared in the course of a regularly conducted activity of Five Star's business and the making of the Five Star Weekly Reports was a regular practice of Five Star's business for the IESS Project.

14.     Five Star followed its regular practices described in ¶¶ 11-13 when completing the Five Star Weekly Reports for the IESS Project.

15.     Five Star Weekly Reports attached hereto as LMX 1659 includes the weekly status reports for the period of the week ending April 3, 2009 until the week ending June 29, 2009, including their attached impact reports for the period of the week ending April 3, 2009 until the week ending June 5, 2009 for the IESS Project. LMX 1659 does not contain weekly status reports and impact reports for the weeks ending May 8, 2009, June 12, 2009, and June 19, 2009.

16.     The Five Star Weekly Reports are exact duplicates of the originals.

DM1\5060845v1

        D.      Identification and Authentication of Other Five Star Records and

Documents

    17.    In addition, I have reviewed the following documents for purposes of

identification and authentication, and state that they are true and correct copies of documents that

were created during the course of the IESS Project:

> i.    Email transmittal from Michael J. Gress, Project Executive for Five Star to Maria L. McDaniel, Subcontract Program Manager for Lockheed Martin, regarding Five Star's narratives of its labor rates and hours, supervision costs, overhead and profit costs, and material pricing, dated March 10, 2006, attaching labor breakdown sheets for 2006-2007, and breakdown sheets of total hours per tunnel project broken down by supervision and direct labor, attached as LMX 1305.
>
> ii.    Letter from Michael J. Gress, Project Executive for Five Star to Maria L. McDaniel, Subcontract Program Manager for Lockheed Martin regarding need for 55 hour General Orders to timely complete the work on the URTs, dated March 30, 2006, attached as LMX 285.
>
> iii.    Five Star's schedule for work on the Under River Tunnels ("URTs") for the period beginning December 13, 2005 and ending May 16, 2007, created February 27, 2006, attached as LMX 1304.

        E.      Five Star's Performance and Termination from the IESS Project

    18.    Five Star performed its work on the IESS Project until Lockheed Martin was

terminated by MTA on June 12, 2009.

    19.    On June 12, 2009, Lockheed Martin directed Five Star to "immediately stop all

work" on the IESS Project pursuant to the Subcontract. Ex. LMX 1659, Ex. C to Complaint).

    20.    On August 11, 2009, approximately two months after Lockheed Martin was

terminated by MTA, Lockheed Martin terminated Five Star under the Subcontract for

convenience pursuant to Article 2.09 of the Contract, which had been incorporated into the

Subcontract by reference. Ex. LMX 1659, Ex. D to Complaint) The period after which

Lockheed Martin and Five Star were respectively terminated shall hereinafter be referred to as the "Post-Termination Period."

21.     During the course of Five Star's work on the IESS Project, Five Star maintained shanties on various project sites to store materials which Five Star presumes were prepaid by MTA. Five Star discovered MTA had cut the locks on some of Five Star's shanties located in the field and had also removed the prepaid materials. Five Star promptly notified Lockheed Martin of this.

F.      Lawsuit Against Lockheed Martin and Settlement Agreement

22.     After Lockheed Martin sent the stop work order to Five Star and terminated the Subcontract, Five Star submitted an invoice on September 22, 2009 to Lockheed Martin for the amount Five Star was due under the Subcontract. Ex. LMX 1659, Complaint ¶ 20; LMX 1616 On November 20, 2009, Five Star revised and resubmitted its invoice to Lockheed Martin, adjusting the amount owed to $19,611,779.22. Ex. LMX 1659, Complaint ¶ 20, LMX 1616

23.     After Five Star and Lockheed Martin were unable to reach an agreement regarding payment for the invoices, Five Star filed a complaint ("Complaint") on April 7, 2010, in the United States District Court for the Southern District of New York to recover the amounts due under the Subcontract, in the action entitled *Five Star Electric Corp. v. Lockheed Martin Transportation Security Solutions, An Operating Unit of Lockheed Martin Corporation, Travelers Casualty and Surety Company of America, Federal Insurance Company and Safeco Insurance Company of America*, No. 10-cv-2994 (PGG) ("Five Star Action"). Ex. LMX 1659.

