NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

MICHAEL CHARTAN
212-692-1016
mchartan@duanemorris.com

*www.duanemorris.com*

ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO
SRI LANKA
ALLIANCE WITH
GOWERS INTERNATIONAL

December 5, 2014

VIA ECF, FACSIMILE, AND HAND DELIVERY

Honorable Paul G. Gardephe
Thurgood Marshall United States Courthouse
40 Foley Square, Chambers 2204
New York, NY 10007-1312

> Re:   **Lockheed Martin Corporation v. MTA Capital Construction Company et al.**
> **Transportation Authority Nos. 09 CV 4077 and 09 CV 6033 (PGG) (GWG)**

Dear Judge Gardephe:

Our firm represents Plaintiff Lockheed Martin Corporation ("Lockheed Martin") and the Surety Plaintiffs in this action. Enclosed are courtesy copies of Lockheed Martin's responses to Defendants' post-trial memorandum of law and proposed findings of fact and conclusions of law. Copies of these materials are also enclosed on a disk.

In addition, the Court's Order of November 12, 2014 (ECF No. 357) directed the parties to address eleven issues in their respective closing arguments. At closing arguments, your Honor directed the parties to also address these eleven items in their post-trial submissions. The parties were not limited to addressing these eleven items in their closing arguments or post-trial submissions. This letter lists each of these eleven items and indicates where they have been addressed in Lockheed Martin's Findings of Fact and Conclusions of Law ("LM"), Post Trial Brief ("LM Br."), Responses to Defendants' Post-Trial Findings of Fact and Conclusions of Law ("LM Resp."), and Response to Defendants' Post-Trial Brief ("LM Resp. Br.").

1.   Whether Lockheed's Test and Evaluation Master Plan ("TEMP") modified the requirements set forth in the Contract Documents;

LM Br., 7-9; LM Resp Br. § II.B, C

DuaneMorris

December 5, 2014
Page 2

2.      Whether Lockheed's TEMP constitutes a contractual modification under Article 4.01 of
        the Terms and Conditions;

        LM Resp. § II.C(i); LM Resp Br. § II.B, C

3.      The contractual significance, if any, of the "showstoppers" and "Beneficial Use";

        LM ¶¶ 138-153; LM Br., 17-19; LM Resp. § II.C(iv).

4.      Whether there was concurrent delay during the IESS project and, if the Court were to
        conclude that there was concurrent delay, the effect such a ruling would have on
        Lockheed's contractual entitlement to impact costs;

        LM Resp. § III; LM Resp. Br. § II.J.

5.      The propriety of Howard Reith's determination to treat "pass with comments," "deferred"
        requirements, and "blocked" requirements as test failures;

        LM MOL, 36-39; LM Resp. § III(iv); LM Resp. Br. § II.E(2).

6.      Whether an appropriate network was in place that would have permitted linkage among
        the local, regional, and central C3 locations and the "Smart Sites";

        LM ¶¶ 26, 220-224; LM Resp. § III; LM Resp. Br. § II.G.

7.      Whether any contract provision entitled Lockheed to fifty-five hour weekend outages in
        the Under River Tunnels;

        LM Resp. § III; LM Resp. Br. § II.I.

8.      The legal doctrines of waiver and election of remedies as they pertain to the testing
        program generally and, specifically, to the MTA's decision to proceed with testing
        despite the rate of test failures during Factory Acceptance Testing;

        LM Br., 14-19; LM Resp. Br. § II.B, C.

9.      The significance of LMX 170, an email in which MTACC General Counsel Ronnie
        Hakim makes the following statement to a Lockheed employee: "[r]egarding software
        acceptance, we agreed to interpret the contract in a manner in which LM could proceed
        with SIST by agency absent all functionality issues being resolved";

        LM, Conclusions of Law ¶¶ 25-26; LM Br., 2, 9, 11, 14; LM Resp. § II.C(ii).

10.     The significance of Kenneth Shield's refusal to sign the MTA's Default Notice to
        Lockheed in light of Article 8.01 (a) of the Terms and Conditions;

DuaneMorris

December 5, 2014
Page 3

          LM ¶  59; LM Br., 20; LM Resp. § II.G; LM. Resp. Br. § II.H.

11.    The significance of the MTA's purported delays in reviewing design drawings and providing Lockheed with access to communication rooms.

          LM ¶¶ 238-240; LM Br., 31-32; LM Resp. Br. § II.J.

        Thank you for your courtesy and attention to this lawsuit.  If your Honor has any further questions, we are prepared to respond.

                  Respectfully,

                  Michael Chartan (MC4609)

CC: Ira Lipton, Esq. (via email and ECF)