24.     Five Star sought recovery in the amount of $19,611,779.22 from Lockheed Martin, based on Lockheed Martin's alleged breaches. (Gress 22/Complaint ¶¶ 17-26)

25.     The $19,611,779.22 sought by Five Star consisted of the following items:

| | |
|---|---|
| Invoice #43PC (per approved Invoice on 8/26/09 at 8:46 AM) | $2,778,301.70 |
| Retainage Release (Invoices 1 to 43) (per approved Invoice on 8/26/09 at 8:46 AM) | $3,622,977.69 |
| Additional Work Orders (AWOs) not negotiated (work performed) | $924,502.07 |
| Negotiated AWOs | $85,750.84 |
| Materials Purchased (in FSE's warehouse and at jobsite) | $788,372.76 |
| Equipment and Truck Rentals (from 6/12/09 to 8/11/09) | $191,796.42 |
| Post LMTSS Stop Work Order Warehouse Costs to Inventory | $25,520.98 |
| Post LMTSS Stop Work Order Tool Retrieval from Work Sites | $11,229.29 |
| Post LMTSS Stop Work Order Office Closeout | $252,327.47 |
| Article 2.09-Termination for Convenience | $931,000.00 |
| Impact Costs of LMTSS's Delay | $10,000,000.00 |
| **Total:** | $19,611,779.22 |

26.    Following commencement of the Five Star Action, Five Star and Lockheed Martin engaged in settlement negotiations to resolve the claim made by Five Star.

27.    Five Star and Lockheed Martin eventually reached a settlement, memorialized in the Settlement Agreement and Mutual Release, dated June 30, 2010 ("Settlement Agreement"), whereby Lockheed Martin would pay Five Star the sum of $9,999,950.00 in full and complete satisfaction for claims made amongst the parties to the Five Star Action relating to the IESS Project. Ex. LMX 1617, ¶¶ 2, 6, 14).

28.    For the reasons set forth in the Settlement Agreement, the amount agreed upon was fair and reasonable.

29.    The Settlement Agreement annexed a schedule describing certain equipment and materials that had been purchased under the Subcontract and stored in Five Star's warehouse ("Equipment and Materials"). Ex. LMX 1617 at Exhibit A,  One of the terms of the Settlement

Agreement required Lockheed Martin to arrange with Five Star for the removal of the Equipment and Materials from Five Star's warehouse. Ex. LMX 1617, ¶ 3 (iii).

30.    Pursuant to the Settlement Agreement, Lockheed Martin retrieved the Equipment and Materials from Five Star's warehouse. Ex. LMX 1617 at Exhibit A). The Equipment and Materials retrieved from Five Star's warehouse were new, not damaged, and were not used for any other project. Ex. LMX 1617, ¶ 3 (iii).

          G.    Review of MTA's Claimed Completion Work

31.    I am familiar with Five Star's scope of work described in the Subcontract.

32.    I have reviewed certain records detailed below which I understand MTA has provided during discovery in this action.

33.    The records I have reviewed consist of contracts between Five Star and MTA, including scopes of work for electrical work at various portions of the IESS Project, including but not limited to work at Grand Central Terminal, Times Square, Penn Station, 63rd Street Tunnel, and Times Square Flushing. The records I have reviewed are as follows:

| Description | Cost | LMX |
|---|---|---|
| Five Star equipment rental costs (settlement of claim) | $150,000 | 677, item 025 |
| Complete IESS work at LIC Shaft Comm. Room, Sunnyside Portal Hut, Eastern Section of ERT | $450,000 | 677, item 048 |
| Additional jumpers, magnetic Door lock and speaker at LIC Comm. Hut | $9,250 | 677, item 049 |
| Complete IESS work at Service Plant, Yard C and Track 18 Comm. Room, Penn Station LIRR | $197,500 | 677, item 050 |
| Material & Labor for Eltek Battery connection at Track 18 Comm. Hut | $5,000 | 677, item 050a |
| Install gate at Track 17, Penn Station | $7,320 | 677, item 052 |
| Complete the Installation of the fiber loop between Comm. Rooms; HRLB door contacts; partial installation of fiber optic cable runs in historic areas; partial installation of CCTV's and the Park Avenue Tunnel; test to verify installation and perform corrective repairs (FSE) | $950,000 | 677, item 075 |
| Jumpers and Breakers (FSE) | $7,500 | 677, item 076 |
| **Total:** | $1,776,570 | |

34.    I have reviewed the above records and compared them to the scope of work provided for in the Subcontract.

35.    The Statement of Work to the Subcontract provides as follows:

"the complete installation of IESS Equipment, Security, Communication equipment and communication network modifications and upgrades, including network interconnections and integrations . . . for the following sites:

     i.    63rd Street Tunnel (Lower Level – LIRR)

    ii.    63rd Street Tunnel (Upper Level – NYCT)

   iii.    Grand Central Terminal (MNR Portion) including Train Shed, Park Avenue Tunnel and Harlem River Lift Bridge

   iv.    Grand Central Terminal (NYCT Portion)

    v.    Verranzano[sic] Narrows Bridge

   vi.    Penn Station (LIRR/Amtrak/NJ Transit Portion

  vii.    Penn Station (NYCT Portion)

 viii.    Times Square Station Complex

   ix.    East River Tunnels (1 thru 4)"

Ex. LMX 1628, Exhibit B to Complaint, Attachment A at page 3,  Section 3.2)

36.    To the best of my knowledge, the work covered by the records I reviewed was work that was covered in the Subcontract.

37.    The total cost of the electrical work performed by Five Star in the Post Termination Period was $1,776,570.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 2, 2014

Michael J. Gress